UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| A.H., individually and on behalf of N.H., a student with a disability,<br><br>                            Plaintiffs,<br><br>-against-<br><br>The Board of Education of the City School District of the City of New York, the New York City Department of Education, a/k/a New York City Public Schools, the City of New York, and Chancellor Kamar H. Samuels, in his official capacity,<br><br>                            Defendants. | 26 Civ. 5926 (_____)<br><br>ECF CASE<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## PRELIMINARY STATEMENT

1.      Plaintiff A.H., individually and as the parent and legal guardian of N.H., a child diagnosed with multiple disabilities including Autism Spectrum Disorder, brings this action for declaratory and injunctive relief against The Board of Education of the City School District of the City of New York (the "Board of Education," "Board," or "BOE"); the New York City Department of Education, a/k/a New York City Public Schools [1] (the "Department" or "DOE"); the City of New York (the "City"); and Chancellor Kamar H. Samuels, in his official capacity (collectively, "Defendants" or the "DOE Defendants"), pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 - 1482 ("IDEA"), and its implementing regulations; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"); and applicable provisions of the New York Education Law and its implementing regulations, to the extent incorporated into the IDEA. Plaintiffs allege that Defendants have denied N.H. access to a free appropriate public education ("FAPE") and, most immediately, have failed and refused to implement and fund N.H.'s pendency ("stay-put") placement, to which he is automatically entitled as a matter of law.

---

[1] The DOE recently rebranded itself as the "New York City Public Schools" or "NYCPS."

2.      N.H. is a fifteen-year-old student who is eligible to receive special education and related services as a student with a disability, namely, autism. *See* 34 C.F.R. § 300.8(c)(1); 8 N.Y.C.R.R. § 200.1(zz)(1). N.H.'s eligibility for special education and related services is not in dispute.

3.      N.H.'s pendency placement, to which he is automatically entitled, is a twelve-month program of intensive individualized services established by a prior, unappealed Findings of Fact and Decision ("FOFD") dated November 9, 2019 (IHO Case No. 174703) (the "2019 Program"), consisting of forty hours per week of 1:1 Special Education Itinerant Teacher ("SEIT") services; seven hours per week of 1:1 enhanced occupational therapy ("OT") incorporating Astronaut Training and Therapeutic Listening; two hours per week of Board-Certified Behavior Analyst ("BCBA") supervision; two hours per week of Parent Counseling and Training ("PCAT"); individual OT three times weekly for forty-five minutes; physical therapy ("PT") three times weekly for forty-five minutes; and speech-language therapy ("SLT") four times weekly for thirty minutes. The November 9, 2019 FOFD is incorporated herein by reference.

4.      Defendant DOE did not appeal the 2019 FOFD, which became final and binding upon the parties and has been repeatedly reaffirmed as N.H.'s pendency placement in successive administrative proceedings, certain of which are described and referred to herein.

5.      On December 31, 2025, Plaintiff A.H. filed a Due Process Complaint ("DPC") for the  2025-2026 school year (IHO Case No. 307092) and sought to maintain the 2019 Program pursuant to the IDEA's pendency provisions. The operative DPC ( IHO Case No. 307092) is incorporated herein by reference. The Impartial Hearing Officer ("IHO"), however, improperly denied Plaintiff's request for an interim Order on Pendency ("OP") by Order dated May 28, 2026,

on the theory that the parent's retention of private providers to deliver the 2019 Program constituted a "rejection" of pendency. The May 28, 2026 OP is incorporated herein by reference.

6.    Shortly before the current due process proceeding, in IHO Case No. 303474, Defendant DOE had been ordered to – and did – fund the 2019 Program as N.H.'s pendency placement through December 31, 2025 (Order on Pendency dated December 23, 2025, which is incorporated herein by reference). Since December 31, 2025, however, and continuing to date, the DOE Defendants have failed and refused to implement or fund the 2019 Program.

7.    As a direct result of the DOE Defendants' failure and refusal to implement and fund the 2019 Program, N.H. has been deprived of each of the essential components of his pendency placement.

8.    Defendant DOE has not offered N.H. any alternative educational program or placement for the 2025-2026 school year. Moreover, the Committee on Special Education ("CSE") has not recently convened to develop an Individualized Education Program ("IEP") for N.H.; the last CSE meeting for N.H. was in 2023.

9.    Based on Defendants' violation of Plaintiffs' pendency rights under the IDEA, Plaintiff A.H. seeks injunctive and declaratory relief requiring the DOE Defendants to implement and fund N.H.'s 2019 Program in its entirety at public expense pending final resolution of the underlying administrative and judicial proceedings, together with any and all compensatory education hours to which N.H. is entitled, reimbursement for the cost of services billed and unbilled that the parent has been forced to secure, and all reasonable and statutory attorneys' fees, litigation costs, and expenses associated with the underlying administrative proceedings and this action and emergency application.

10.     Plaintiff A.H. brings this action now because N.H.'s providers have ceased providing services to N.H. and because the DOE Defendants have failed and refused to implement or fund N.H.'s 2019 Program, without which N.H. is suffering, and will continue to suffer irreparable educational and developmental harm.

## JURISDICTION

11.     Plaintiffs seek declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

12.     This Court has subject-matter jurisdiction under 20 U.S.C. §§ 1415(i)(2)(A), (i)(3)(A), and 28 U.S.C. § 1331. The Court also has jurisdiction over Plaintiffs' Section 504 claim under 29 U.S.C. § 794 and 28 U.S.C. §§ 1343(a)(3)-(4).

13.     This Court has jurisdiction over Plaintiffs' pendent state law claims pursuant to 28 U.S.C. § 1367, and to the extent those state law claims are incorporated by reference into the IDEA, they are enforceable under 20 U.S.C. § 1415.

14.     Plaintiffs are not required to exhaust their administrative remedies under the IDEA for their pendency claims because N.H. is entitled to remain in his then-current educational placement during the pendency of a due process proceeding pursuant to 20 U.S.C. § 1415(j); alternatively, this Court may order an interim placement pursuant to 20 U.S.C. § 1415(i)(2)(C)(iii) as well as order compensatory education to "make up" for the loss of N.H.'s 2019 Program, including any and all compensatory education hours to which N.H. is entitled and reimbursement for the cost of services billed and unbilled that the parent has been forced to secure as a result of the DOE Defendants' default. Plaintiff A.H. is the aggrieved party within the meaning of 20 U.S.C. § 1415(i)(2)(A).

4

15.     Plaintiff A.H. has a pending due process proceeding (IHO Case No. 307092) in which she contends, among other things, that Defendants denied N.H. a FAPE by failing to recommend any educational program or placement for the 2025-2026 school year.[2]

16.     Plaintiff A.H. has requested, *inter alia*, that Defendants fund N.H.'s pendency placement – the 2019 Program – under 20 U.S.C. § 1415(j) pending the final outcome of the administrative and judicial proceedings.

17.     Defendants have failed and/or refused to implement and fund that pendency placement, though they have a legal obligation to maintain N.H.'s then-current educational placement while the underlying due process claims are fully and finally litigated.

18.     Plaintiffs have exhausted administrative remedies to the extent required by law. In any event, exhaustion is not required to enforce N.H.'s pendency rights, and further exhaustion would be futile because it would not remedy Defendants' ongoing failure to implement and fund N.H.'s then-current educational placement.

## VENUE

19.     One of Defendant DOE's principal offices is located at 52 Chambers Street, New York, NY 10007. Venue lies in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) because multiple Defendants, including Defendant DOE, maintain their respective business offices in this District.

---

[2] DOE Defendants have been found in prior administrative proceedings to have denied N.H. a FAPE in multiple prior school years.

## PARTIES

**Plaintiffs**

20.     Plaintiff N.H. is a child with a disability within the meaning of the IDEA, 20 U.S.C. § 1401(3).

21.     N.H. was born in 2011, is fifteen years old, and resides in Brooklyn, NY, with his siblings and parents.

22.     N.H. has been classified by the DOE as a student with Autism. He also has been diagnosed with Attention Deficit/Hyperactivity Disorder ("ADHD"), along with other impairments. N.H.'s classification and eligibility for special education, supports, and services are not in dispute.

23.     N.H. is also a qualified individual with a disability who is eligible for a FAPE under Section 504 and is protected from discrimination based upon his disability.

24.     Plaintiff A.H. is the mother of N.H.

25.     Plaintiff A.H. brings this action individually and on behalf of her minor son, N.H.

26.     Plaintiffs A.H. and N.H. are identified by their initials throughout this Complaint to preserve the confidentiality of sensitive medical, educational, and disability-related information under 20 U.S.C. § 1417(c) and the Family Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. § 1232g(b).

27.     Minor N.H. is also identified by his initials in accordance with Federal Rule of Civil Procedure 5.2(a)(3).

**Defendants**

28.     Upon information and belief, Defendant THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK ("Board of Education," "Board," or

"BOE") was or continues to be the official body charged with the responsibility of developing policies with respect to the administration and operation of the public schools in the Defendant City of New York pursuant to N.Y. Educ. Law § 2590-b.

29.    Upon information and belief, the BOE is a recipient of federal financial assistance.

30.    The BOE also identifies 52 Chambers Street, New York, NY 10007, as one of its places of business.

31.    The BOE is a school board that is organized under and exists pursuant to the New York Education Law. *See* N.Y. Educ. Law § 2590-b(1). The Board is also a "public board of education … legally constituted within [the] State for … administrative control or direction of … public … schools" within the meaning of 20 U.S.C. § 1401(19).

32.    Upon information and belief, the BOE serves as the public employer of persons appointed or assigned by it.

33.    Upon information and belief, Defendant the NEW YORK CITY DEPARTMENT OF EDUCATION (the "Department" or "DOE")[3] claims to be and appears to have been delegated the responsibility of developing policies with respect to the administration and operation of the public schools in Defendant  City of New York, including programs and services for students with disabilities.

34.    Upon information and belief, whether the DOE is a legally formed independent entity is not clear, though it appears in lawsuits and claims to be a "municipal" corporation.

35.    Upon information and belief, the DOE is the recipient of federal financial assistance.

---

[3] Despite Defendant DOE rebranding itself as the "New York City Public Schools" ("NYCPS"), Plaintiffs continue to use "DOE" to ensure consistency with statutory and regulatory references. The DOE and the NYCPS are one and the same for all intents and purposes.

36.    Defendant DOE identifies 52 Chambers Street, New York, NY 10007 as one of its places of business.

37.    The DOE is a creation of the Mayor and the BOE pursuant to the BOE's bylaws and is considered by Defendant City of New York to be a City agency.

38.    Upon information and belief, the DOE represents itself as a municipal agency.

39.    Defendant CITY OF NEW YORK (the "City") is a municipal corporation and a political subdivision of the State of New York. The City's address is c/o Office of the Corporation Counsel, 100 Church Street, New York, NY 10007. It is a recipient of federal financial assistance.

40.    Upon information and belief, Defendant City exercises fiscal, administrative, and operational control over the other Defendants. The City is responsible for the appropriation and disbursement of the public funds from which the DOE pays for special education and related services, including the educational program and related services required to be funded as a student's pendency placement under 20 U.S.C. §§ 1415(i), 1415(j).

41.    Defendant City is responsible for funding special education services and implementing the relief requested pursuant to this action and in IDEA due process proceedings generally. The funding and implementation relief sought in this action cannot be fully effectuated without the participation of the City, which is named as a party and whose participation is necessary to complete the relief requested.

42.    Defendant KAMAR H. SAMUELS, in his official capacity, is the current Chancellor of the New York City School District ("the Chancellor") and, as such, is entrusted with the specific powers and duties set forth in N.Y. Educ. Law § 2590-h. He is the successor in interest to the prior Chancellors who were in charge of and responsible for the Board and DOE during the school years at issue.

43. Under the New York Education Law, Defendant Chancellor functions as the chief executive officer for the Board. N.Y. Educ. Law § 2590-h.

44. Upon information and belief, many powers previously held by the BOE devolved to the Chancellor, with the administrative operations assigned to a body denominated by the then-Mayor of Defendant City of New York (the "Mayor") as the Panel on Education Policy. Because the Chancellor operates through the DOE, the Chancellor and the DOE are referred to interchangeably.

45. The Chancellor is selected by and serves at the pleasure of the Mayor. N.Y. Educ. Law § 2590-h.

46. Defendants Board, DOE, City, and Chancellor are referred to collectively as the "Defendants" or the "DOE Defendants."

47. All Defendants jointly and/or individually are recipients of federal financial assistance.

48. Under the IDEA, the Local Educational Agency ("LEA") is responsible for providing a free appropriate public education to students with disabilities.

49. Upon information and belief, Defendants Board, DOE, City, and Chancellor, individually and/or collectively, form the LEA.

50. Defendants Board, DOE, and Chancellor are agents of Defendant City of New York, which is ultimately responsible for managing the Board, DOE, and the Chancellor; funding special education services; and providing the relief requested pursuant to this action.

**FACTUAL BACKGROUND**

51. N.H. is classified by the DOE as a student with autism, and his diagnoses include autism spectrum disorder, sensory processing disorder, anxiety, and ADHD. He has received

special education services continuously since preschool and requires a twelve-month program to make meaningful progress and avoid substantial regression.

52.     In a Findings of Fact and Decision dated November 9, 2019 (IHO Case No. 174703, Hon. Suzanne M. Carter, the IHO found, based on multiple independent evaluations, that N.H. was entitled, on a twelve-month basis, to the "2019 Program:" forty hours per week of 1:1 SEIT; seven hours per week of enhanced OT incorporating Astronaut Training and Therapeutic Listening; two hours per week of BCBA supervision; two hours per week of PCAT; individual OT three times weekly for forty-five minutes; individual PT three times weekly for forty-five minutes; and individual SLT four times weekly for thirty minutes, each with providers paid at prevailing rates. The November 9, 2019 FOFD is incorporated herein by reference.

53.     Defendant DOE did not appeal the 2019 FOFD. It became final and binding and represents N.H.'s pendency program for the current school year and this proceeding. N.H.'s pendency program is referred to herein as "the 2019 Program."

54.     The 2019 Program has been repeatedly reaffirmed as N.H.'s pendency placement, including by a Pendency Order dated December 19, 2022 (IHO Case No. 226491), a Pendency Order dated July 23, 2025 (IHO Case No. 293773), a Pendency Order dated December 23, 2025 (IHO Case No. 303474), and decisions of the State Review Officer ("SRO") in Appeal No. 24-628 (April 28, 2025) and Appeal No. 24-636 (August 8, 2025). In each instance, Defendant DOE was required to implement and fund the 2019 Program. Each of these pendency orders and SRO decisions is incorporated herein by reference.

55.     The last educational program the CSE developed for N.H. was an Individualized Education Services Program ("IESP") dated March 28, 2023; the CSE has not convened since. The 2023 IESP is incorporated herein by reference.

56.     For the 2025-2026 school year, notwithstanding the parent's written requests for an IEP meeting dated August 15, 2025, and September 9, 2025, respectively, the DOE failed to convene the CSE or to develop any IEP or IESP for N.H. Each of parent's written IEP meeting requests is incorporated herein by reference.

57.     On September 8, 2025, between the parent's two requests for a CSE meeting, the DOE issued a Letter of Discharge stating that N.H. "transfers to school outside of NYC," while acknowledging on the face of the notice that N.H. "remains an NYC resident." N.H. currently attends a nonpublic school located outside New York City, and is entitled to special education and related services through CSE 6.

58.     On September 15, 2025, the parent, through counsel, served a Ten-Day Notice preserving the DOE's pendency obligation and advising that, absent a DOE-funded program, the parent would retain providers to deliver the 2019 Program and seek public funding (either prospectively or retrospectively).

59.     The parent filed a DPC for the 2025-2026 school year (IHO Case No. 303474, filed October 27, 2025). In that proceeding, IHO Melvin Dalere issued an Order on Pendency ("OP") dated December 23, 2025 granting pendency on the 2019 Program, retroactive to October 27, 2025. The December 23, 2025 OP is incorporated herein by reference.

60.     Pursuant to the December 23, 2025 OP, the DOE issued provider authorizations and funded N.H.'s 2019 Program through December 31, 2025.

61.     Pursuant to that same December 23, 2025 OP, the DOE's Implementation Unit issued direct authorizations to several of the same providers from whom N.H. had previously received and continued to receive the services described in the 2019 Program. Each authorization identified N.H. by name, referenced the December 23, 2025 Order by case number, and confirmed

that the services were required "Per the Pendency Order" on a twelve-month basis, effective October 27, 2025 until the conclusion of the case.

62.    Specifically, on January 23, 2026, the DOE's Implementation Unit issued a direct authorization to Dvorah Levin, N.H.'s SEIT provider, for DOE-funded SEIT services at $225 per hour for forty hours per week on a twelve-month basis, retroactive to October 27, 2025. On March 19, 2026, DOE's Implementation Unit issued a direct authorization to Victoria Kravets, N.H.'s individual OT provider, for DOE-funded individual OT at three 45-minute sessions per week on a twelve-month basis, also retroactive to October 27, 2025.

63.    The DOE also issued, or claimed to issue, a Related Service Authorization ("RSA") for N.H.'s PT, thereby acknowledging that PT is a required component of N.H.'s pendency program and that the DOE was unable to assign a public provider to deliver it. N.H.'s longstanding PT provider, Mirel Freidman, did not and does not accept the DOE's RSA rate. Although the parent and counsel repeatedly requested that the DOE issue a direct authorization at the pendency rate (i.e., the prevailing rate), the DOE never did so. As a result, the DOE has not implemented or funded PT as part of N.H.'s pendency program; to the extent PT services were delivered during this period, they were delivered without DOE payment and could not be sustained.

64.    The providers identified in the two DOE's authorizations, and the provider identified in the PT RSA, are the same providers from whom N.H. continued receiving services when the operative due process complaint was filed on December 31, 2025 (IHO Case No. 307092) and when the pendency hearing was held on May 12, 2026. The current providers of N.H.'s enhanced OT are Fraida Flaishman and Tal 18 Inc. The DOE offered no alternative providers and did not fund the parent-selected providers. The DOE's own records thus confirm that the parent did not create a new pendency program or materially change the educational *status quo*;

accordingly, the DOE itself recognized N.H.'s pendency program in writing and authorized several of the providers the parent used previously and continued to use.

65.    The parent filed the operative DPC for the 2025-2026 school year on December 31, 2025 (IHO Case No. 307092), and later amended it on February 9, 2026, again alleging the DOE's failure to offer any program or placement and seeking to maintain the 2019 Program pursuant to pendency.

66.    Upon the filing of IHO Case No. 307092, Defendant DOE would not agree to pendency at the 2019 Program, and Plaintiff's counsel requested an interim Order on Pendency based on the unappealed and final 2019 FOFD.

67.    After the IHO requested briefs from the parties, the DOE did not propose any alternative pendency placement; it objected to pendency and moved separately to dismiss on the theory that the claims belonged in the district where the Nonpublic School is located rather than the district of N.H.'s residence within the City.

**THE MAY 28, 2026 ORDER ON PENDENCY**

68.    At the pendency hearing held on May 12, 2026, the DOE did not dispute that the 2019 FOFD was the appropriate basis for N.H.'s pendency. The IHO expressly so found, determining that the pendency program to which N.H. is entitled is the array of services ordered in the 2019 FOFD, *i.e.*, the 2019 Program, "absent any unilateral actions by Parent."

69.    Nevertheless, on May 28, 2026, IHO Dalere denied Plaintiff A.H.'s request for pendency on the 2019 Program based on the assertion that the parent's retention of private providers to implement the ordered 2019 Program constituted a "rejection" of pendency by self-help. The May 28, 2026 Order relied exclusively on state SRO decisions (Appeal Nos. 24-636, 25-177, and 25-265); the May 28, 2026 Order was purportedly supported by Appeal No. 24-636 even

though that decision affirmed pendency for N.H. in the 2019 Program; the IHO's Order cited no federal authority.

70.     A parent's act of maintaining an ordered program when the district fails to implement and fund it does not forfeit the child's stay-put rights. To the contrary, a district must reimburse a parent who maintains the pendency program when the district refuses to do so. *See Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440 (2d Cir. 2015).

71.     By denying pendency and offering nothing in its place, IHO Dalere left N.H. with no program or placement during the pendency of the administrative and judicial proceedings, in derogation of N.H.'s stay-put rights.

72.     Both Plaintiff A.H. and Defendant DOE have appealed the May 28, 2026 Order on Pendency to the SRO. Given the significant appeal backlog at the Office of State Review and the ongoing deprivation of services, waiting for SRO review will not prevent N.H. from suffering further irreparable harm from the continued loss of his pendency placement.

73.     Since the December 31, 2025 lapse of interim pendency funding, Defendants have failed to authorized or funded any of the 2019 Program; thus, the 2019 Program remains unprovided and unfunded.

74.     On June 15, 2026, IHO Dalere issued a merits FOFD in IHO Case No. 307092 finding that the DOE denied N.H. a FAPE for the 2025-2026 school year by failing to develop any IEP or IESP and by failing to offer any educational program or placement. That merits decision, and the relief it did and did not grant, is the subject of a separate administrative appeal and does not alter Plaintiffs' independent entitlement to pendency relief.

75.     Defendants through their actions and inactions eliminated and terminated N.H.'s pendency program, including all related services without convening a knowledgeable group to

14

provide an IEP, conducting a Section 504 reevaluation, or making a placement decision based on current evaluative data.

**LEGAL FRAMEWORK**

**The Individuals with Disabilities Education Act ("IDEA")**

76.    The IDEA guarantees that eligible children with disabilities must be offered a FAPE. 20 U.S.C. § 1412(a)(1).

77.    A FAPE must meet a student's unique needs and prepare the student for further education, employment, and independent living, and must be provided in conformity with an IEP. 20 U.S.C. §§ 1400(d)(1)(A)-(B), 1401(9), 1414(d).

78.    The LEA must develop an IEP that is individually tailored to the student, sets forth the student's special education program and services, is in effect by the beginning of the school year, and is reviewed at least annually. 20 U.S.C. §§ 1414(d)(2), (d)(4)(A)(i); 8 N.Y.C.R.R. §§ 200.4(d)(2), (e)(1)(ii).

79.    Before developing or revising an IEP, the district must evaluate and reevaluate the child in accordance with federal and state law, consider current evaluations, and base program and placement decisions on the student's individual needs. 20 U.S.C. § 1414; 34 C.F.R. §§ 300.304, 300.502(c); 8 N.Y.C.R.R. § 200.4.

80.    To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable the child to make progress appropriate in light of the child's circumstances. *Endrew F. v. Douglas County Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017).

**Due Process Procedures**

81.    The IDEA guarantees parents the right to file a due process complaint concerning the identification, evaluation, educational placement, or provision of FAPE to a child with a

15

disability, and provides for an impartial due process hearing and administrative appeal. 20 U.S.C. §§ 1415(b)(6)(A), (f), (g).

82.     Either party may seek judicial review of an SRO decision in federal district court, and an unappealed IHO decision is final and binding on the parties. 20 U.S.C. § 1415(i)(2)(A); 34 C.F.R. § 300.514(a); 8 N.Y.C.R.R. § 200.5(j)(5)(v).

**Pendency**

83.     During the pendency of IDEA due process proceedings, including appeals to the SRO and the court, "unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . until all such proceedings have been completed." 20 U.S.C. § 1415(j).

84.     Where the IDEA's stay-put provision is implicated, it triggers an automatic injunction designed to maintain the child's educational *status quo* while the parties' dispute is resolved. *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 529 (2d Cir. 2020).

85.     Where a district fails to implement a student's pendency placement, in addition to the automatic injunction, a parent is entitled to appropriate equitable relief, which includes reimbursement and/or compensatory education for the full value of the pendency services the district was required to fund. *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 445, 456 (2d Cir. 2015).

86.     The IDEA grants courts broad discretion to "grant such relief as the court determines is appropriate;" parents who prevail in IDEA proceedings may recover reasonable attorneys' fees and costs to the extent authorized by law. 20 U.S.C. §§ 1415(i)(2)(C)(iii), (i)(3)(B)(i)(I).

**Section 504**

87.    Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

88.    Section 504 requires the provision of a FAPE to qualified individuals with disabilities. 34 C.F.R. § 104.33(a). An appropriate education under Section 504 includes regular or special education and related aids and services designed to meet the student's individual educational needs as adequately as the needs of students without disabilities are met. 34 C.F.R. § 104.33(b)(1).

89.    Section 504 requires a reevaluation before a significant change in placement; the significant reduction or termination of related services may constitute a significant change in placement. 34 C.F.R. § 104.35(a).

90.    Courts may award equitable relief, including compensatory education, to redress a violation of Section 504. *Mrs. C. v. Wheaton*, 916 F.2d 69, 75-76 (2d Cir. 1990).

## PLAINTIFFS ARE NOT REQUIRED TO FURTHER EXHAUST ADMINISTRATIVE REMEDIES

91.    Plaintiffs have exhausted administrative remedies to the extent required by law.

92.    Further exhaustion is not required to enforce N.H.'s pendency rights because stay-put relief is immediate and automatic; alternatively, further exhaustion would be futile because administrative delay will not remedy Defendants' ongoing failure to implement and fund N.H.'s then-current educational placement.

**FIRST CLAIM: THE IDEA'S PENDENCY MANDATE**

93.    Plaintiffs repeat and re-allege each of the foregoing paragraphs as if fully set forth herein.

94.    N.H. has a qualifying disability under the IDEA and, by virtue of his disability, requires the special education and related services set forth in the 2019 Program.

95.    The IDEA requires that a child "stay put" in his then-current educational placement while a due process proceeding is pending. 20 U.S.C. § 1415(j). Pendency rights are automatic, unconditional, and attach upon the filing of a due process complaint.

96.    A student's then-current educational placement for pendency may be established by a final, unappealed IHO decision, which constitutes an agreement between the parent and the DOE. The unappealed 2019 FOFD established the 2019 Program as N.H.'s pendency placement.

97.    Defendants funded the 2019 Program as N.H.'s pendency placement in prior proceedings and, most recently, through December 31, 2025 pursuant to the December 23, 2025 Order on Pendency in IHO Case No. 303474.

98.    Since December 31, 2025, Defendants have failed and refused to fund or implement N.H.'s pendency placement and have not provided N.H. with any interim placement that would satisfy the pendency requirement.

99.    As a direct result, N.H. has been deprived of the intensive services that constitute his pendency placement, including each and every component of his 2019 Program: his SEIT; individual speech-language therapy, enhanced OT, OT, and PT; his BCBA supervision, and his Parent Counseling and Training. Each of these program components were required to be publicly funded (prospectively and/or retrospectively).

100.    Plaintiff A.H. cannot afford to fund the 2019 Program without Defendants' public funding, and N.H.'s providers cannot render services without payment.

101.    Pursuant to 20 U.S.C. § 1415(j), N.H. is entitled to be maintained in his then-current educational placement, namely, the 2019 Program, at public expense during the pendency of the administrative and judicial proceedings.

102.    Without an order enforcing pendency and requiring Defendants to fund the 2019 Program at prevailing rates sufficient to secure appropriate providers, N.H. will continue to be denied his stay-put placement, regressing and suffering irreparable educational and developmental harm.

103.    In addition to the automatic stay-put injunction imposed by 20 U.S.C. § 1415(j), this Court possesses independent and broad equitable authority under 20 U.S.C. § 1415(i)(2)(C)(iii) to "grant such relief as the court determines is appropriate," including an order directing Defendants to maintain and fund N.H. in the 2019 Program as an interim placement during the pendency of the administrative and judicial proceedings. *See Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 534 n.65 (2d Cir. 2020).

104.    The pendency and interim-placement relief that Plaintiffs seek is independent of, and is not contingent upon, Plaintiffs' ultimate success on the merits of the underlying claim that Defendants denied N.H. a FAPE for the 2025-2026 school year. The purpose of both the stay-put provision and the Court's equitable authority is to preserve N.H.'s educational *status quo* and to prevent irreparable harm while the underlying dispute is litigated, without regard to how that dispute is ultimately resolved.

105.    Accordingly, Plaintiffs are entitled to an order maintaining and funding the entire 2019 Program throughout the pendency of these proceedings pursuant to 20 U.S.C. § 1415(j) and,

in the alternative and/or in addition, as an interim placement pursuant to 20 U.S.C. § 1415(i)(2)(C)(iii) and the Court's equitable powers, without regard to the merits of the underlying merits and FAPE claims.

## SECOND CLAIM: VIOLATION OF THE IDEA

106. Plaintiffs repeat and re-allege each of the foregoing paragraphs as if fully set forth herein.

107. N.H. is entitled to a FAPE under the IDEA.

108. Defendant DOE has not conducted a mandatory annual CSE review to develop an appropriate educational program for N.H. for the 2025-2026 school year, and has not provided N.H. with any educational program or placement.

109. Although Defendant DOE continues to find N.H. eligible for special education, it has denied N.H. a FAPE by failing to provide him with any appropriate educational program for the 2025-2026 school year, a denial the IHO confirmed in the June 15, 2026 FOFD.

110. This Court has authority under 20 U.S.C. § 1415(i)(2)(C)(iii) to grant appropriate equitable and injunctive relief, including relief necessary to preserve N.H.'s educational *status quo* and remedy the denial of FAPE, as well as compensatory education and services to make up for the loss of the educational program, including any and all compensatory education hours to which N.H. is entitled and reimbursement for the cost of services billed and unbilled that the parent has been forced to secure as a result of the DOE Defendants' default. *See Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 534 n.65 (2d Cir. 2020).

## THIRD CLAIM: VIOLATIONS OF SECTION 504

111. Plaintiffs repeat and re-allege each of the foregoing paragraphs as if fully set forth herein.

20

112. Defendants receive federal financial assistance for their education programs.

113. N.H. is a qualified individual with a disability under Section 504 whose disabilities impact major life activities such as walking, learning, reading, listening, and speaking.

114. Defendants had actual notice of N.H.'s disability, the 2019 Program, repeated pendency orders, and Plaintiff A.H.'s requests that Defendants maintain and fund the services necessary for N.H. to access education.

115. Defendants nevertheless failed and refused to maintain and fund services necessary for N.H. to access education as adequately as students without disabilities, *i.e.*, his 2019 Program.

116. Defendants significantly reduced and effectively terminated N.H.'s special education and related services without convening a knowledgeable group, conducting a Section 504 reevaluation, or making a placement determination based on current data.

117. Defendants' refusal continued despite actual notice of N.H.'s needs, the final and binding 2019 FOFD, the December 23, 2025 Order on Pendency, and the parent's requests, thereby demonstrating deliberate indifference to Plaintiffs' rights.

118. Defendants' actions denied N.H. reasonable accommodations, denied him meaningful and equal access to educational services, and caused him to lose essential services required to address his disabilities.

119. Plaintiff A.H. is in the zone of interest and is entitled to raise claims under Section 504.

120. Defendants' conduct was intentional, reckless, and deliberately indifferent to Plaintiffs' rights.

121. As a result Plaintiffs have suffered and continue to suffer ongoing injuries and harm, including N.H.'s loss of his pendency placement, namely, his 2019 Program.

**FOURTH CLAIM: VIOLATIONS OF NEW YORK STATE LAW**

122.    Plaintiffs repeat and re-allege the allegations of all the above paragraphs as if fully set forth herein.

123.    Defendants have violated N.H.'s rights under Article 89 of the New York Education Law, including N.Y. Educ. Law §§ 4401 and 4404, and the Regulations of the Commissioner of Education, 8 N.Y.C.R.R. Part 200, to the extent those provisions are incorporated into or enforceable through the IDEA.

124.    As a result Plaintiffs have suffered and continue to suffer ongoing injuries and harm, including N.H.'s loss of his pendency placement, namely, his 2019 Program.

**DEMAND FOR JURY TRIAL**

125.    Plaintiffs hereby demand a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter declaratory, temporary, preliminary, and permanent injunctive relief granting the following relief:

1.    Exercise jurisdiction over this action;

2.    Issue temporary, preliminary, and permanent injunctive relief directing Defendants, at public expense and at prevailing rates sufficient to secure appropriate providers, to implement and fund all components of N.H.'s 2019 Program as his pendency placement pursuant to 20 U.S.C. § 1415(j), or, in the alternative and/or in addition, as an interim placement pursuant to 20 U.S.C. § 1415(i)(2)(C)(iii) and the Court's equitable powers, retroactive from January 1, 2026 and prospectively through completion of the administrative and judicial proceedings, including by issuing direct authorizations or other payment mechanisms, paying all outstanding or due and

owing pendency invoices, reimbursing Plaintiff A.H. for services she has been required to secure, and funding make-up pendency services for all missed services;

3.    Issue a declaratory judgment that Defendants have violated Plaintiffs' pendency rights under the IDEA as alleged herein;

4.    Issue a declaratory judgment that Defendants have violated Plaintiffs' rights under Section 504 as alleged herein;

5.    Direct Defendants to refrain from applying to N.H. any policy, practice, or administrative criterion that results in the failure to implement his pendency placement, denial of FAPE, or disability-based discrimination;

6.    Award make-up pendency services for all missed components of the 2019 Program and, to the extent available, established, and proven upon competent evidence, compensatory education for the denial of FAPE alleged herein;

7.    Award appropriate equitable and injunctive relief, including relief necessary to preserve N.H.'s educational *status quo* and remedy the denial of FAPE, as well as compensatory education and services to make up for the loss of the educational program, including any and all compensatory education hours to which N.H. is entitled and reimbursement for the cost of services billed and unbilled that the parent has been forced to secure as a result of the DOE Defendants' default.

8.    Award any and all damages to which Plaintiffs are entitled as a result of the within described violations of law;

9.    Award Plaintiff A.H. reasonable attorneys' fees, costs, and expenses incurred in the underlying administrative proceedings and in this action, to the extent authorized by law, including 20 U.S.C. § 1415(i)(3)(B); and

23

10.      Grant such other and further relief as the Court may deem just and proper.

Dated: New York, New York
     July 14, 2026

Respectfully submitted,

/s/ Laura D. Barbieri

_____

Laura D. Barbieri, Esq.
The Law Office of Laura D. Barbieri, PLLC
*Attorneys for Plaintiffs*
115 West 73rd Street, Suite 1B
New York, NY 10023
Tel: (914) 819-3387
Email: Laura@LDBarbLaw.com
www.LDBarbLaw.com

24