CASE NUMBER: 307092 – NYC: DISTRICT # 22

# **FINDINGS OF FACT AND DECISION**

| | |
|---|---|
| Case Number: | 307092 |
| Student's Name[1]: | [redacted] ("Student") |
| Date of Birth: | [redacted] 2011 |
| School District: | N.Y.C. Dept. of Ed., District # 22 |
| Hearing Requested by: | [redacted] ("Parent") |
| Request Date/Date Complaint Filed: | 12/31/2025 |
| Date(s) of Hearing: | 5/12/2026 |
| Actual Record Closed Date: | 6/15/2026 |
| Date of Decision: | 6/15/2026 |
| Date of Distribution (if Different than Decision Date): | Not Applicable |
| Time Sensitive | No |
| Hearing Officer: | Melvin Dalere |

[1] No personal identifying information is contained within the body of this Findings of Fact and Decision ("FOFD"). For personal identifying information, please refer to the attached appendix. Further, this FOFD contains no references to the gender binary. The pronoun "they" is used as needed. Personally identifiable information is attached as Appendix A, "Redaction Identification Page," to this decision and must be removed prior to public distribution.

**NAMES AND TITLES OF PERSONS WHO APPEARED ON FEBRUARY 9, 2026**

For the Student:

Gabriel Skoletsky, Covering Parent Representative #1

For the New York City Department of Education:

*None*, District Representative

**NAMES AND TITLES OF PERSONS WHO APPEARED ON MARCH 18, 2026**

For the Student:

Adam Kohen, Covering Parent Representative #2

For the New York City Department of Education:

Raymond Jackson, District Representative

**NAMES AND TITLES OF PERSONS WHO APPEARED ON MAY 12, 2026**

For the Student:

Philippe Gerschel, Parent Representative

[redacted] Parent

For the New York City Department of Education:

Raymond Jackson, District Representative

## INTRODUCTION

This is a decision in a hearing under the Individuals with Disabilities Education Act ("IDEA") and New York State Education Law. Parent, through their representative, filed a Due Process Complaint ("DPC") on or about December 31, 2025, and thereafter amended it on February 9, 2026. The amended DPC was approved on February 12, 2026. In the amended DPC, Parent alleges that the New York City ("NYC") Department of Education ("DOE" of "District") failed to offer Student a free appropriate public education ("FAPE") for the 2025-2026 extended school year. (Ex. A).

In the DPC, Parent alleges that District violated its child find obligation and failed to offer Student a FAPE for the 2025-2026 extended school year by failing to develop an Individualized Education Program ("IEP") for Student. (Ex. A).

As relief, Parent requests an order directing District to fund 40 hours weekly of 1:1 Special Education Itinerant Teachers services ("SEITs"), seven hours weekly of individual Occupational Therapy ("OT") services incorporating Astronaut Training and Therapeutic Listening (Integrated Listening System), two hours weekly of Parent Counseling and Training ("PCAT"), two hours weekly of Board-Certified Behavior Analyst ("BCBA") supervision, individual OT to be provided three times weekly for 45 minutes per session, individual Physical Therapy ("PT") to be provided three times weekly for 45 minutes per session, and Speech Language Therapy ("SLT") to be provided four times weekly for 30 minutes per session, as well as a compensatory education award consisting of a bank of hours for the above services that were not provided to Student during the 2025-2026 extended school year.

In light of the foregoing and as more fully discussed below, I find that District failed to meet its burden that it offered Student a FAPE for the 2025-2026 school year, however, the record fails to show that Parent's proposed placement and the instruction offered by Parent's unilaterally obtained providers are specially designed to address Student's specific needs or that Parent's requested compensatory education relief would address the deficits that were created by District's failure to provide Student a FAPE during the 2025-2026 extended school year, if any.

## JURISDICTION

The Due Process Hearing ("DPH") was held, and a decision in this matter is being rendered pursuant to the IDEA, 20 U.S.C. §1400 *et seq.*, and its implementing regulations, 34 C.F.R. §300 et seq., the New York State Education Law, Educ. Law §4404 et seq., and its implementing regulations, 8 NYCRR §200.5 et seq., and Section 504, 29 U.S.C. §794(a).

## PROCEDURAL HISTORY

On December 31, 2025, Parent, through counsel, filed a DPC.

On the same day, I was appointed as the Impartial Hearing Officer ("IHO") for this case.

On February 9, 2026, Parent Representative and Covering Parent Representative #1 met with me for a Pre-Hearing Conference ("PHC"). District failed to appear. During the PHC, Covering Parent Representative #1 indicated that they intended to submit an amended DPC. (Tr. 3). Therefore, I adjourned the matter to February 18, 2026, for a tentative status conference.

On the same day, Parent filed a request to amend the DPC.

On February 12, 2026, Parent's request to amend the DPC was granted without objection from District, and I adjourned the matter to March 18, 2026, for another PHC.

On March 18, 2026, Covering Parent Representative #2 and District Representative met with me for another PHC. During the PHC, District argued the claims related to the 10-month 2025-2026 school year should have been filed against the local education agency in the district where Private School was located, which differed from the district of Parent's and Student's residence. (Tr. 10, 17-19). Based on District's argument, I directed both parties to submit briefs with regard to District's position as well as with regard to Parent's request on pendency, and I adjourned the matter to April 22, 2026, for a DPH. (Tr. 12). I also directed both parties to submit their respective briefs by April 3, 2026, and I issued an Order that memorialized what transpired at the PHC, which included information regarding how the DPH would be conducted. (IHO Ex. I).

On March 25, 2026, Covering Parent Representative #1 emailed me and District Representative requesting an adjournment of the scheduled DPH, and District Representative consented to Parent's request. Therefore, the DPH was ultimately rescheduled to May 12, 2026, and the deadline for Parent and District to submit their respective briefs was extended to April 28, 2026. (IHO Ex. II).

On March 27, 2026, Covering Parent Representative #1 submitted their Brief in Support of Pendency. (IHO Ex. III).

On April 28, 2026, District sent an email requesting for the dismissal of Parent's claims related to the 10-month 2025-2026 school year and objecting to Parent's request for pendency. (IHO Ex. IV-3-4).

On April 29, 2026, Parent responded via email to District's request to dismiss and reiterated their request for pendency. (IHO Ex. IV-2-3).

On May 12, 226, Parent Representative and District Representative ("the Parties") appeared before me virtually for the DPH. At the outset of the DPH, I provided both parties with the opportunity to supplement their respective written submissions regarding District's application for the dismissal of Parent's claims related to the 10-month 2025-2026 school year

and Parent's request for pendency. (Tr. 28-34). During the DPH, District Representative offered six exhibits, and I admitted into evidence such exhibits without objection from Parent Representative.[2] Parent Representative offered exhibits A through J, and I admitted into evidence such exhibits without objection from District Representative. Included in Parent's evidence was an affidavit from Parent. (Ex. J). After asking clarification questions of Parent, Parent rested, and the Parties proceeded to present their respective closing statements.

On May 28, 2026, I issued an Order on Pendency. (IHO Ex. V).

## FINDINGS OF FACT AND DECISION

After a full review of the record generated at hearing, I make the following findings of fact and determinations:

Student and Parent reside in NYC, and Student is currently a 15-year-old student who is classified by District as a student with Autism. (Ex. 2-1). Student's classification is not in dispute. Student attends a general education private school outside NYC. (Ex. H-1).

On November 9, 2019, a prior IHO issued an FOFD that found Student was entitled to 40 hours weekly of 1:1 SEITs, seven hours weekly of individual OT services incorporating Astronaut Training and Therapeutic Listening (Integrated Listening System), two hours weekly of PCAT, two hours weekly of BCBA supervision, individual OT to be provided three times weekly for 45 minutes per session, individual PT to be provided three times weekly for 45 minutes per session, and SLT to be provided four times weekly for 30 minutes per session ("2019 FOFD"). (Ex. C-4).

On March 28, 2023, the Committee on Special Education ("CSE") convened to develop and Individualized Education Services Program ("IESP") for Student ("2023 IESP"). At that time, Student presented with sensory processing and social delays. (Ex. 2-10). The 2023 IESP recommended that Student receive Special Education Teacher Support Services ("SETSS"), to be provided in a group, seven periods weekly, individual SLT to be provided four times weekly for 30 minutes per session, individual OT to be provided four times weekly for 45 minutes per session, and individual PT to be provided three times weekly for 30 minutes per session. (Ex. 2-22-23).

On August 15, 2025, Parent submitted a letter to District requesting a FAPE for the 2025-2026 school year and for District to schedule an IEP meeting and develop an IEP for Student. (Ex. H-1-2).

---

[2] A detailed list of the admitted exhibits is attached as Appendix B, "Documentation Entered Into the Record," to this Decision.

On or about September 9, 2025, District sent a discharge notice to Parent indicating District discharged Student as Student was a student with an IESP who resided in NYC but attended a private school outside NYC. (Ex. 4-1; Ex. H-1).

On September 15, 2025, Parent, through counsel, submitted a letter again requesting for the CSE to convene an IEP meeting and develop an IEP for Student. (Ex. H-2-3).

During the 2025-2026 10-month school year, SEIT Direct Provider #1, SEIT Direct Provider #2, OT Direct Provider, and PT Direct Provider provided Student with SEIT, OT, and PT, respectively, however, neither Parent nor District is funding such services. (Tr. 51, 54).

*Motion to Dismiss*

Here, District Representative submitted an email requesting the dismissal of Parent's claims related to the 10-month 2025-2026 school year. (IHO Ex. IV-3-4). In their written submission, District Representative argued, in sum and substance, that any claims related to the 10-month school year needed to be brought before the district where Student's private school is located and not the district where Student and Parent reside. (*Id*). Parent, in response, argued the claims raised in the DPC all fall under the IDEA as they allege District failed to develop an IEP for Student for the 2025-2026 extended school year, and such claims should therefore be brought in the district of Student's residence. (IHO Ex. IV-2-3). Based on the record before me, I find District's application to dismiss Parent's claims related to the 10-month 2025-2026 school year is without merit.

The IDEA provides that children with disabilities are entitled to a FAPE. 20 U.S.C. § 1400 (d)(1)(A). The IDEA, however, confers no individual entitlement to special education or related services upon students who are enrolled by their parents in nonpublic schools. See 34 C.F.R. 300.137(a). Under State law, parents of a student with a disability who have privately enrolled their child in a nonpublic school may seek to obtain educational "services" for their child by filing a request for such services in the district of location where the nonpublic school is located on or before the first day of June preceding the school year for which the request for services is made. NYS Educ. Law § 3602-c(2). Where the Individualized Education Services Program ("IESP") is outdated, though, and there is no evidence in the record that parent manifested an intention to reject the offer of a FAPE and keep the student in nonpublic school, the district of residence is still obligated to develop an IEP prior to the start of the school year. *See Application of a Student with a Disability*, 23-156; *see also Application of a Student with a Disability*, 23-160.

Here, Student is identified as a student with a disability, and Parent requested for the development of an IEP for the 2025-2026 extended school year. Moreover, the last program developed by the CSE was the 2023 IESP, more than two years prior to the 2025-2026 school year, which I find to be outdated. Therefore, contrary to District's position, even though Student was privately enrolled at a nonpublic school in prior school years, that does not relieve District of its obligation to develop an IEP for Student especially when Parent did not manifest

any intention to reject the offer a FAPE and keep Student in a nonpublic school, and when the last developed program for Student was in an IEP developed in March 2023. Indeed, in this case, Parent actually requested from District an IEP for the 2025-2026 school year in August 2025, and Parent testified that they were seeking to have Student enrolled in a public school. (Tr. 50-51). Accordingly, based on the record before me, I find District's motion to dismiss Parent's claims related to the 10-month 2025-2026 school year to be without merit, and the motion is denied.

*<u>Burden</u>*

School districts have the burden of proof, including the burden of persuasion and burden of production, in IDEA due process hearings, except that a parent or person in parental relationship seeking tuition reimbursement for a unilateral parental placement has the burden of persuasion and burden of production on the appropriateness of such placement. (NYS Educ. Law § 4404[1][c]). Although I find no binding authority that shifts the burden on the appropriateness of the unilaterally obtained services to a parent, State Review Officers ("SROs") have recently held cases regarding enhanced rates and unilaterally obtained services are subject to analysis under the *Burlington/Carter* standard. *See Application of a Student with a Disability*, Appeal No. 23-140; *See Application of a Student with a Disability*, Appeal No. 23-140.

In determining that a *Burlington/Carter* analysis applies here, I take into consideration the recent holdings of SROs involving unilaterally obtained services. Therefore, I will be applying the *Burlington/Carter* standard in this matter.

*<u>Prong I</u>*

<u>Child Find Obligation</u>

Here, in their DPC, Parent alleges District violated its child find obligations by failing to develop an IEP for Student. (Ex. A-3, 9). I find, however, Parent's claim regarding any "child find" violation is without merit.

The purpose of the "child find" provisions of the IDEA are to identify, locate, and evaluate students who are suspected of being a student with a disability and thereby may be in need of special education and related services, but for whom no determination of eligibility as a student with a disability has been made. *See Handberry v. Thompson*, 446 F.3d 335, 347-48 [2d Cir. 2006]; *E.T. v. Bd. of Educ. of Pine Bush Cent. Sch. Dist.*, 2012 WL 5936537, at *11 (S.D.N.Y. Nov. 26, 2012); *A.P. v. Woodstock Bd. of Educ.*, 572 F. Supp. 2d 221, 225 (D. Conn. 2008), aff'd, 370 Fed. App'x 202 (2d Cir. Mar. 23, 2010); *see also* 20 U.S.C. § 1412(a)(3)(A); 34 CFR 300.111; 8 NYCRR 200.2(a)(1), (7). The IDEA places an affirmative duty on State and local educational agencies to identify, locate, and evaluate all children with disabilities residing in the State "to ensure that they receive needed special education services." 20 U.S.C. § 1412(a)(3); 34 CFR § 300.111(a)(1)(i); *Forest Grove*, 557 U.S. at 245; *K.B. v. Katonah Lewisboro Union Free Sch. Dist.*, 2019 WL 5553292, at *7 (S.D.N.Y. Oct. 28, 2019); *E.T.*, 2012 WL 5936537, at *11; *see* 20 U.S.C. §

1412(a)(10)(A)(ii); *see also* 8 NYCRR §§ 200.2(a)(1), (7); *New Paltz Cent. Sch. Dist. v. St. Pierre*, 307 F. Supp. 2d 394, 400 n.13 (N.D.N.Y. 2004). The "child find" requirements apply to "children who are suspected of being a child with a disability ... and in need of special education, even though they are advancing from grade to grade." 34 CFR § 300.111(c)(1); *see* 8 NYCRR §§ 200.2(a)(1), (7); *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 249 (3d Cir. 2012); *J.S. v. Scarsdale Union Free Sch. Dist.*, 826 F. Supp. 2d 635, 660 (S.D.N.Y. Nov. 18, 2011). To satisfy the requirements, a board of education must have procedures in place that will enable it to identify, locate, and evaluate such children. 34 CFR § 300.111(a)(1); 8 NYCRR §§ 200.2(a)(1), (7).

In reviewing whether the district satisfied its "child find" obligations, the "child find" inquiry "must focus on what the [d]istrict knew and when." *K.B.*, 2019 WL 5553292, at *8, quoting *J.S.*, 826 F. Supp. 2d at 652; *see*, e.g., *Application of the Dep't of Educ.*, Appeal No. 21-113(rejecting the parent's argument that a "child find" violation occurred between September and November and upholding the IHO's finding that a district had reason to suspect a disability in March of the same school year when the district had taken some interventive steps, but the difficulties persisted). To support a finding that a "child find" violation has occurred, school officials must have overlooked clear signs of disability and been negligent in failing to order testing or have no rational justification for deciding not to evaluate the student. *Mr. P v. W. Hartford Bd. of Educ.*, 885 F.3d 735, 750 (2d Cir. 2018), quoting *Bd. of Educ. of Fayette County v. L.M.*, 478 F.3d 307, 313 (6th Cir. 2007); *see A.P.*, 572 F. Supp. 2d at 225; *Application of a Student Suspected of Having a Disability*, Appeal No. 23-026.

Here, while Parent argues a "child find" violation, it is undisputed Student was identified, located, and evaluated as a student with a disability prior to the 2025-2026 extended school year. Indeed, Parent testified via affidavit that the CSE has identified Student as a student with a disability, and Student had been classified by the CSE as a student with Autism. (Ex. 2-1; Ex. J-1). Therefore, District satisfied its child find obligation by identifying, locating, and evaluating Student and ultimately determining Student was a student with a disability.

Failure to Develop an IEP

Here, in the DPC, Parent alleges District denied Student a FAPE for the 2025-2026 extended school year by failing to develop an IEP for Student for the school year at issue. (Ex. A-3,9). Based on the record before me, I find District failed to meet its burden at the DPH with regard to the 2025-2026 10-month school year.

The IDEA provides that children with disabilities are entitled to a FAPE. (20 U.S.C. § 1400 (d)(1)(A). A FAPE consists of specialized education and related services designed to meet a student's unique needs, provided in conformity with a comprehensive written IEP. (34 C.F.R. § 300.13). A school district has offered a student a FAPE when (a) the board of education complies with the procedural requirements set forth in the IDEA; and (b) the IEP is developed through the IDEA's procedures and is reasonably calculated to enable the student to receive educational benefits. *See Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206-07 (1982). In order to meet its substantive FAPE obligations, a district must offer a

student an IEP that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. v. Douglas County Sch. Dist. RE-1*, 137 S.Ct. 988, 999 (2017).

Additionally, the IEP of each student with a disability shall be reviewed periodically and not less than annually to determine if the annual goals for the student are being achieved. *See* 20 U.S.C. § 1414(d)(4)(A); 34 C.F.R. § 300.324(b)(1)(i); *see also* Educ. Law § 4402[2]; 8 NYCRR 200.4(f). Moreover, a recommendation shall be provided to the board of education, which shall arrange for the appropriate special education programs and services to be provided to the student with a disability within 60 school days of the referral for review of the student with a disability. 8 NYCRR 200.4(d). School districts must ensure that an IEP is in effect by the start of the school year. *Davis v. Wappingers Cent. Sch. Dist.*, 772 F. Supp. 2d 500, 508 (S.D.N.Y. 2010) (citing 34 C.F.R. § 300.323(a) ("At the beginning of each school year, each public agency must have in effect, for each child with a disability within its jurisdiction, an IEP….").

Here, as to Prong I of the *Burlington/Carter* standard and regarding the 10-month 2025-2026 school year, I find District failed to meet its burden at the hearing. It is undisputed that Parent requested the CSE to convene an IEP meeting and develop an IEP for Student for the 2025-2026 school year on August 15, 2025, and District failed to do so. Indeed, as stated earlier in this Decision, even though Student was privately enrolled at a nonpublic school in prior school years, that does not relieve District of its obligation to develop an IEP for Student especially when Parent did not manifest any intention to reject the offer of a FAPE and keep Student in a nonpublic school and considering that the last program developed for Student was on March 28, 2023, which I find to be outdated for the 2025-2026 school year. *See Application of a Student with a Disability*, 23-156; *see also Application of a Student with a Disability*, 23-160. Therefore, as District failed to develop an IEP for Student at any point during the 2025-2026 school year, I find Student was denied a FAPE for the 10-month 2025-2026 school year.

I note though, even though District did not hold an IEP meeting, I do not find such violation amounts to a denial of FAPE for the summer session of the 2025-2026 extended school year as I do not find Student was entitled to extended school year services during the 2025-2026 school year.

The provision of a FAPE could require a 12-month school year if one is needed to prevent substantial regression. 8 NYCRR. §§ 200.6(k), 200.1(eee). "Substantial regression" is defined as "a student's inability to maintain developmental levels due to a loss of skill or knowledge during the months of July and August of such severity as to require an inordinate period of review at the beginning of the school year to reestablish and maintain IEP goals and objectives mastered at the end of the previous school year." 8 NYCRR 200.1(aaa). In order to constitute "substantial regression," the student's educational loss during the summer must be so severe that is requires an inordinate period of re-teaching at the beginning of the next school year (8 weeks or more) to recoup the previous level of skill or knowledge. *See* New York State's 2023 guidance on ESY programs, available at "Extended School Year Programs and Services Questions and Answers" 2023 (nysed.gov); *see also Application of a Student with a*

*Disability*, Appeal No. 05-114 (holding that a review period of eight weeks or more would likely indicate that substantial aggression has occurred).

Additionally, at an impartial hearing, the party seeking extended school year services bears the burden of production. *See D.D-S. v. Southold Union Free Sch. Dist.*, No. 09-CV-5026, 2011 WL 3919040 (E.D.N.Y. Sept. 2, 2011); *see also Application of a Student with a Disability*, Appeal No. 23-154.

Here, while Parent is requesting District to fund the program and services ordered in an FOFD issued by a prior IHO on November 9, 2019, I do not find there to be sufficient evidence of substantial regression in the record to support the need for extended school year services. Indeed, the documentary and testimonial evidence provided by Parent fails to suggest that Student would experience substantial regression without a 12-month program of services. The record lacks any evidence as to the time periods when substantial regression was noted, if any, the specific skills Student lost during those time periods if they existed, and the period of review Student required in order to recoup those lost skills. While a 12-month program may certainly benefit Student, school districts are not required to "maximize" the potential of students with disabilities but must provide "an IEP that is 'likely to produce progress, not regression,' and... affords the student with an opportunity greater than mere 'trivial advancement.'" *Rowley*, 458 U.S. at 189, 199; *Grim*, 346 F.3d at 379; *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 130 (2d Cir. 1998); *Cerra*, 427 F.3d at 195, quoting *Walczak*, 142 F.3d at 130.

Additionally, I note that Parent did not send notice of their request for an IEP until after the summer session of the 2025-2026 extended school year already ended, and no evidence was submitted that would put District on notice that Student required extended school year services.

Therefore, as Student is not entitled to extended school year services, I find District did not deny Student a FAPE during the summer session of the 2025-2026 extended school year.

*<u>Prong II</u>*

A private school placement must be "proper under the Act." *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 12, 15 (1993); *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 370 (1985). This means that the private school must offer an educational program which meets the student's special education needs. *See Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112, 115 (2d Cir. 2007); *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998). Parents seeking reimbursement "bear the burden of demonstrating that their private placement was appropriate, even if the IEP was inappropriate." *Gagliardo*, 489 F.3d at 112. "Subject to certain limited exceptions, 'the same considerations and criteria that apply in determining whether the [s]chool [d]istrict's placement is appropriate should be considered in determining the appropriateness of the parents' placement.'" *Gagliardo*, 489 F.3d at 112, quoting *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 364 (2d Cir. 2006)

Parents need not show that the placement provides every special service necessary to maximize the student's potential. *Frank G.*, 459 F.3d at 364-65. When determining whether a unilateral placement is appropriate, "[u]ltimately, the issue turns on" whether the placement is "reasonably calculated to enable the child to receive educational benefits." *Frank G.*, 459 F.3d at 364; *see Gagliardo*, 489 F.3d at 115. A private placement is appropriate if it provides instruction specially designed to meet the unique needs of a student. 20 U.S.C. § 1401(29); Educ. Law § 4401(1); 34 CFR § 300.39(a)(1); 8 NYCRR § 200.1(ww); *Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist.*, 773 F.3d 372, 386 (2d Cir. 2014).

The Second Circuit has set forth the standard for determining whether parents have carried their burden of demonstrating the appropriateness of their unilateral placement. No one factor is necessarily dispositive in determining whether parents' unilateral placement is reasonably calculated to enable the child to receive educational benefits. Grades, test scores, and regular advancement may constitute evidence that a child is receiving educational benefit, but courts assessing the propriety of a unilateral placement consider the totality of the circumstances in determining whether that placement reasonably serves a child's individual needs. To qualify for reimbursement under the IDEA, parents need not show that a private placement furnishes every special service necessary to maximize their child's potential. They need only demonstrate that the placement provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction. *Gagliardo*, 489 F.3d at 112, quoting *Frank G.*, 459 F.3d at 364-65).

Additionally, Prong II is analyzed in the binary – the private school placement is either appropriate or not appropriate; it cannot be found partially appropriate and then funding awarded only for the portion of instruction that was deemed appropriate. (*See Application of a Student with a Disability*, Appeal No. 24-463) (holding that the parent failed to meet their Prong II burden even though the IHO found the counseling student received was sufficient because, when taken as a whole, the counseling evidence did "not make-up for the shortfalls in the evidence relating to the SETSS").

In reviewing the weight of the evidence, I find the record before me fails to establish that the program and services requested by Parent for the 2025-2026 school year addresses Student's individual special education needs or that the instruction offered by Parent's privately obtained providers is "reasonably calculated to enable the child to receive educational benefits." (*Frank G.*, 459 F.3d at 364).

In their DPC, Parent is seeking the implementation of a program that consists of 40 hours weekly of 1:1 SEITs, seven hours weekly of individual OT services incorporating Astronaut Training and Therapeutic Listening (Integrated Listening System), two hours weekly of PCAT, two hours weekly of BCBA supervision, individual OT to be provided three times weekly for 45 minutes per session, individual PT to be provided three times weekly for 45 minutes per session, and SLT to be provided four times weekly for 30 minutes per session, which is based on

the 2019 FOFD. Parent, however, failed to submit any evidence in support of their requested placement.

Here, while Parent testified via affidavit that the program ordered in the 2019 FOFD was determined necessary for Student to make meaningful education progress and to avoid regression, I note the 2019 FOFD was issued when Student was only 7 years old, and Student is now 15 years old. I do not find that the record establishes that the program and services ordered in the 2019 FOFD pertains to Student almost eight years later. Indeed, Parent's evidence fails to establish Student's current needs and whether they still require PT, OT, SLT, PCAT, BCBA supervision, or SEITs. Indeed, the majority of the documentary evidence submitted by Parent pertains to their request for pendency, and I note none of their submitted evidence addresses the appropriateness of Parent's proposed placement. Moreover, of the 36 paragraphs of Parent's affidavit, only one paragraph makes the claim that the placement ordered in the 2019 FOFD is appropriate, albeit even that paragraph fails to provide any substance or explanation as to why Parent's proposed placement is still appropriate for Student. (Tr. J-2). Additionally, while Parent testified in their affidavit that Student's needs have been identified and their proposed program that is necessary to address them has been prescribed by multiple independent evaluators, Parent failed to submit any evaluations or assessments that would support such claims. (Ex. J-2). Indeed, the record is void of any objective evidence that provides any detail about Student's current deficits, if any. Furthermore, based on the record before me, it is unclear how approximately 58 hours weekly of special education services would be appropriate or even practical for Student given that such number of hours significantly exceeds that of a regular school week.

Next, with regard to the services provided by PT Direct Provider, OT Direct Provider, SEIT Direct Provider #1, and SEIT Direct Provider #2, Parent failed to submit any evidence regarding the specific techniques and methodologies the direct providers actually utilize during their sessions with Student. Indeed, the only evidence submitted with regards to the SEITs, OT, and PT provided to Student during the 2025-2026 school year is testimony from Parent, and they provided no information as to what actually occurs during the OT, PT, and SEITs sessions with Student. Indeed, no session notes, progress reports, or treatment plans were submitted to provide clarity as to what actually occurs during Student's sessions with their direct providers. Moreover, Parent failed to submit any documentation or provide any testimony regarding Student's present level of performance as they pertain to PT, OT, and SEIT, the short-term or annual goals Student is working on with their direct providers for the 2025-2026 school year, or what progress, if any, Student is making since they started receiving OT, PT, and SEITs from the direct providers. Therefore, it is unclear from the record that Student's areas of concern and focus were identified, that the direct providers specifically addressed those areas of need, and whether any progress was made during the 2025-2026 school year.

Therefore, in reviewing the record before me and analyzing Parent's proposed program and the services Student received from OT Direct Provider, SEIT Direct Provider #1, SEIT Direct Provider #2 and PT Direct Provider, I find Parent has not met their burden under Prong II of the *Burlington/Carter* analysis, and Parent's requested relief regarding the funding of Parent's

proposed placement and unilaterally obtained services for the 2025-2026 school year is denied with prejudice.

*Equities*

Even if a parent establishes a right to reimbursement under the IDEA, "courts retain discretion to reduce the amount of a reimbursement award if the equities so warrant." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 246-47, 129 S. Ct. 2484, 174 L. Ed. 2d 168 (2009). In making that equitable determination, a hearing officer may consider many factors, including, *inter alia*, whether a parent's unilateral withdrawal of her child from the public school was justified, whether the parent provided the Department with adequate notice of the withdrawal, whether the amount of private school tuition was reasonable, whether the parent should have availed herself of need-based scholarships or other financial aid from the private school, and whether there was any fraud or collusion in generating (or inflating) the tuition to be charged to the Department or whether the arrangement with the school was fraudulent or collusive in any other respect. *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 461 (2d Cir. 2014).

In determining whether a requested rate is reasonable and appropriate under the circumstances, various factors have been found relevant, including: the provider's explanation of the rate, including its costs and the qualifications of its instructors (*Application of a Student with a Disability*, Appeal No. 20-140 [while "[g]enerally, teachers at a unilateral placement need not be State-certified . . . there must be objective evidence of special education instruction or supports that are specially designed by . . . providers . . . who have reasonable qualifications that are specifically related to the student's deficits"]); the value that specialized certification, such as a bilingual extension, adds to instruction (*Application of a Student with a Disability*, Appeal No. 21-183 [approving compensatory SETSS by a bilingual reading specialist at a rate not to exceed $200 per hour]); and the parent's efforts to locate a DOE-approved SETSS provider from a list provided by the District to the parent (*Application of a Student with a Disability*, Appeal No. 21-096).

Here, there is no evidence submitted by District suggesting that Parent interfered in any manner with District's obligation to provide Student with a FAPE for the 2025-2026 school year. The record also shows Student is currently being provided SEITs, PT, and OT by SEIT Direct Provider #1, SEIT Direct Provider #2, PT Direct Provider, and OT Direct Provider, respectively, and Student has been receiving SEIT since at least September 2025. (Tr. 51, 54). I do not find, however, there exists any contractual obligation between Parent and the direct providers unilaterally provided services to Student.

Indeed, a party seeking prospective funding or reimbursement must show that they have a contractual obligation to pay for services. *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442 (2d Circ. 2014).

Here, while Parent testified OT Direct Provider, PT Direct Provider and SEIT Direct Provider #1, and SEIT Direct Provider #2 are providing OT, PT, and SEITs to Student, they failed

to submit any documentary evidence regarding their contractual obligation to the direct providers for the 2025-2026 school year. Indeed, the record shows the only pendency order relevant to the 2025-2026 school year was effective from October 27, 2025, to December 31, 2025, yet Parent continued to receive OT, PT, and SEITs from the direct providers. (Tr. 54). Parent also admitted neither they nor District was funding the services provider by the direct providers, no contract was signed between them and the direct providers, and no testimony was provided that indicated Parent was financially liable for any of those services. (Tr. 53-55). Therefore, even if Parent met their Prong II burden, as the record lacks sufficient information about any financial or contractual obligation between Parent and the direct providers, Parent's request for funding for their privately obtained providers would still be denied.

Furthermore, even if I were to have applied a compensatory services analysis with regard to Parent's proposed program, I find Parent's requested relief would still be denied.

*Compensatory Education*

The Supreme Court has emphasized that relief under the IDEA depends, in part, on "equitable considerations." *See Sch. Comm. of Town of Burlington, Mass. v. Dept. of Educ. of Mass.*, 471 U.S. 359, 374 (1985); *Carter*, 510 U.S. at 15-16. Under the IDEA, courts can "grant such relief as the court determines is appropriate," limited only by the restriction that "the relief is to be appropriate in light of the purpose of the Act" *Doe v. East Lyme Bd. Of Educ.*, 790 F.3d 440, 454 (2d Cir. 2015) (citation omitted). Equitable considerations are relevant in fashioning relief, and the court enjoys broad discretion in doing so. *Florence Cty. Sch. Dist. Four v. Carter,* 510 U.S. 7, 16 (1993). Although an award of damages is not available under the IDEA *(see Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist*., 288 F.3d 478, 486 [2d Cir. 2002]), "a court may award various forms of retroactive and prospective equitable relief, including reimbursement of tuition, compensatory education, and other declaratory and injunctive remedies." *Doe v. East Lyme*, 790 F.3d at 454.

An appropriate equitable remedy for a denial of FAPE can include an award of compensatory education. *E.M. v. New York City Dept. of Educ.*, 758 F.3d 442, 451 (2d Cir. 2014). The Second Circuit has stated, "[t]he IDEA allows a hearing officer to fashion an appropriate remedy, and we have held compensatory education is an available option under the Act to make up for denial of a free and appropriate public education." *P. ex rel. Mr. & Mrs. P. v. Newington Bd. of Educ.*, 546 F.3d 111, 123 (2d Cir. 2008).

Compensatory education is "prospective equitable relief" that requires a school district to fund education "as a remedy for any earlier deprivations in the child's education." *Somoza v. New York City Dept. of Educ.*, 538 F.3d 106, 109 n.2 (2d Cir. 2008) (citations omitted). Compensatory education is an award of educational services "to be provided prospectively to compensate for a past deficient program." (*Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 522 (D.C. 2005)( citations omitted); s*ee also P. v. Newington Bd. Of Educ.*, 546 F.3d 111, 123 (2d Cir. 2008).

"Generally, compensatory services are not designed for the purpose of maximizing a student's potential or to guarantee that the student achieves a particular grade-level in the student's areas of need." *Application of a Student with a Disability*, Appeal No. 23-028, *citing Application of a Student with a Disability*, Appeal No. 16-033; *cf. Bd. Of Educ. V. Rowley*, 458 U.S. 176, 189, 199 (1982); *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 379 (2d Cir. 2003); *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 132 (2d Cir. 1998). "Rather, an award of compensatory education should place the student in the position that he would have been in had the district acted properly." *Id. citing Parents of Student W.*, 31 F.3d at 1497. An award of compensatory education should be based on the record, as opposed to a default judgment based on District's failure to present a case. *See M.M. v. NYC Dep't of Educ.*, 2017 WL 1194685, at *8 (S.D.N.Y. 2017); *Branham v. Govt. of the Dist. Of Columbia*, 427 F.3d 7, 11-12 (D.C. Cir. 2005); *Application of Student with a Disability*, Appeal Nos. 23-028; 21-213).

As an equitable remedy, it is not to be awarded as a punishment for a school district's failure to provide a FAPE. *See Reid*, 401 F.3d at 522. It is also not a contractual remedy. *See Reid*, 401 F.3d at 523. Rather, it involves "discretionary, prospective injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure over a period of time to provide a FAPE to a student." *Reid*, 401 F.3d at 523 (citation and quotation omitted.) Compensatory education looks to undo damage done by prior violations. *Reid*, 401 F.3d at 523.

Requested compensatory hours, however, may be limited if the need for them is inadequately supported by the record. *Application of Student with a Disability*, Appeal No. 21-213 citing *Branham v. Govt. of the Dist. of Columbia*, 427 F.3d 7, 11-12 (D.C. Cir. 2005). Furthermore, a request for compensatory relief may be denied if there is insufficient causal link in the record between any deprivation and the student's current deficits. *See Phillips v. Dist. Of Columbia*, 932 F. Supp. 2d 42 (D.C. Cir. 2013); see also *T.B. v. Prince George's Cty. Bd. of Educ.*, 897 F.3d 566 (4th Cir. 2018).

Here, the record fails to provide sufficient evidence regarding Student's baseline functioning at the beginning of the 2025-2026 school year, and there is insufficient evidence of Student's ongoing deficits during the 2025-2026 school year. Indeed, there is no evidence of Student's then-present levels of performance at the beginning of the 2025-2026 school year, their current present levels of performance during the 2025-2026 school year, or any information what their progress should have been had Student not been denied a FAPE for the 2025-2026 school year. Therefore, there is no objective information to determine that Student's deficits, if any, were the result from a denial of FAPE. Indeed, the record fails to contain sufficient or objective evidence that demonstrates services are still needed for Student during the 2025-2026 school year. While Parent testified via affidavit to various harms they alleged were caused by District's failure to provide the services ordered in the 2019 FOFD during the 2025-2026 school year, I find their affidavit testimony to be incredible. Indeed, while Parent testified in their affidavit that Student's deprivation of SEITs caused Student to lose the intensive instructional support that was prescribed to enable him to access the curriculum, Parent admitted at the DPH that Student has been receiving SEITs since September

2025. (Tr. 54; Ex. J-6). Additionally, while Parent testified Student failed to receive 40.5 hours of regular OT services and 40.5 hours of PT services, which was based on 2.25 hours weekly of each service as ordered in the 2019 FOFD, Paret testified at the DPH that Student actually received both OT and PT during the 2025-2026 school year. (Ex. J-8). This calls into question the voracity of their affidavit. Therefore, based on Parent's contradicting testimony, I do not give Parent's affidavit any weight.

Moreover, even if I were to credit Parent's affidavit, the record lacks sufficient detail as to Student's current deficits. Indeed, while Parent testified that Student's failure to receive OT resulted in the emergence of maladaptive behaviors that interfere with Student's learning, Parent failed to provide any details as to such alleged maladaptive behaviors. Additionally, while Parent broadly identifies several of Student's areas of deficit in their affidavit, as stated previously in this Decision, Parent failed to provide any specific baseline as to Student's then-present level of functioning at the beginning of the 2025-2026 extended school year to explain how Student's current deficits were created by District's failure to provide a FAPE and how the requested compensatory education relief would address those deficits.

As such, Parent's request for an award of compensatory education based on the number of hours Student failed to receive the services ordered in the 2019 FOFD during the 2025-2026 school year is denied with prejudice.

## OTHER CONTENTIONS

I find the Parties' remaining contentions to be unnecessary to this decision, without merit, beyond my jurisdiction, or without sufficient basis in the record for a finding. Additionally, while I was inclined to direct District to evaluate Student in all areas of suspected disability, Parent testified Student was last evaluated in January 2026. Therefore, I do not find a reevaluation warranted at this time.

## ORDER

NOW, THEREFORE, IN LIGHT OF THE ABOVE FINDINGS OF FACT, IT IS HEREBY **ORDERED THAT**:

(1) Parent's claim for implementation and funding of the program and services recommended in the 2019 FOFD for the 2025-2026 school year is DENIED, with prejudice.

(2) Parent's request for an award of compensatory education based on the number of hours Student failed to receive the services ordered in the 2019 FOFD during the 2025-2026 school year is DENIED with prejudice.

(3) District shall convene the Committee on Special Education to review Student's records, consider and incorporate Student's most recent assessments and evaluations, and develop an Individualized Education Program based on Student's current needs within 45 days of the date of this Order.

Dated: June 15, 2026



Impartial Hearing Officer

**NOTICE OF RIGHT TO APPEAL**

Within 40 days of the date of this decision, the parent and/or the Public School District has a right to appeal the decision to a State Review Officer (SRO) of the New York State Education Department under section 4404 of the Education Law and the Individuals with Disabilities Education Act.

If either party plans to appeal the decision, a notice of intention to seek review shall be personally served upon the opposing party no later than 25 days after the date of the decision sought to be reviewed.

An appealing party's request for review shall be personally served upon the opposing party within 40 days from the date of the decision sought to be reviewed. An appealing party shall file the notice of intention to seek review, notice of request for review, request for review, and proof of service with the Office of State Review of the State Education Department within two days after service of the request for review is complete. The rules of procedure for appeals before an SRO are found in Part 279 of the Regulations of the Commissioner of Education. A copy of the rules in Part 279 and model forms are available at http://www.sro.nysed.gov.

## APPENDIX A- REDACTION IDENTIFICATION PAGE

| Redacted Information | Term Used In FOFD |
|---|---|
| [redacted] | Student |
| [redacted] | Parent |
| Philippe Gerschel | Parent Representative |
| Gabriel Skoletsky | Covering Parent Representative #1 |
| Adam Kohen | Covering Parent Representative #2 |
| Raymond Jackson | District Representative |
| Fraida Fleishmin | SEIT Direct Provider #1 |
| Victoria Kravitz | SEIT Direct Provider #2 |
| Dvora Levin | OT Direct Provider |
| Mirel Freidman | PT Direct Provider |

## APPENDIX B- DOCUMENTATION ENTERED INTO THE RECORD

### DISTRICT EVIDENCE

| Exhibit | Title | Date | Pages |
|---|---|---|---|
| 1 | Due Process Complaint | 12/31/2025 | 13 |
| 2 | Individualized Education Services Program (IESP) | 3/28/2023 | 26 |
| 3 | Letter Requesting IEP Meeting | 8/15/2025 | 1 |
| 4 | Letter of Discharge for Student | 9/8/2025 | 1 |
| 5 | Letter of Discharge for Student | 5/9/2024 | 1 |
| 6 | Wikipedia Page | 5/9/2024 | 11 |

### PARENTS EVIDENCE

| Exhibit | Title | Date | Pages |
|---|---|---|---|
| A | Amended Due Process Complaint | 2/10/2026 | 10 |
| B | Due Process Complaint (Original Filing) | 12/31/2025 | 13 |
| C | 174703 FOFD — Establishes the Pendency Program | 11/9/2019 | 7 |
| D | 226491 Pendency Order — Reaffirms Pendency Program | 12/19/2022 | 5 |
| E | 293773 Pendency Order — Reaffirms Pendency Program for 2024-2025 SY | 7/23/2025 | 5 |
| F | 303474 Order on Pendency — Most Recent Pendency Order | 12/23/2025 | 8 |
| G | Parent's IEP Meeting Request to CSE 6 | 8/15/2025 | 2 |
| H | Email Correspondence — Forwarded IEP Meeting Request Thread | 9/9/2025 | 2 |
| I | TDN | 9/15/2025 | 2 |
| J | Affidavit of Parent | 5/5/2026 | 9 |

### IHO EXHIBITS

| Exhibit | Title | Date | Pages |
|---|---|---|---|
| I | Pre-Hearing Conference Summary and Order | 3/18/2026 | 6 |
| II | Parent's Adjournment Request | 3/25/2026, 3/30/2026, 4/2/2026, 4/3/2026, 4/8/2026, 4/10/2026, 4/14/2026, and 4/15/2026 | 14 |

| | | | |
|---|---|---|---|
| III | Brief in Support of Pendency | 3/25/2026 | 19 |
| IV | Emails Regarding District’s Opposition to Parent’s Request for Pendency | 4/15/2026, 4/28/2026, and 4/29/2026 | 6 |
| V | Order on Pendency | 5/28/2026 | 8 |