2/10/2026

(Original File Date 12/31/2025)

IHO Melvin Dalere

Via email: MDalere2@oath.nyc.gov

With a copy to: RUlysse@schools.nyc.gov

Attn: Impartial Hearing Reporting System

**Re: Amended REQUEST FOR DUE PROCESS HEARING Case No. 307092**

[redacted] (DOB: [redacted] 2011)
NYC ID # [redacted]

Brooklyn, NY [redacted]

School Student Attends:
[redacted]

To Whom It May Concern:

The Law Office of Philippe Gerschel LLC has been retained to represent Alexandria Hertz ("Parent") in matters pertaining to the educational needs of her child, [redacted] (" [redacted] has been identified by the Committee on Special Education ("CSE") as a student with a disability and is classified with Autism.

**The Law Office of Philippe Gerschel LLC now files this request for a due process hearing on Parent's behalf.**

**Pendency Request:**

Parent asserts that pendency lies in the unappealed FOFD dated November 9th 2019 which mandated the following services: 40 hours per week of 1:1 SEIT services in a general location (at home and at school); 7 hours per week of 1:1 enhanced OT services incorporating Astronaut Training and Therapeutic Listening (Integrated Listening System); 2 hours per week of Parent Counseling and Training services; 2 hours per week of BCBA supervision; regular OT 3 times per week for 45 minutes per session; Physical Therapy ("PT") 3 times per week for 45 minutes per session; and Speech and Language Therapy ("SLT") 4 times per week for 30 minutes per session. Unless the district agrees in writing to implement this pendency program, we also respectfully request an expedited pendency hearing and the issuance of an interim order on pendency.

**Request for Interim Relief:**

Parent respectfully requests interim relief pending the final resolution of this matter. Given the district's prolonged failure to evaluate [redacted] or convene an IEP meeting—having last met on March 28, 2023, over two and a half years ago—and its improper "discharge" of [redacted] from services, the district has denied Parent meaningful participation in the IEP

process and has failed to provide [redacted] with appropriate educational programming for the 2025-2026 school year. Accordingly, Parent requests the following interim relief:

1. **Independent Psychological Evaluation at Public Expense:** An interim order directing the DOE to fund an Independent Psychological Evaluation of [redacted] at public expense. The district has failed to conduct any evaluations of [redacted] since at least 2021, and the most recent independent psychological evaluation was conducted in April 2021 by Dr. Alan Blau. Given the district's unlawful "discharge" of [redacted] and refusal to convene an IEP meeting, Parent has no confidence that the district will conduct appropriate or timely evaluations. An updated independent psychological evaluation is necessary to assess [redacted] current cognitive, academic, social-emotional, and behavioral functioning and to inform the development of appropriate educational programming for the 2025-2026 school year and beyond.

2. **Interim Pendency Services:** An interim order directing the DOE to immediately fund [redacted] pendency program as established by the unappealed November 9, 2019 Amended Findings of Fact and Decision, including: 40 hours per week of 1:1 SEIT services in a general location (at home and at school); 7 hours per week of 1:1 enhanced OT services incorporating Astronaut Training and Therapeutic Listening (Integrated Listening System); 2 hours per week of Parent Counseling and Training services; 2 hours per week of BCBA supervision; regular 1:1 OT 3 times per week for 45 minutes per session; 1:1 PT 3 times per week for 45 minutes per session; and 1:1 SLT 4 times per week for 30 minutes per session, all at providers'/enhanced rates. The 2025-2026 school year has already commenced, and [redacted] requires immediate implementation of his pendency services to prevent regression and ensure continuity of educational support.

3. **Order to Convene CSE Meeting:** An interim order directing the DOE to immediately convene a CSE meeting to develop an appropriate IEP for [redacted] for the 2025-2026 school year, with appropriate consideration of all evaluative data including the requested IEEs, and with a qualified district representative present who has the authority to commit district resources and recommend the full continuum of services available to [redacted]

4. **Reversal of Discharge:** An interim order directing the DOE to immediately reverse its improper "discharge" of [redacted] and restore his status as a student eligible for special education services under the IDEA. The district's unilateral decision to "discharge" [redacted] without a properly constituted CSE meeting, without parent participation, and without compliance with required procedural safeguards, including prior written notice, is unlawful and must be immediately remedied.

**Presenting Problem:**

**The District Has Denied [redacted] a FAPE for the 2025-2026 School Year**

[redacted] is fourteen-years-old and is currently enrolled in the 2025-2026 school year. He has been diagnosed with Autism Spectrum Disorder ("ASD"), Sensory Processing Disorder ("SPD"), and Attention Deficit Hyperactivity Disorder ("ADHD"). Although very intelligent, he presents with behavioral challenges incident to sensory hypersensitivity and low frustration tolerance that negatively affect his ability to function appropriately and to learn in school. He has academic delays and a limited attention span, and he is highly distractible. He becomes easily overwhelmed by sensory stimuli, which triggers maladaptive behaviors that

interfere with his learning. He also has visual perceptual, visual motor, graphomotor, gross motor, daily living skills, receptive, expressive, and pragmatic language, and social skills challenges, as well as difficulty with transitioning and with generalization of skills across environments. Due to his challenges, [redacted] requires a 12-month program to prevent regression.

Despite his challenges, [redacted] is capable of attending a general education class and school setting and of making progress, if provided with appropriate supports, including appropriate levels of 1:1 Special Education Itinerant Teacher ("SEIT") services, appropriate 1:1 Occupational Therapy ("OT") and related interventions, and appropriate levels of other related services and supports, all on a twelve-month basis.

**The District's Failure to Provide Any Program for the 2025-2026 School Year**

At the start of the 2025-2026 school year, [redacted] had no IEP in place. The CSE had last convened to develop educational recommendations for [redacted] more than two and a half years earlier, on March 28, 2023. Despite the statutory requirement to convene at least annually to update educational recommendations for a student classified with a disability, the CSE failed to convene a meeting for [redacted] for the 2024-2025 school year and has again failed to convene a meeting for the 2025-2026 school year.

Parent took proactive steps to address this failure. On or about August 15, 2025, Parent submitted a Request for an IEP Meeting to the CSE, requesting an appropriate program and placement for [redacted] for the 2025-2026 school year. Rather than comply with its legal obligations, the district responded on or about September 9, 2025, by claiming that it had "discharged" [redacted] and was refusing to conduct an IEP meeting because [redacted] had previously attended a school outside of New York City.

On or about September 15, 2025, Parent's counsel wrote to the district, respectfully requesting that it reconsider its decision to "discharge" [redacted] and restating Parent's concerns that the district had failed to conduct an IEP meeting for the current school year. To date, the district has failed to meaningfully respond to this correspondence or to schedule a CSE meeting for [redacted]

The district's "discharge" of [redacted] is procedurally and substantively improper. [redacted] remains a resident of New York City and is entitled to a free appropriate public education. The district cannot unilaterally "discharge" a student with a disability without conducting a proper evaluation, convening a CSE meeting with appropriate participants including the parent, and providing the procedural safeguards mandated by the IDEA, including prior written notice. The district's actions constitute a denial of FAPE and a violation of the IDEA's Child Find obligations.

**Historical Background and Prior Proceedings**

[redacted] educational needs are well-known to the district. His developmental and behavioral problems were first identified in preschool, and he has received educational services since that time. On September 16, 2015, the Committee on Preschool Special Education ("CPSE") met to develop an IEP for [redacted] for the 2015-2016 school year. To address [redacted] significant deficits and need for substantial 1:1 attention, intervention, and support, the CPSE recommended that [redacted] be placed in a general education classroom with 20 hours per week of SEIT services in a General Location/Preschool as well as 1:1 Speech and Language Therapy ("SLT") 4 times per week for 30 minutes, 1:1 Physical Therapy ("PT") 3 times per

week for 45 minutes, and 1:1 OT 3 times per week for 45 minutes, all on a twelve-month basis.

In November 2015, however, the CPSE arbitrarily reduced [redacted] SEIT services to 15 hours per week. The parents challenged this reduction through the impartial hearing process, and the 20 hours of SEIT services per week were ultimately reinstated for the remainder of the 2015-2016 school year.

In April 2016, without conducting any evaluations, the CSE arbitrarily eliminated [redacted] SEIT hours entirely and instead recommended that [redacted] be provided with Special Education Teacher Support Services ("SETSS") in a group setting, rather than individually, and for only 10 periods per week. Additionally, the CSE further arbitrarily recommended a decrease in the duration of [redacted] SLT, OT, and PT services. [redacted] parents did not agree with these recommendations. On May 31, 2016, an Agreement and Order was issued clarifying that [redacted] last agreed-upon placement consisted of the program and services set forth in his September 16, 2015 IEP and directing the CSE to conduct a CSE meeting by June 15, 2016 and to consider the last agreed-upon services in developing educational recommendations for [redacted]

On June 15, 2016, the CSE met to develop educational programming for [redacted] and arbitrarily and inappropriately eliminated all 1:1 support from [redacted] educational program and recommended that [redacted] be placed in a special class, along with reduced levels of 1:1 OT, PT, and of 1:1 SLT relative to his last agreed-upon September 16, 2015 IEP.

In June 2016, [redacted] was evaluated by Dr. Panagiotis A. Rekoutis, a licensed doctoral-level occupational therapist. Dr. Rekoutis' evaluation highlighted [redacted] sensory deficits and his hypersensitivity to tactile, auditory, and visual sensory stimuli, and stressed that exposure to challenging conditions or to environments that have multiple sensory stimuli overwhelm [redacted] sensory system leads to negative behavioral and emotional responses. Dr. Rekoutis found that [redacted] required enhanced occupational therapy for at least eight sessions per week for 45 minutes, to facilitate development and integration of sensory processing, gross motor, and fine motor skills. He also recommended that [redacted] be provided with a sensory diet consisting of opportunities for organized movement and heavy proprioceptive input at home and at school, in order to regulate his sensory state, address his behavioral challenges, and to facilitate his learning and development. Dr. Rekoutis further recommended that Astronaut Training: A Sound Activated Vestibular-Visual Protocol for Moving, Looking & Listening should be incorporated into [redacted] therapy to address his visual-vestibular processing deficits, and that Therapeutic Listening, an auditory integration program, should be utilized to address [redacted] auditory processing challenges and decrease his hypersensitivity to auditory stimuli.

In August 2016, [redacted] was privately evaluated by Dr. Henry Hasson, a pediatric neurologist, who recommended that [redacted] be provided with SEIT services, SLT, Applied Behavior Analysis ("ABA"), OT, and PT to address his needs.

In August and September 2016, [redacted] underwent a functional behavioral assessment by Dr. Carol Fiorile, a doctoral-level BCBA-D with over twenty years of experience working with and evaluating students with developmental deficits. As a result of her evaluation, Dr. Fiorile found that although [redacted] was intelligent and had significant potential, he had significant behavioral challenges incident to sensory hypersensitivity and low frustration tolerance that negatively affected his ability to function and learn in an educational setting. She determined that [redacted] required placement in a general education setting supported by a minimum of 40

hours of 1:1 SEIT services weekly, to be provided in a general setting (both in school and at home). She also recommended provision of at least 2 hours per week of supervision by a BCBA, as well as at least 2 hours per week of home and community-based Parent Counseling and Training to facilitate the implementation of instructional programs and transitions between home and school. Dr. Fiorile also endorsed Dr. Rekoutis' findings and recommended that [redacted] be provided with continued individual OT, as well as with additional enhanced individual OT incorporating Astronaut Training and Therapeutic Listening, provision of a sensory diet, and regular OT consultations to develop appropriate sensory modifications and supports for [redacted] in school, as well as to ensure that his SEITs would be able to implement his sensory diet appropriately. Dr. Fiorile also recommended that [redacted] continue to receive the levels of 1:1 SLT and PT that he had been receiving pursuant to his September 16, 2015 IEP. Finally, Dr. Fiorile emphasized that due to the extent of [redacted] deficits, he required 12-month services to prevent regression.

In September 2016, Fraida Flaishman, a licensed occupational therapist with over twenty years of experience providing OT and who has specialized training and experience in Astronaut Training and Therapeutic Listening, evaluated [redacted] to develop further recommendations to address his sensory sensitivities and OT needs. She found that [redacted] required daily enhanced 1:1 OT for seven hours per week on a twelve-month basis incorporating the Astronaut Program and Therapeutic Listening/Integrated Listening System (as opposed to only receiving the 3 sessions per week of regular 1:1 OT he had been receiving since preschool), in order to address his challenges, to facilitate development and integration of sensory processing, and to address his deficient fine and gross motor skills. She also recommended that he be provided with an appropriate sensory diet to stay regulated and available for learning throughout the day. Ms. Flaishman also stressed the importance of ensuring that the SEITs working with [redacted] are aware of his deficits and capable of implementing the specific strategies and therapeutic interventions he requires (including his sensory diet) throughout the day in order to enable him to remain regulated and available for learning.

On February 26, 2018, based in part upon the 2016 evaluations of Dr. Rekoutis, Dr. Fiorile, and Ms. Flaishman, an impartial hearing officer ("IHO") found that the district had failed to offer [redacted] a free, appropriate public education. The impartial hearing officer further found that [redacted] required a twelve-month program consisting of: 40 hours per week of 1:1 SEIT services in a general location (at home and at school); 7 hours per week of enhanced OT services incorporating Astronaut Training and Therapeutic Listening/Integrated Listening System; 2 hours per week of Parent Counseling and Training services; 2 hours per week of BCBA supervision of [redacted] program; regular OT 3 times per week for 45 minutes per session; PT 3 times per week for 45 minutes per session; and SLT 4 times per week for 30 minutes per session in order to appropriately address his needs and to provide him with a free, appropriate public education.

In April 2018, [redacted] was again evaluated by Dr. Fiorile, who concluded that [redacted] had made progress since she had last evaluated him due to the "intensive" and "specially designed" programming that [redacted] had been receiving, but found that he still had deficits necessitating continuation of the program and services she had recommended pursuant to her prior evaluation in order to make progress and avoid regression. A Psychological Evaluation by Dr. Deborah Mann, also conducted in April 2018, further supported [redacted] need for continued placement in a general education setting with continuation of the program and services deemed necessary by Dr. Fiorile and Dr. Rekoutis. Dr. Fiorile and Dr. Mann thus indicated that [redacted] continued to require the program and services that had been deemed

necessary and appropriate for him pursuant to the February 26, 2018 hearing officer's decision.

For the 2018-2019 school year, despite having in its possession [redacted] 2016 independent OT and Educational and Behavioral evaluations that had previously been provided by [redacted] parents, as well as the 2018 evaluations of Dr. Fiorile and Dr. Mann, all of which attested to [redacted] continued need for a program consisting of 40 hours per week of 1:1 SEIT services in a general location (at home and at school); 7 hours per week of enhanced OT incorporating Astronaut Training and Therapeutic Listening/Integrated Listening System; 2 hours per week of Parent Counseling and Training; 2 hours per week of BCBA supervision; regular OT 3 times per week for 45 minutes per session; PT 3 times per week for 45 minutes per session; and SLT 4 times per week for 30 minutes per session, all on a twelve-month basis, and despite lacking any evaluative or documentary material to support a contrary position, the CSE nonetheless inexplicably and inappropriately eliminated all 1:1 SEIT services, enhanced OT services, BCBA and Parent Counseling and Training services, recommended only a reduced level of regular related services (specifically 1:1 PT, OT, and SLT, each for only 3 times per week for 30 minutes per session), and recommended all services only on a 10-month basis only.

[redacted] parents challenged the district's recommendations for [redacted] for the 2018-2019 school year through the impartial hearing process, invoking their son's right to pendency in the services awarded by the prior IHO based upon the February 26, 2018 decision. On November 9, 2019, the Impartial Hearing Officer ("IHO") issued an Amended Findings of Fact and Decision finding, among other things, that [redacted] was entitled to his pendency program of services for the school year, specifically: 40 hours per week of 1:1 SEIT services to be provided in a general location (at home/at school); 7 hours per week of 1:1 enhanced OT services incorporating Astronaut Training and Therapeutic Listening (Integrated Listening System); 2 hours per week of Parent Counseling and Training; 2 hours per week of BCBA supervision; 3x45 minute sessions of 1:1 OT; 3x45 minute sessions of 1:1 PT; and 4x30 minute sessions of 1:1 SLT. She also found that the providers for all of the above services should be paid for their services at prevailing rates. This decision was not appealed.

Following the unappealed November 9, 2019 decision affirming [redacted] required program, his needs persisted. An April 2021 Psychological and Educational Evaluation conducted by Alan Blau, Ph.D., BCBA, reaffirmed [redacted] diagnoses of Autism Spectrum Disorder, ADHD, and Sensory Processing Disorder. Dr. Blau confirmed [redacted] ongoing significant academic, social, visual, and sensory challenges, despite the benefits derived from his intensive support program within a mainstream setting. Dr. Blau explicitly recommended the continuation of [redacted] comprehensive twelve-month program, including 40 hours per week of 1:1 SEIT, enhanced OT incorporating Astronaut Training and Therapeutic Listening (7 hours/week), regular OT (3x45/week), PT (3x45/week), and SLT (4x30/week), along with BCBA supervision and parent training, deeming these supports essential for [redacted] to manage his challenges, prevent regression, and thrive. However, the CSE failed to offer timely or appropriate programs for the subsequent school years, including the 2020-2021 and 2021-2022 school years, necessitating the parents' continued reliance on the pendency program established by the November 9, 2019 Amended Findings of Fact and Decision.

Consequently, Parent was compelled to initiate further due process proceedings to secure [redacted] educational rights. On or about May 17, 2022, the parents filed an Impartial Hearing Request (Case No. 226491) challenging the district's failure to provide [redacted] a FAPE for the 2021-2022 school year. This action resulted in a Pendency Order dated December 19, 2022,

which once again affirmed [redacted] entitlement to the full program of services established as pendency by the November 9, 2019 decision, retroactive to the filing date. Despite these ongoing proceedings and clear documentation of [redacted] needs, the CSE continued its pattern of procedural failures, failing to convene a timely annual review for the 2022-2023 school year. Indeed, prior to the untimely meeting on March 28, 2023, the CSE had last convened to develop recommendations for [redacted] nearly two years earlier, on or about May 26, 2021.

**The Procedurally and Substantively Deficient March 2023 CSE Meeting**

Prior to the March 28, 2023 meeting, the CSE failed to conduct or consider sufficient evaluations and thus made recommendations for [redacted] without adequate or appropriate justification. Despite federal requirements for the CSE team (including the child's parents) to review the already-existing data and decide, jointly, what additional evaluations are required, the CSE failed to do so. In violation of state and federal regulations, the CSE failed to adequately consult or include [redacted] parents in the evaluation process, and as a result, [redacted] was not evaluated in all areas of need. The CSE did not conduct an updated occupational therapy evaluation prior to recommending a substantial reduction in [redacted] OT services, despite [redacted] significant sensory processing, graphomotor, visual perceptual/visual motor, and daily living skills deficits. The CSE did not conduct an updated speech and language evaluation of [redacted] prior to eliminating all twelve-month SLT, despite [redacted] language deficits. The CSE failed to conduct an updated physical therapy evaluation before reducing [redacted] PT services, despite [redacted] gross motor and motor planning deficits. The CSE further failed to conduct a social history or a classroom observation of [redacted] The CSE also failed to conduct any assessment of [redacted] classroom behavior or to recommend any behavioral supports for [redacted] In addition, the CSE failed to seriously consider the independent Psychological and Educational Evaluation that [redacted] parents had previously provided to the CSE and provided again prior to [redacted] March 2023 meeting, nor did it adequately review or consider the progress reports provided to the district for the meeting by [redacted] parents, even though this evaluation and reports provided the most up-to-date evaluative and documentary information regarding [redacted] current functioning and educational needs. The CSE's failure to conduct evaluations of [redacted] in all areas of his suspected disability before making significant changes to his educational program is a violation of federal law. The CSE failed to ensure that it had adequate documentary and evaluative material regarding [redacted] needs in order to develop educational programming for him. Without sufficient evaluative and documentary material regarding [redacted] needs, the CSE could not — and did not — create a substantively appropriate educational program for [redacted]

The March 2023 CSE team was not validly constituted, since a qualified district representative (someone who was aware of, and had the authority to recommend, the full continuum of services available to [redacted] was not present at the meeting. As a result, the CSE failed to consider or to recommend the full range of services available to [redacted] The recommendations made for [redacted] at his March 2023 CSE meeting were predetermined, preventing [redacted] parents from fully participating in the development of their son's educational programming, as contemplated by the IDEA. During the meeting, it became evident that decisions and recommendations were being made pursuant to district policy, rather than based on [redacted] individual needs. [redacted] parent was advised by the CSE team that the CSE could not consider recommending SEIT for [redacted] despite the recommendations of [redacted] evaluating psychologist or of his SEIT, individuals who had directly worked with and evaluated [redacted] The CSE inappropriately failed to provide

[redacted] parents a full and meaningful opportunity to participate in the educational decision-making process. The CSE inappropriately made decisions regarding [redacted] educational programming, including regarding goals for him, without his parents' participation and without consultation with his service providers. Despite the fact that a hearing officer had previously determined that [redacted] required 40 hours of 1:1 SEIT services in a general location (at home and at school) to provide him with appropriate support for instruction, behavior, social skills, and appropriate sensory supports to enable him to function and learn throughout the day, as well as 7 hours of enhanced 1:1 OT incorporating Astronaut Training and Therapeutic Listening/Integrated Listening System weekly to appropriately address his sensory integration and ocular motor deficits, the CSE refused to even consider recommending these services for [redacted] Indeed, the CSE eliminated these services entirely from [redacted] program.

The CSE also failed to recommend any BCBA services for [redacted] nor did it recommend any Parent Counseling and Training Services for [redacted] in violation of state law. Moreover, despite the evidence before the CSE attesting to [redacted] continued need for twelve-month programming to prevent regression, the CSE refused to even consider recommending twelve-month services for [redacted] Upon information and belief, the CSE made the above-referenced decisions regarding [redacted] educational programming solely based upon district policy, rather than upon a full consideration of [redacted] individual needs, in violation of the IDEA. The CSE failed to seriously consider [redacted] parents' concerns regarding [redacted] educational needs. By predetermining recommendations, basing recommendations on district policy rather than on [redacted] individual needs, failing to fully evaluate [redacted] or to review and consider his most recent private evaluations, failing to ensure that it had adequate documentary material upon which to base recommendations, failing to seriously consider the concerns of [redacted] parents regarding [redacted] educational needs, and by failing to fully or adequately consult the parent or the individuals involved in [redacted] education regarding its proposed recommendations, the CSE prevented [redacted] parents from fully and meaningfully participating in the creation of [redacted] educational program, as contemplated by the IDEA, resulting in a loss of educational opportunity to [redacted]

The services that the CSE indicated to [redacted] parent that it would be recommending for [redacted] - specifically, 7 periods per week of SETSS in a group, 4 times per week for 30 minutes of SL, 4 times per week for 45 minutes of regular OT, 3 times per week for 30 minutes of PT, all on a ten-month basis - were not appropriate or sufficient for [redacted] The services recommended failed to include any 1:1 special education instruction or support for [redacted] and failed to include any enhanced OT services, BCBA supervision, or Parent Counseling and Training, or any twelve-month services to prevent regression, and were utterly insufficient to appropriately address [redacted] needs and to enable him to make measurable progress and avoid regression. The services recommended were completely insufficient to provide [redacted] with the intensive level of support necessary to enable him to function and learn in the least restrictive environment and to provide him with a free, appropriate public education. The recommendation of only 4x45 minutes of regular OT weekly on a 10-month basis, was insufficient to make up for the district's failure to recommend any enhanced OT services or to make up for the district's failure to recommend OT services for [redacted] on a twelve-month basis.

Following the March 2023 CSE meeting, the district failed to provide [redacted] parents with any prior written notice of its recommendations, in violation of federal law, despite the CSE's decision to terminate [redacted] last agreed-upon services.

**The District's Continued Pattern of Failures Through 2024-2025 and Into 2025-2026**

Subsequent to the procedurally and substantively flawed March 28, 2023 CSE meeting, the Parents rejected the district's inappropriate recommendations which constituted a denial of FAPE. Consequently, the CSE failed to offer [redacted] a timely or appropriate program for the entirety of the 2023-2024 school year. Faced with the district's failure, the Parents were compelled to continue implementing [redacted] pendency program, as established by the unappealed November 9, 2019 Amended Findings of Fact and Decision (Case No. 174703), to ensure he received necessary supports. The district's failure necessitated further legal action, including the filing of an Impartial Hearing Request for the 2023-2024 school year (Case No. 275599) on June 24, 2024, which resulted in subsequent orders reaffirming [redacted] entitlement to his pendency program and confirming the district's ongoing failure to provide FAPE.

The district's pattern of neglect continued into the 2024-2025 school year, during which the CSE entirely failed to convene the mandated annual review meeting to develop an IEP for [redacted] Despite written notification from the Parents prior to the start of the 2024-2025 school year advising the district of this failure and their intent to continue implementing the pendency program (Letter dated June 21, 2024), the district remained unresponsive. This dereliction forced the Parents to once again file for due process (Case No. 293773 filed April 8, 2025, and Case No. 294933 filed June 3, 2025) and obtain further Pendency Orders (e.g., Order dated May 20, 2025 in Case No. 293773) confirming [redacted] rights. Throughout the 2024-2025 school year, due to the district's complete abdication of its responsibilities, the Parents privately arranged and funded the full complement of [redacted] required pendency services to prevent regression and ensure continuity of support.

This pattern has now extended into the 2025-2026 school year. Not only has the CSE failed to convene the required annual review meeting, but it has compounded its failures by improperly "discharging" [redacted] from services entirely. The district's September 9, 2025 communication claiming that [redacted] has been "discharged" because he previously attended a school outside of New York City is legally baseless and constitutes a flagrant violation of the IDEA's Child Find obligations and the district's duty to provide FAPE to all eligible students residing within its jurisdiction.

**Proposed Resolution:**

1. A finding that the district's unilateral "discharge" of [redacted] is unlawful and an order directing the district to immediately restore [redacted] status as a student eligible for special education services;

2. A finding that the failure and refusal of the DOE to convene an IEP Meeting is a violation of the Child Find provision of the IDEA;

3. A finding that the failure of the DOE to provide a program for [redacted] for the 2025-2026 school year is a denial of a FAPE for the 12M 2025-26 school year;

4. An order directing the DOE to fund an Independent Psychological Evaluation of [redacted] at the public expense;

5. An order directing the DOE to convene a properly constituted CSE meeting within 30 days of the completion of the Independent Psychological Evaluation to develop an appropriate IEP for [redacted] for the 2025-2026 school year, with appropriate consideration of all evaluative data and with a qualified district representative present

who has the authority to commit district resources and recommend the full continuum of services;

6. An order that the DOE fund the program outlined in the above-referenced Pendency program for the 12M 2025-26 school year at the providers'/enhanced rate; specifically funding for/reimbursement for [redacted] pendency services for the 2025-2026 school year, including: 40 hours per week of 1:1 SEIT services in a general location (at home and at school); 7 hours per week of enhanced 1:1 OT services incorporating Astronaut Training and Therapeutic Listening/Integrated Listening System; 2 hours per week of Parent Counseling and Training services; 2 hours per week of BCBA supervision; regular 1:1 OT 3 times per week for 45 minutes per session; 1:1 PT 3 times per week for 45 minutes per session, and 1:1 SLT 4 times per week for 30 minutes per session, at providers'/enhanced rates, in the absence of an appropriate IEP for [redacted] for the 2025-2026 school year;

7. Provision of/funding for/reimbursement for compensatory SEIT, enhanced OT, Parent Counseling and Training, BCBA supervision, and regular OT, PT, and SLT services for any of the above-referenced services that should have been, but were not, provided during the 2025-26 school year, at enhanced/providers' rates;

8. Payment of the Parent's attorney's fees and expenses associated with representation in this matter; and

9. Any further relief that the hearing officer may deem just and proper to ensure that the student receives a free appropriate public education.

Please direct all questions concerning this matter to my office located at the address below.

Sincerely,

<u>/s/ Philippe Gerschel Esq.</u>
Law Office of Philippe Gerschel
30 Fifth Ave Suite 15D
New York, New York 10011
347-365-2624
gerschel@gerschellaw.com