**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| A.H., individually and on behalf of N.H., a student with a disability,<br><br>Plaintiffs,<br><br>-against-<br><br>The Board of Education of the City School District of the City of New York, the New York City Department of Education, a/k/a New York City Public Schools, the City of New York, and Chancellor Kamar H. Samuels, in his official capacity,<br><br>Defendants. | 26 Civ. 5926 (MMG) (HJR)<br><br>ECF CASE |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**Dated: New York, NY**
**July 16, 2026**

**The Law Office of Laura D. Barbieri, PLLC**

Laura D. Barbieri, Esq.
*Attorneys for Plaintiffs*
115 W 73rd Street, Ste 1B
New York, NY 10023
Tel: (914) 819-3387
Email: Laura@LDBarbLaw.com
www.LDBarbLaw.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 3

A. The Unappealed 2019 FOFD Establishes N.H.'s Pendency Program. ........ 3

B. The March 2023 IESP Did Not Supersede the 2019 Program as Pendency. ........ 5

C. The May 28, 2026 Order on Pendency and the Present Service Emergency. ........ 6

ARGUMENT ........ 7

I. THE COURT SHOULD ISSUE A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ENFORCING N.H.'S PENDENCY, THE 2019 PROGRAM, UNDER 20 U.S.C. § 1415(j). ........ 7

A. Pendency Is Automatic, Enforceable Without Exhaustion, and Includes Public Funding. ........ 7

B. The 2019 FOFD and the DOE's Course of Funding Establish the 2019 Program as N.H.'s Stay-Put Placement. ........ 9

C. DOE's Funding Lapse Is a Prohibited Unilateral Change, and the 2023 IESP Did Not Displace the 2019 Program. ........ 10

D. The Parent's Stopgap Retention of Providers Did Not Reject Pendency Because It Preserved, Rather Than Changed, N.H.'s Agreed Stay-Put Program. ........ 11

E. The Order Should Restore the Program Prospectively Under § 1415(j), and Separately Provide for Payment of Delivered Services and Make-Up Services. ........ 13

II. ALTERNATIVELY, THE COURT SHOULD EXERCISE ITS EQUITABLE AUTHORITY UNDER 20 U.S.C. § 1415(i)(2)(C)(iii) AND RULE 65 TO PRESERVE N.H.'S 2019 PROGRAM DURING THESE PROCEEDINGS. ........ 15

A. Section 1415(i)(2)(C)(iii) Authorizes Appropriate Equitable Relief in IDEA Civil Actions. ........ 16

B. Plaintiffs Satisfy the Traditional Requirements for a TRO and Preliminary Injunction. 16

1. N.H. Will Suffer Irreparable Harm Absent Injunctive Relief. ........ 17

2. Plaintiffs Are Likely to Succeed on the Merits. ........ 17

3. The Public Interest and Balance of Equities Favor Plaintiffs. ........ 18

4. The Court Should Waive the Bond Requirement or Set Nominal Security. ........ 18

CONCLUSION ........ 19

## TABLE OF AUTHORITIES

**Cases**

*A.H. v. New York City Dep't of Educ.*, No. 22-CV-9861 (LGS) (S.D.N.Y. Nov. 23, 2022).........16

*A.R. ex rel. R.V. v. New York City Dep't of Educ.*, 407 F.3d 65 (2d Cir. 2005) .............................8

*Arlington Cent. Sch. Dist. v. L.P.*, 421 F. Supp. 2d 692 (S.D.N.Y. 2006).....................................7

*Bd. of Educ. v. Engwiller*, 170 F. Supp. 2d 410 (S.D.N.Y. 2001) ..................................................8

*Bd. of Educ. v. Schutz*, 290 F.3d 476 (2d Cir. 2002)............................................................8, 9

*Brown v. Bd. of Educ.*, No. 04-cv-6596, 2005 WL 17838 (W.D.N.Y. Jan. 4, 2005) ....................18

*Cosgrove v. Bd. of Educ.*, 175 F. Supp. 2d 375 (N.D.N.Y. 2001) ..........................................17, 18

*Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440 (2d Cir. 2015) ...........................................8, 9, 12, 13

*Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993).......................................................16

*Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137 (2d Cir. 1997) ..................................16

*Honig v. Doe*, 484 U.S. 305 (1988) ..............................................................................................7

*L.G. v. New York City Dep't of Educ.*, No. 23-cv-9268 (S.D.N.Y. Nov. 3, 2023) .......................16

*M.G. v. New York City Dep't of Educ.*, 982 F. Supp. 2d 240 (S.D.N.Y. 2013)..............................8

*Mackey ex rel. Thomas M. v. Bd. of Educ.*, 386 F.3d 158 (2d Cir. 2004)...................................7, 9

*Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195 (2d Cir. 2002) ..........................8

*Open Soc'y Justice Initiative v. Trump*, No. 20-civ-8021 (KPF), 2021 WL 22013 (S.D.N.Y. Jan. 4, 2021) ..........................................................................................................................16

*Petties v. District of Columbia*, 238 F. Supp. 2d 88 (D.D.C. 2002) .............................................17

*Pharm. Soc'y of N.Y., Inc. v. N.Y. State Dep't of Soc. Servs.*, 50 F.3d 1168 (2d Cir. 1995) .........18

*Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985).............................................16

*Scheff v. New York City Dep't of Educ.*, No. 22 Civ. 7579 (PAE), 2023 WL 4211117 (S.D.N.Y. June 27, 2023).........................................................................................................................8

*V.W. v. Conway*, 236 F. Supp. 3d 554 (N.D.N.Y. 2017) .........................................................16, 18

*Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519 (2d Cir. 2020)............. passim

*Wagner v. Bd. of Educ. of Montgomery Cnty.*, 335 F.3d 297 (4th Cir. 2003) ..............................16

*Zvi D. v. Ambach*, 694 F.2d 904 (2d Cir. 1982).............................................................7, 8, 9, 10

**Statutes and Rules**

20 U.S.C. § 1415(i)(2)(C)(iii) ........................................................................3, 13, 15, 16

20 U.S.C. § 1415(j) ......................................................................................... passim

34 C.F.R. § 300.518 ..........................................................................................9

Fed. R. Civ. P. 65 ..................................................................................3, 14, 15, 19

8 N.Y.C.R.R. § 200.5 ....9

**Other Authorities**

*Application of a Student with a Disability*, Appeal No. 22-134 ....9
*Application of a Student with a Disability*, Appeal No. 22-167 ....9
*Application of a Student with a Disability*, Appeal No. 24-628 ....4
*Application of a Student with a Disability*, Appeal No. 24-636 ....4, 5, 6, 12
*Application of a Student with a Disability*, Appeal No. 25-177 ....6
*Application of a Student with a Disability*, Appeal No. 25-265 ....6, 11, 12
*Letter to Hampden*, 49 IDELR 197 (OSEP 2007) ....8

## PRELIMINARY STATEMENT

Plaintiff A.H., individually and on behalf of her minor child, N.H., a fifteen-year-old student with a disability, respectfully submits this memorandum of law in support of her motion for a temporary restraining order and preliminary injunction directing Defendants to immediately implement and fund N.H.'s pendency ("stay-put") program under 20 U.S.C. § 1415(j) – the twelve-month program of intensive individualized services awarded by a final, unappealed Findings of Fact and Decision ("FOFD") dated November 9, 2019 (the "2019 Program") – prospectively, and without interruption, while the underlying administrative and judicial review proceedings are pending. Plaintiffs separately seek two forms of remedial relief that are not part of the emergency: direct payment to the providers, upon competent proof, for services they actually delivered after the DOE's funding lapsed on December 31, 2025; and make-up pendency services for the components never delivered at all.

N.H.'s entitlement to pendency is not a close question. His pendency program was fixed by a final decision the DOE never appealed; it has been reaffirmed as his pendency placement in one proceeding after another; and Defendants repeatedly funded it as pendency, most recently through December 31, 2025 pursuant to an Order on Pendency dated December 23, 2025. The DOE thus has already conceded, by its own repeated conduct, that the 2019 Program is N.H.'s then-current educational placement for stay-put purposes.

Nevertheless, when N.H.'s current due process proceeding was filed, the Impartial Hearing Officer denied interim pendency by Order dated May 28, 2026, on the theory that the parent's retention of private providers to deliver the very services the 2019 FOFD ordered amounted to a "rejection" of pendency. That conclusion misapplies decisions addressing parents who unilaterally

substituted a new school, new provider arrangement, or new program and then sought pendency funding for the substituted placement.

This case is different. Plaintiffs do not seek funding for a newly selected placement based on substantial similarity. They seek enforcement of the exact 2019 Program fixed by a final, unappealed FOFD, repeatedly reaffirmed in later pendency orders, and funded by Defendants through December 31, 2025.

The parent's temporary retention of providers after the DOE's lapse did not alter the *status quo*; it prevented the DOE's default from destroying the *status quo*. Treating the parent's emergency preservation of the same program as a waiver or rejection of pendency would upend the purposes and protections of § 1415(j): Defendants could stop funding, force the parent to choose between educational collapse and emergency mitigation, and then use the parent's mitigation efforts as a forfeiture of stay-put. That conduct is contrary to the purposes of the statute as well as Second Circuit law.

The consequences of the DOE's refusal to fund the 2019 Program are acute. PCAT and BCBA supervision stopped immediately when funding lapsed on December 31, 2025. The remaining providers carried the program at their own risk for a time and then stopped in stages: SLT stopped in January 2026, enhanced OT and PT stopped in March 2026, and SEIT, individual OT, and the balance of enhanced OT stopped in May 2026. As of this filing, no component of the 2019 Program is being delivered. As a result, N.H. is suffering and will continue to suffer irreparable educational and developmental harm.

What is needed to restore the program is prospective authorization and funding, not payment of arrears (at this time). The providers have advised that they will resume the provision of services without first being paid for the services they already delivered, but that they will not

resume without effective prospective authorization and funding at the prevailing rates the 2019 FOFD requires. Barbieri Decl. ¶ 34. The emergency before the Court is therefore the absence of a usable authorization, not a billing dispute. The IDEA's pendency provision operates as an automatic injunction enforceable in this Court without exhaustion. The Court should enforce it and direct Defendants to implement and fund the 2019 Program in its entirety. In the alternative only, if the Court treats any portion of the requested relief as discretionary interim relief rather than direct enforcement of stay-put, § 1415(i)(2)(C)(iii) provides the Court with IDEA-specific equitable authority to grant appropriate relief, including the provision of all missing services as well as appropriate compensatory education for N.H.'s previous and ongoing loss of services to date. Further, Plaintiffs satisfy the traditional standards for temporary restraining order and preliminary-injunction relief under Rule 65 of the Federal Rules of Civil Procedure. Finally, historical payment for unbilled but delivered services can proceed subsequently upon competent proof, and make-up relief can address the remaining shortfall.

## STATEMENT OF FACTS

### A. The Unappealed 2019 FOFD Establishes N.H.'s Pendency Program.

N.H. is a fifteen-year-old student classified as a student with autism, with additional diagnoses of autism spectrum disorder, sensory processing disorder, anxiety, and Attention-Deficit/Hyperactivity Disorder ("ADHD"). He has received special education services continuously since preschool and requires a twelve-month program to make meaningful progress and avoid substantial regression. *See* Barbieri Declaration, Exhibit 1:[1] A.H. Declaration ¶7.[2]

[1] The Barbieri Declaration, and its annexed exhibits and referenced paragraphs, is cited hereafter as "Barbieri Decl. Ex. __" or "Barbieri Decl. ¶__," as applicable.
[2] The A.H. Declaration (hereafter cited as "A.H. Decl.") is annexed as Ex. 1 to Barbieri Decl. Referenced paragraphs in the A.H. Decl. are cited hereafter as "A.H. Decl. ¶__."

By a Findings of Fact and Decision ("FOFD") dated November 9, 2019 (IHO Case No. 174703, Hon. Suzanne M. Carter) (the "2019 FOFD"), *see* Barbieri Decl. Ex. 2, an Impartial Hearing Officer ("IHO") found that N.H. was entitled, on a twelve-month basis, to the following educational program: forty hours per week of 1:1 Special Education Itinerant Teacher ("SEIT") services; seven hours per week of enhanced occupational therapy ("OT") incorporating Astronaut Training and Therapeutic Listening; two hours per week of Parent Counseling and Training; two hours per week of Board-Certified Behavior Analyst ("BCBA") supervision; individual OT three times weekly for forty-five minutes; individual physical therapy ("PT") three times weekly for forty-five minutes; and individual speech-language therapy ("SLT") four times weekly for thirty minutes.[3] DOE did not appeal the 2019 FOFD, identifying N.H.'s 2019 Program, and it became final and binding on the parties.

Since then, the 2019 Program has repeatedly been reaffirmed as N.H.'s pendency placement and educational program, and the DOE has been ordered to – and did – fund it, including by a Pendency Order dated December 19, 2022 (IHO Case No. 226491), Barbieri Decl. Ex. 3, a Pendency Order dated July 23, 2025 (IHO Case No. 293773), Barbieri Decl. Ex. 4, and a Pendency Order dated December 23, 2025 (IHO Case No. 303474); and in State Review Officer ("SRO") decisions in *Application of a Student with a Disability*, Appeal Nos. 24-628 and 24-636. Most recently, by an Order on Pendency dated December 23, 2025 (IHO Case No. 303474), Barbieri Decl. Ex. 5, the DOE was directed to fund the 2019 Program, and it did so through December 31, 2025. Barbieri Decl. ¶¶ 14–15; A.H. Decl. ¶¶ 13–14.

The SRO's own decisions involving N.H. confirm the operative stay-put program. In Appeal No. 24-628, the SRO recognized that the parties agreed during the impartial hearing that

---

[3] The educational program authorized by the 2019 FOFD is referred to herein as "the 2019 Program."

the 2019 FOFD formed the basis for N.H.'s pendency services and described the same service array comprising the 2019 Program. *See* Appeal No. 24-628. In Appeal No. 24-636, the SRO further recognized that, where the DOE fails to deliver pendency services, the student should receive make-up pendency services, and that enforcement of prior pendency orders occurs in a court rather than before an IHO or SRO. *See* Appeal No 24-636.

**B. The March 2023 IESP Did Not Supersede the 2019 Program as Pendency.**

The last program the Committee on Special Education ("CSE") developed for N.H. was an Individualized Education Services Program ("IESP") dated March 28, 2023; the CSE has not convened since. A.H. Decl. ¶ 15. For the 2025-2026 school year, the DOE failed to convene the CSE or develop any program, notwithstanding the parent's written request for an Individualized Education Program ("IEP") meeting dated August 15, 2025, Barbieri Decl. Ex. 6. Instead, on September 8, 2025, the DOE issued a discharge notice asserting that N.H. "transfer[ed] to [a] school outside of NYC" while conceding that he "remains an NYC resident." Barbieri Decl. Ex. 7; A.H. Decl. ¶ 19. In its merits decision dated June 15, 2026, *see* Barbieri Decl. Ex. 13, the IHO rejected the DOE's ensuing motion to dismiss, which was premised on the theory that N.H.'s claims belonged in the district where his nonpublic school is located, as "without merit," holding that the district of residence remained obligated to develop N.H.'s IEP. A.H. Decl. ¶ 40.

Nor did the March 28, 2023 IESP supersede the 2019 Program as N.H.'s pendency placement. The 2023 IESP was a subsequent CSE recommendation; it was not an agreement replacing the final, unappealed 2019 FOFD; more significantly, the DOE did not implement it as N.H.'s operative stay-put program. To the contrary, the DOE continued to fund the 2019 Program as pendency after the 2023 IESP, including through December 31, 2025. *Id.* at ¶¶ 14–15. A

subsequent, unimplemented IESP cannot displace the final administrative decision and course of pendency funding that fixed the *status quo*.

**C. The May 28, 2026 Order on Pendency and the Present Service Emergency.**

The parent filed the operative due process complaint for the 2025-2026 school year on December 31, 2025 (IHO Case No. 307092), and requested an interim order on pendency based on the unappealed 2019 FOFD. A.H. Decl. ¶ 22. The DOE did not propose any alternative pendency program; it objected to pendency and moved to dismiss. Barbieri Decl. ¶¶ 21–22. At no point did the DOE dispute that the 2019 FOFD is the appropriate basis for N.H.'s pendency. *Id.* at ¶ 23.

By Order dated May 28, 2026, the IHO nonetheless denied pendency, reasoning that the parent's retention of private providers to implement the 2019 Program constituted a "rejection" of pendency by self-help. Barbieri Decl. Ex. 12. The Order relied only on state administrative decisions, including SRO *Application of a Student with a Disability*, Appeal Nos. 24-636, 25-177, and 25-265, but did not account for the dispositive differences between those cases and this one. Since December 31, 2025, the DOE has failed to implement and fund each and every component of N.H.'s 2019 Program. Both the parent and the DOE have appealed the May 28, 2026 Order to the SRO, but given the Office of State Review's significant appeal backlog, no timely decision is expected. In the meantime, because of the DOE's default, N.H. has not and is not receiving any of components of his 2019 Program. As a result, N.H. is suffering and will continue to suffer irreparable educational and developmental harm.

# ARGUMENT

## I. THE COURT SHOULD ISSUE A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ENFORCING N.H.'S PENDENCY, THE 2019 PROGRAM, UNDER 20 U.S.C. § 1415(j).

The Court should issue a temporary restraining order and preliminary injunction directing Defendants to immediately implement and fund N.H.'s stay-put pendency program – the 2019 Program – retroactive to December 31, 2025 and prospectively while the administrative and judicial review proceedings are pending. Pendency is enforceable by this Court without further exhaustion; the DOE's refusal to fund the 2019 Program is a unilateral change of placement prohibited by the IDEA; and N.H.'s continued receipt of the 2019 Program at public expense is necessary to effectuate his rights under § 1415(j).

### A. Pendency Is Automatic, Enforceable Without Exhaustion, and Includes Public Funding.

Upon the filing of a due process complaint, and during the pendency of IDEA administrative and judicial proceedings, students have automatic "pendency" or "stay-put" rights. 20 U.S.C. § 1415(j). "[U]nless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . until all such proceedings have been completed." *Id.* The purpose of the provision is "to provide stability and consistency in the education of a child with a disability" while the parties dispute the student's program. *Arlington Cent. Sch. Dist. v. L.P.*, 421 F. Supp. 2d 692, 696 (S.D.N.Y. 2006) (citing *Honig v. Doe*, 484 U.S. 305 (1988)).

The IDEA's pendency provision is effectively "an automatic preliminary injunction," which substitutes "an absolute rule in favor of the *status quo*" for the court's discretionary consideration of irreparable harm, likelihood of success, and the balance of hardships. *Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982). The stay-put provision "guarantees" that the student

receives the same level and type of services during the dispute. *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 532 (2d Cir. 2020). And it does not turn on the ultimate merits of the underlying proceeding: it reflects "Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute . . . is ultimately resolved." *Mackey ex rel. Thomas M. v. Bd. of Educ.*, 386 F.3d 158, 160-61 (2d Cir. 2004) (internal quotations omitted).

To identify the then-current educational placement, a court typically looks to the placement described in the most recently implemented IEP, the operative placement actually functioning when stay-put was invoked, or the placement at the time of the previously implemented IEP. *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015). In addition – and dispositive here, a final administrative or judicial decision in favor of the parent's placement creates a *de jure* agreement establishing pendency in that decision. *Bd. of Educ. v. Schutz*, 290 F.3d 476, 484 (2d Cir. 2002); *see also Ventura de Paulino*, 959 F.3d at 532; *Bd. of Educ. v. Engwiller*, 170 F. Supp. 2d 410, 414 (S.D.N.Y. 2001); *Letter to Hampden*, 49 IDELR 197 (OSEP 2007).

"[I]mplicit in the maintenance of the *status quo* is the requirement that a school district continue to finance" the student's pendency placement; "[t]o cut off public funds would amount to a unilateral change in placement, prohibited by the Act." *Zvi D.*, 694 F.2d at 906; *accord Ventura de Paulino*, 959 F.3d at 531. It is the school district, not the parent, which bears responsibility for providing and funding the pendency program. *Ventura de Paulino*, 959 F.3d at 534-36; *see also Scheff v. New York City Dep't of Educ.*, No. 22 Civ. 7579 (PAE), 2023 WL 4211117, at *8, *10 (S.D.N.Y. June 27, 2023). "In short, the stay-put provision means that an educational agency is required to maintain the *status quo* placement." *E. Lyme Bd. of Educ.*, 790 F.3d at 453.

Finally, no exhaustion is required to enforce § 1415(j). *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199-200 (2d Cir. 2002); *Ventura de Paulino*, 959 F.3d at 531; *E. Lyme*, 790 F.3d at 455; *M.G. v. New York City Dep't of Educ.*, 982 F. Supp. 2d 240, 247 (S.D.N.Y. 2013). Because the administrative process provides no mechanism to enforce pendency, that pendency right is enforceable in this Court. *A.R. ex rel. R.V. v. New York City Dep't of Educ.*, 407 F.3d 65, 76 n.13 (2d Cir. 2005).

**B. The 2019 FOFD and the DOE's Course of Funding Establish the 2019 Program as N.H.'s Stay-Put Placement.**

There can be no genuine dispute that the 2019 Program is N.H.'s pendency placement. It was established by a final decision the DOE never appealed, the paradigmatic "*de jure* agreement" establishing pendency under *Schutz,* and the DOE itself funded the 2019 Program as the pendency program in prior years, most recently through December 31, 2025 pursuant to the December 23, 2025 Order on Pendency. Having repeatedly funded the 2019 Program as pendency, the DOE cannot now be heard to say it is not the operative placement for pendency purposes. By refusing to continue that funding, the DOE has effected precisely the "unilateral change in placement" the IDEA forbids. *Zvi D.*, 694 F.2d at 906.

The agreement is express as a matter of law. The IDEA's implementing regulation provides that where a hearing officer "agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents" for stay-put purposes. 34 C.F.R. § 300.518(d). The 2019 FOFD agreed with the parent and was never appealed; it therefore constitutes, by operation of law, an agreement establishing the 2019 Program as N.H.'s pendency placement. The Second Circuit describes the same principle as a "*de jure* agreement" arising from a final, unappealed decision. *Schutz*, 290 F.3d at 484. The State Review Officer applies the identical rule, holding that a pendency placement is established "by an

unappealed IHO or court decision in favor of the parents." *Application of a Student with a Disability*, Appeal Nos. 22-134, 22-167; *see* 8 N.Y.C.R.R. 200.5(m).

The 2019 Program reflecting N.H.'s pendency agreement is also implied by the parties' course of conduct. The then-current educational placement includes "the operative placement actually functioning at the time when the stay-put provision . . . was invoked." *E. Lyme Bd. of Educ.*, 790 F.3d at 452 (quoting *Mackey*, 386 F.3d at 163). The DOE authorized and funded the 2019 Program as N.H.'s pendency placement in successive proceedings and, most recently, through December 31, 2025 pursuant to the December 23, 2025 Order on Pendency (IHO Case No. 303474). Having repeatedly provided and funded the 2019 Program as pendency, DOE cannot now disclaim it; its conduct confirms the parties' agreement to that placement. As previously stated, "[t]o cut off public funds would amount to a unilateral change in placement, prohibited by the Act." *Zvi D.*, 694 F.2d at 906.

### C. DOE's Funding Lapse Is a Prohibited Unilateral Change, and the 2023 IESP Did Not Displace the 2019 Program.

Because the agreement is fixed by the unappealed 2019 FOFD, and was independently confirmed by the DOE's own funding practice, it neither depends on nor can be displaced by a later, unimplemented CSE IESP. The March 28, 2023 IESP was a subsequent recommendation, not an agreement between the DOE and the parent to replace the 2019 FOFD as pendency. The DOE did not implement the IESP as N.H.'s operative stay-put program, did not fund it as the agreed placement, and did not treat it as superseding the 2019 Program. To the contrary, the DOE continued to fund the 2019 Program as pendency after the IESP was developed and through December 31, 2025.

A later CSE recommendation may be relevant to the merits of whether the DOE offered N.H. a FAPE, but it does not automatically rewrite pendency. The stay-put inquiry is anchored in

the last agreed-upon or adjudicated placement, not the most recent unimplemented recommendation. Here, that *status quo* is the 2019 Program: the final FOFD-established program the DOE repeatedly funded and the only program functioning as N.H.'s stay-put placement when the current due process proceeding was filed.

Nor can the DOE take refuge in the theory that N.H.'s attendance at a nonpublic school outside the City relieves it of responsibility to fund pendency. The IHO rejected that very argument, on the merits, as "without merit," holding that the district of residence remained obligated to develop N.H.'s IEP. Barbieri Decl. Ex.13. The DOE cannot rely on a rejected jurisdictional theory to excuse its separate federal obligation to maintain pendency.

**D. The Parent's Stopgap Retention of Providers Did Not Reject Pendency Because It Preserved, Rather Than Changed, N.H.'s Agreed Stay-Put Program.**

The IHO's "rejection by self-help" rationale misapplies cases addressing parents who unilaterally substituted a new school, new provider arrangement, or new program and then sought pendency funding for that substituted placement. This case is different. Plaintiffs do not seek funding for a newly selected placement based on substantial similarity. They seek enforcement of the exact 2019 Program fixed by a final, unappealed FOFD, repeatedly reaffirmed in later pendency orders, and funded by the DOE through December 31, 2025. The parent's retention of providers after the DOE's lapse did not alter the *status quo*; it prevented the DOE's default from destroying the *status quo*.

*Ventura de Paulino* does not hold otherwise. *Ventura* prevents parents from unilaterally moving a child to a preferred new school or program and then invoking stay-put to shift the district's funding obligation to that newly selected placement. 959 F.3d at 532-36. Plaintiffs are not doing that. They are not asking the Court to deem a new program substantially similar to the 2019 Program. They are asking the Court to enforce the same FOFD-established program the DOE

has already funded as pendency. That is not a parent-created change in placement; it is maintenance of the agreed *status quo*.

The state administrative decisions on which the IHO relied are distinguishable. In Appeal No. 25-265, for example, the SRO treated the parent's private services as a rejection of pendency where the parent had unilaterally obtained services from a private company, the district had not agreed to the new arrangement, and the unilateral program selected by the parent had not been found appropriate in any administrative proceeding. *Application of a Student with a Disability*, Appeal No. 25-265. Here, by contrast, N.H.'s 2019 Program had been found appropriate in a final FOFD, repeatedly reaffirmed as pendency, and funded by the DOE for years. The parent did not select a new program; she preserved the same one when the DOE improperly stopped paying.

Appeal No. 24-636, properly understood, supports Plaintiffs rather than the DOE. There, the SRO recognized that requests to enforce prior pendency funding obligations belong in court; rejected the DOE's attempt to disclaim responsibility merely because the parent had taken steps to secure services herself; and held that, where the DOE fails to implement pendency, the student should receive make-up pendency services (i.e., compensatory education). *Application of a Student with a Disability*, Appeal No. 24-636; *see also E. Lyme Bd. of Educ.*, 790 F.3d at 456. Those principles confirm that the DOE's failure to implement and fund N.H.'s 2019 Program is an enforcement issue for this Court to remedy, not a forfeiture of N.H.'s stay-put rights.

Treating emergency mitigation as a rejection of pendency would create a perverse rule. A district could stop funding an established stay-put program, force the family either to let the student's services collapse or to arrange temporary coverage, and then argue that the parent's effort to avoid educational harm forfeited the student's statutory right. Section 1415(j) was enacted to prevent unilateral disruption by school districts, not to reward it. Self-help to preserve the ordered

program is the opposite of rejection; it is the only practical means of maintaining the *status quo* when DOE defaults.

Plaintiffs do not ask the Court to prefer the parent's provider selection over a district-proposed pendency program. The DOE has proposed no viable provider. Where the DOE has neither implemented the 2019 Program nor identified qualified providers ready to begin without interruption, continued funding of the existing providers is the only available mechanism to preserve the stay-put placement and avoid the unilateral change caused by the DOE's funding lapse. To the extent the DOE contends it may implement pendency through different qualified providers, it should be required to identify those providers immediately and ensure that N.H. suffers no interruption in services. Until it does so, however, the DOE should fund the existing providers whose services are preserving the stay-put program.

**E. The Order Should Restore the Program Prospectively Under § 1415(j), and Separately Provide for Payment of Delivered Services and Make-Up Services.**

The requested relief has three parts, and they rest on different sources of authority. The first restores the placement and is compelled automatically by § 1415(j). The second and third remedy what the DOE's default has already cost N.H., and Plaintiffs seek those under § 1415(i)(2)(C)(iii) rather than as emergency relief. The distinction matters: the urgency is the restoration of services, and Plaintiffs do not ask the Court to treat the payment of arrears as the basis for a TRO. A district that refuses to fund the stay-put program must make the family whole for the services it failed to fund. *E. Lyme Bd. of Educ.*, 790 F.3d at 456. Moreover, because no component of the 2019 Program is now being delivered, and because the components that providers carried temporarily after December 31, 2025 were themselves incomplete, the Court should direct the DOE to account, component by component, for the services required and actually delivered after that date, and to fund make-up pendency services for the resulting shortfall,

crediting hours actually delivered and payable upon competent proof so as to avoid double recovery. Any make-up services that must be obtained privately because the DOE does not produce accepted qualified providers, should be funded at the prevailing rates the 2019 FOFD requires. That make-up relief remedies the pendency violation itself and is distinct from any award of compensatory education for the denial of a FAPE, which Plaintiffs pursue in the pending administrative proceedings and expressly reserve. The providers delivered those services on deferred payment; A.H. did not pay for them, and they remain unbilled. Barbieri Decl. ¶ 33. Direct payment to the providers, rather than reimbursement to the parent, is therefore the appropriate analogue to East Lyme, where the parent had paid and was made whole. The Court need not fix any provider's rate or amount now. It can direct payment later, upon competent proof establishing the service, the dates and hours, the provider's charged rate, and the amount due, at the charged rate to the extent that rate is prevailing under the 2019 FOFD. That preserves the DOE's ordinary verification rights without allowing a historical accounting to delay restoration of the placement.

To satisfy Rule 65(d) and prevent further service loss, Plaintiffs request an order requiring Defendants, within five business days, either to issue effective direct authorizations to N.H.'s existing providers at the prevailing rates the 2019 FOFD requires and to fund their immediate resumption, or to identify qualified alternative providers who have accepted N.H.'s case and will begin delivering each component by that deadline. That formulation leaves the choice of means where Ventura de Paulino places it — with the DOE — while ensuring the choice cannot be exercised as further delay. If the DOE identifies no accepted alternative for a component by the deadline, it should be required to authorize the existing provider for that component. Each authorization should state the provider, service, frequency, prevailing rate, effective date, invoice-submission method, and payment deadline, and compliant invoices for services delivered after

resumption should be paid within thirty calendar days of submission. Those are the mechanics of restoring the placement, not a freestanding claim for money. The seven components to be restored are forty hours per week of 1:1 SEIT services; seven hours per week of enhanced OT incorporating Astronaut Training and Therapeutic Listening; two hours per week of PCAT; two hours per week of BCBA supervision; individual OT three times weekly for forty-five minutes; individual PT three times weekly for forty-five minutes; and individual SLT four times weekly for thirty minutes, all on a twelve-month basis and at the prevailing rates required by the 2019 FOFD, beginning immediately and continuing while the administrative and judicial review proceedings remain pending. The prevailing-rate term is not a rate Plaintiffs ask this Court to set. It is part of the relief the 2019 FOFD itself ordered, and it is therefore a term of the stay-put placement. The DOE's own January 23, 2026 authorization of SEIT at $225 per hour is evidence of what that term means in practice. Barbieri Decl. ¶ 27.

Finally, the order should require a written component-by-component implementation report within five business days after entry, and further reports every ten business days until the 2019 Program is fully implemented. Rule 65(d) requires the order itself to describe the required acts in reasonable detail, and a reporting requirement is what makes that description enforceable rather than aspirational.

## II. ALTERNATIVELY, THE COURT SHOULD EXERCISE ITS EQUITABLE AUTHORITY UNDER 20 U.S.C. § 1415(i)(2)(C)(iii) AND RULE 65 TO PRESERVE N.H.'S 2019 PROGRAM DURING THESE PROCEEDINGS.

The Court need not reach the traditional preliminary-injunction factors because § 1415(j) supplies an automatic injunction requiring maintenance of N.H.'s then-current educational placement. Plaintiffs address these factors only in the alternative. To the extent the Court concludes that any portion of the requested relief should be analyzed as discretionary equitable relief rather

than direct enforcement of stay-put, § 1415(i)(2)(C)(iii) authorizes the Court to "grant such relief as the court determines is appropriate." Plaintiffs satisfy the requirements for provisional injunctive relief under Rule 65.

**A. Section 1415(i)(2)(C)(iii) Authorizes Appropriate Equitable Relief in IDEA Civil Actions.**

Section 1415(i)(2)(C)(iii) supplies the Court's IDEA-specific remedial authority. It authorizes the Court, in an IDEA civil action, to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). The Supreme Court has read that language broadly, holding that it confers equitable authority to fashion relief necessary to ensure that children receive the education to which they are entitled. *See Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369-70 (1985); *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15-16 (1993).

The Second Circuit similarly has recognized that, under certain extraordinary circumstances, a parent may seek injunctive relief under § 1415(i)(2)(C)(iii) to modify a student's placement. *Ventura de Paulino*, 959 F.3d at 534 n.65 (citing *Wagner v. Bd. of Educ. of Montgomery Cnty.*, 335 F.3d 297, 302-03 (4th Cir. 2003)). Courts in this District have entered interim relief where necessary to prevent the collapse of a student's educational program during IDEA proceedings. *See L.G. v. New York City Dep't of Educ.*, No. 23-cv-9268 (S.D.N.Y. Nov. 3, 2023); *A.H. v. New York City Dep't of Educ.*, No. 22-CV-9861 (LGS) (S.D.N.Y. Nov. 23, 2022). This case is simpler still: Plaintiffs do not seek to modify N.H.'s placement, but only to maintain the ordered 2019 Program, retroactive to and including January 1, 2026.

**B. Plaintiffs Satisfy the Traditional Requirements for a TRO and Preliminary Injunction.**

To obtain a preliminary injunction, a party must show "(1) that it is subject to irreparable harm; and (2) either (a) that it will likely succeed on the merits or (b) that there are sufficiently

serious questions going to the merits . . . to make them a fair ground for litigation, and that a balancing of the hardships tips decidedly in favor of the moving party." *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997). Where the government is the opposing party, the balance-of-hardships and public-interest inquiries merge. *See V.W. v. Conway*, 236 F. Supp. 3d 554, 589 (N.D.N.Y. 2017); *Open Soc'y Justice Initiative v. Trump*, No. 20-civ-8021 (KPF), 2021 WL 22013, at *20 (S.D.N.Y. Jan. 4, 2021). Plaintiffs satisfy each of these requirement.

**1. N.H. Will Suffer Irreparable Harm Absent Injunctive Relief.**

The wrongful discontinuation of a special education program to which a student is entitled is irreparable harm. "It is almost beyond dispute that wrongful discontinuation of a special education program to which a student is entitled subjects that student to irreparable harm." *Cosgrove v. Bd. of Educ.*, 175 F. Supp. 2d 375, 392 (N.D.N.Y. 2001). So too where a school district fails to make payments necessary to maintain a student's placement and offers no alternative, irreparable harm is established. *Petties v. District of Columbia*, 238 F. Supp. 2d 88, 98-99 (D.D.C. 2002).

Here the harm is not merely threatened but existing, growing imminently worse, and is and will continue to be acute: since December 31, 2025 DOE has funded none of the 2019 Program; the DOE has completely defaulted. Barbieri Decl. ¶¶ 31–33; A.H. Decl. ¶¶ 30–33, 41–50. Without an injunction, N.H. has and will continue to suffer irreparable harm, which must be remedied by the Court.

**2. Plaintiffs Are Likely to Succeed on the Merits.**

For the reasons set forth in Point I, *supra*, Plaintiffs are likely to succeed on the merits; indeed, Plaintiffs are entitled to prevail on their claim that the 2019 Program is N.H.'s pendency placement and that the DOE must implement and fund it. The 2019 FOFD is final and unappealed;

the DOE funded the 2019 Program as pendency through December 31, 2025; the DOE has offered no alternative program or placement; and Plaintiffs seek only to maintain, not to modify, the ordered program. Permitting the DOE to deny pendency, and to do so on the theory that the parent's effort to keep the ordered services running is a "rejection" of them, would render N.H.'s stay-put rights meaningless.

**3. The Public Interest and Balance of Equities Favor Plaintiffs.**

"The public interest generally supports a grant of preliminary injunctive relief where, as here, a plaintiff has demonstrated a substantial likelihood of success on the merits and a strong showing of irreparable harm." *V.W.*, 236 F. Supp. 3d at 589. The public interest favors enforcing N.H.'s pendency rights and requiring the DOE to comply with its obligations under the IDEA. Against N.H.'s continued loss of significant services, the DOE's only countervailing interest is financial: the cost of the services it had previously approved and ordered, and previously agreed to fund. That interest does not tip the balance in the DOE's favor. *Cf. Brown v. Bd. of Educ.*, No. 04-cv-6596, 2005 WL 17838, at *4 (W.D.N.Y. Jan. 4, 2005) (balance of hardships tipped decidedly in favor of a student who would otherwise "continue to be deprived of his . . . education").

**4. The Court Should Waive the Bond Requirement or Set Nominal Security.**

The security requirement of Federal Rule of Civil Procedure 65(c) should be waived. Courts routinely waive bond where an injunction enforces an important public interest arising out of a comprehensive remedial statute. *Pharm. Soc'y of N.Y., Inc. v. N.Y. State Dep't of Soc. Servs.*, 50 F.3d 1168, 1174-75 (2d Cir. 1995); *Cosgrove*, 175 F. Supp. 2d at 400 (waiving bond for a student with a disability). This action seeks to enforce the IDEA's pendency mandate and the DOE's obligation to provide N.H. a free appropriate public education. The bond requirement

should be waived. Only in the alternative, if the Court concludes that security is required, Plaintiffs request that the Court set a nominal bond of $1.00.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request an order: (1) declaring that the 2019 Program, including the prevailing-rate term the 2019 FOFD ordered, is N.H.'s then-current educational placement under 20 U.S.C. § 1415(j); (2) requiring Defendants, within five business days, either to issue effective direct authorizations to N.H.'s existing providers at prevailing rates and fund their immediate resumption, or to identify qualified alternative providers who have accepted N.H.'s case and will begin each component by that deadline, and requiring that, absent an accepted alternative for a component, Defendants authorize the existing provider for it; (3) requiring Defendants to pay compliant invoices for services delivered after resumption within thirty calendar days of submission, and to continue funding the 2019 Program while the administrative and judicial review proceedings remain pending; (4) directing Defendants, upon competent proof establishing the service, dates and hours, charged rate, and amount due, to pay N.H.'s providers directly for services actually delivered after December 31, 2025 through each provider's cessation date, at the charged rates to the extent those rates are prevailing under the 2019 FOFD, without requiring the Court to fix any provider-specific rate or amount now; (5) directing a component-by-component accounting of the services required and actually delivered after December 31, 2025, and make-up pendency services for the shortfall after crediting services actually delivered, with any privately obtained make-up services funded at prevailing rates; (6) requiring a written implementation report within five business days after entry and further reports every ten business days until full implementation; (7) waiving security under Rule 65(c) or setting a nominal bond of $1.00; and (8) granting such other and further relief as the Court deems just and

proper. Plaintiffs' claim for compensatory education arising from the denial of a FAPE is pursued in the pending administrative proceedings and is expressly reserved.

Dated: New York, New York
July 16, 2026

Respectfully submitted,

/s/ Laura D. Barbieri

______________________________

Laura D. Barbieri, Esq.
The Law Office of Laura D. Barbieri, PLLC
Attorneys for Plaintiffs
115 West 73rd Street, Suite 1B
New York, NY 10023
Tel: (914) 819-3387
Email: Laura@LDBarbLaw.com
www.LDBarbLaw.com

**CERTIFICATE OF COMPLIANCE WITH WORD-COUNT LIMITATION**

Pursuant to Rule II(B)(2) of the Individual Rules & Practices of the Honorable Margaret M. Garnett, and Local Civil Rule 7.1, I hereby certify that the foregoing Memorandum of Law in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction complies with the applicable word-count limitation.

The memorandum contains 5,959 words, exclusive of the caption, table of contents, table of authorities, signature block, and this certificate, and inclusive of the material contained in footnotes. This is fewer than the 8,750 words permitted for a memorandum of law in support of a motion.

In preparing this certificate, I have relied on the word count of the word-processing program used to prepare the memorandum.

I further certify that the memorandum has been formatted with one-inch margins, is double-spaced, is set in 12-point Times New Roman, is text-searchable, and contains a table of contents and a table of authorities.

Dated: New York, New York
July 16, 2026

/s/ Laura D. Barbieri

Laura D. Barbieri, Esq.
The Law Office of Laura D. Barbieri, PLLC
Attorneys for Plaintiffs