26-cv-05926 (MMG)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

A.H., individually and on behalf of N.H., a student with a disability,

Plaintiffs,

-against-

THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, THE NEW YORK CITY DEPARTMENT OF EDUCATION a/k/a NEW YORK CITY PUBLIC SCHOOLS, THE CITY OF NEW YORK, and CHANCELLOR KAMAR H. SAMUELS, in his official capacity,

Defendants.

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

***STEVEN BANKS***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Jordan Doll*
*Tel: (212) 356-2624*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............ ii

PRELIMINARY STATEMENT ............ **1**

BACKGROUND ............ **2**

THE IDEA AND RELATED NEW YORK STATUTORY SCHEMES ............ 2

A. Free Appropriate Public Education ("FAPE") Requirement ............ **2**

B. Parentally Placed Private School Student Seeking Equitable Services ............ **2**

RELEVANT FACTS ............ **4**

LEGAL STANDARD ............ **7**

ARGUMENT ............ **8**

A PRELIMINARY INJUNCTION IS NOT WARRANTED ............ **8**

A. This Court Lacks Subject Matter Jurisdiction ............ **8**

B. The DOE is not Obligated to Provide the Remedy that Plaintiffs Seek ............ **14**

CONCLUSION ............ **16**

## TABLE OF AUTHORITIES

**Cases** **Pages**

*American Well Works Co. v. Layne & Bowler Co.*,
241 U.S. 257 (1916)....................11

*Apple v. NY City Dept. of Educ.*,
2025 US Dist LEXIS 112095
(E.D.N.Y. June 12, 2025, No. 24-CV-4380 (OEM) (RML)) ....................13

*Bay Shore Union Free Sch. Dist. v. Kain*,
485 F.3d 730 (2d Cir. 2007)....................10, 11

*Chera, et al. v. N.Y.C. Dep't of Educ.*,
25-cv-1710 (RMB), 2026 U.S. Dist. LEXIS 80731 (S.D.N.Y. Apr. 8, 2026)....................12

*E.T. v. Bd. of Educ. of Pine Bush Cent. Sch. Dist.*,
2012 U.S. Dist. LEXIS 167977 (S.D.N.Y. Nov. 26, 2012)....................2, 3

*Florence County Sch. Dist. Four v. Carter by & Through Carter*,
510 U.S. 7 (1993)....................3

*Forest Grove Sch. Dist. v. T.A.*,
557 U.S. 230 (2009)....................2

*Frisone v. Pepsico, Inc.*,
369 F. Supp. 2d 464 (S.D.N.Y. 2005)....................8

*Fry v. Napoleon Cmty. Sch.*,
580 U.S. 154 (2017)....................8

*Gerschel v. N.Y.C. Dep't of Educ.*,
No. 1:24-cv-06303 (S.D.N.Y. Feb. 1, 2025), ECF No. 19 ....................13

*L.V. v. N.Y. City Dep't of Educ.*,
19-CV-05451 (AT) (KHP),
2020 U.S. Dist. LEXIS 128723 (S.D.N.Y. July 17, 2020) ....................9

*Law Off. of Philippe J. Gerschel v N.Y. C. Dept. of Educ.*,
2025 U.S. Dist. LEXIS 193977 (S.D.N.Y. Sept. 30, 2025)....................11, 12

*Lucht v. Molalla River Sch. Dist.*,
225 F.3d 1023 (9th Cir. 2000) ....................10

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000)....................8

**Cases** **Pages**

*Manos v. N.Y.C. Dep't of Educ.*,
25 Civ. 1101 (KPF), 2026 U.S. Dist. LEXIS 43104 (S.D.N.Y. Mar. 3, 2026) ....................12

*Megan C. v. Indep. Sch. Dist. No. 625*,
57 F. Supp. 2d 776 (D. Minn. 1999)....................10

*Merrell Dow Pharms. v. Thompson*,
478 U.S. 804 (1986)....................11

*N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*,
883 F.3d 32 (2d Cir. 2018)....................7

*N.B. v. New York City Dep't of Educ.*,
711 F. App'x 29 (2d Cir. 2017) ....................2

*N.K., et al. v. NYC Dep't of Educ.*,
25-cv-7782 (JGK) ....................12, 13

*Reyes v. Bedford Cent. Sch. Dist.*,
No. 16-CV-2768 (KMK),
2017 U.S. Dist. LEXIS 159568 (S.D.N.Y. Sept. 27, 2017)....................9

*Reyes v. NYC Dep't of Education*
760 F.3d 211 (2d Cir. 2014)....................2

*Sabatini v. Corning-Painted Post Area Sch. Dist.*,
78 F. Supp. 2d 138 (W.D.N.Y. 1999) ....................14

*Sch. Comm. of Burlington v. Dep't of Educ.*,
471 U.S. 359 (1985)....................3

*New York ex rel. Schneiderman v. Actavis PLC*,
787 F.3d 638 (2d Cir. 2015)....................8

*Shapiro v. Cadman Towers, Inc.*,
51 F.3d 328 (2d Cir. 1995)....................7

*Uppal v. N.Y. State Dep't of Health*,
756 F. App'x 95 (2d Cir. 2019) ....................7

*Vultaggio ex rel. Vultaggio v. Bd. of Educ.*,
343 F.3d 598 (2d Cir. 2003)....................9

*Walczak v. Fla. Union Free Sch. Dist.*,
142 F.3d 119 (2d Cir. 1998)....................2

**Cases** **Pages**

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ....................7

**Statutes**

34 C.F.R. § 300.13 ....................3

34 C.F.R. § 300.36 ....................3

34 C.F.R. § 300.130 ....................2, 3, 15

34 C.F.R. § 300.132 through 300.139 ....................4

34 C.F.R. § 300.137 ....................3, 14

34 C.F.R. § 300.137(a) ....................9

34 C.F.R. § 300.140(a)(1) ....................4

34 C.F.R. § 300.145 ....................3

34 C.F.R. § 300.147 ....................3

34 C.F.R. § 300.151 ....................4

34 C.F.R. § 300.504 through 300.519 ....................4

20 U.S.C. 1415(j) ....................12

20 U.S.C. § 1415 ....................8, 9

20 U.S.C. § 1415(i)(2)(A) ....................1, 10

20 U.S.C. § 1415(i)(3)(A) ....................1, 9

20 U.S.C. § 1415(b)(6) ....................10

20 U.S.C. § 1415(j) ....................13

20 U.S.C. § 1415(k) ....................10

20 U.S.C. § 1415(l) ....................8

28 U.S.C. § 1331 ....................1, 8, 9

29 U.S.C. § 794 ....................8

**Statutes** **Pages**

N.Y. Educ. Law § 3602 ....................14

N.Y. Educ. Law § 3602-c ....................3, 4, 8, 12

N.Y. Educ. Law § 3602-c(2)....................15

N.Y. Educ. Law § 3602-c(2)(a) ....................3, 13

N.Y. Educ. Law § 3602-c(2)(b) ....................3

N.Y. Educ. Law § 3602-c(2)(b)(1) ....................3, 4

N.Y. Educ. Law § 3602-c(f) ....................15

N.Y. Educ. Law § 4402(1)(b)(1) ....................2

N.Y. Educ. Law § 4404 ....................4

NY Educ. Law § 4404(4)....................13

Rehabilitation Act § 504 ....................8, 9

**PRELIMINARY STATEMENT**

A.H., on behalf of herself and N.H. ("the Student") (together, "Plaintiffs" or "the Parent"), brings this action against Defendants The Board of Education of The City School District of The City of New York, The New York City Department Of Education ("DOE"), The City of New York, and Chancellor Kamar H. Samuels, in his official capacity as Chancellor of the DOE (together, "Defendants" or "DOE"), seeking an Order directing immediate funding for allegedly delayed payments for services ordered by a 2019 Findings of Fact and Decision ("FOFD") pursuant to a theory of pendency.

Defendants respectfully submits this memorandum of law in opposition to Plaintiffs' motion. This Court lacks subject matter jurisdiction over these allegations. Despite their claims that they seek services pursuant to an Individualized Education Program ("IEP"), in reality Plaintiffs seek services pursuant to an Individualized Education Services Program ("IESP"), which is exclusively governed by New York state law. Moreover, any alleged responsibility to fund the Student's special educational services pursuant to pendency or otherwise is not DOE's obligation because the Student attends a non-public school outside of New York City.

Plaintiffs contend that this action arises under a federal statute, the Individuals with Disabilities Education Act ("IDEA"), and that, *inter alia*, 20 U.S.C. §§ 1415(i)(2)(A),(i)(3)(A) and 28 U.S.C. § 1331 create federal question jurisdiction. Complaint ("Compl.") ECF No. 1, at ¶ 12. However, as explained below, the IDEA provides no entitlement to services pursuant to an IESP when a parent places a student with a disability in a non-public school. Instead, any individual right to services via an IESP is created solely by New York state law, and the right to challenge IESPs has no basis in the IDEA. Thus, it is respectfully submitted that this Court is jurisdictionally barred from adjudicating this dispute.

Additionally, to the extent the Student is entitled to any special education services, New York Education Law vests the responsibility to fund the services with the District where the Student is attending school, not with the district where the Student resides. Because the Student attends a non-public school outside of New York City, any claim for services must be brought against that district.

As the issues in this case do not involve any question of federal law and Defendants are not obligated to provide the relief sought, Plaintiffs' pending motion must be denied.

## BACKGROUND

## The IDEA And Related New York Statutory Schemes

### A. Free Appropriate Public Education ("FAPE") Requirement

"The [IDEA] requires States receiving federal funding to make a 'free appropriate public education' [("FAPE")] available to all children with disabilities residing in the State[.]" *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 232 (2009). "A school district meets its obligations to provide a FAPE by creating an IEP that is developed in compliance with the IDEA's procedural and substantive requirements." *N.B. v. New York City Dep't of Educ.,* 711 F. App'x 29, 32 (2d Cir. 2017). "Since New York State receives federal funds under [the] IDEA, it is obliged to comply with the requirements of [the IDEA]." *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 123 (2d Cir. 1998). "Under New York law, local Committees on Special Education ('CSEs') are responsible for developing appropriate IEPs." *Reyes v. NYC Dep't of Education* 760 F.3d 211, 214–15 (2d Cir. 2014) (citing N.Y. Educ. Law § 4402(1)(b)(1)).

### B. Parentally Placed Private School Students Seeking Equitable Services

"The IDEA contains a separate framework [from the FAPE framework] for disabled children who are parentally placed in private schools[.]" *E.T. v. Bd. of Educ. of Pine Bush Cent.*

*Sch. Dist.,* 2012 U.S. Dist. LEXIS 167977, at *31-32 (S.D.N.Y. Nov. 26, 2012). Pursuant to 34 C.F.R. § 300.130, a parentally-placed private school child with disabilities is defined as a child "with disabilities enrolled by their parents in private, including religious, schools or facilities that meet the definition of elementary school in § 300.13 or secondary school in § 300.36, other than children with disabilities covered under §§ 300.145 through 300.147." "No parentally-placed private school child with a disability has an individual right to receive some or all of the special education and related services that the child would receive if enrolled in a public school." 34 C.F.R. 300.137. [1] "In New York, [a services plan for a parentally-placed private school student] is known as an Individualized Education Service Program, i.e., the IESP." *E.T.,* 2012 U.S. Dist. LEXIS 167977 at *33 (citing N.Y. Educ. Law § 3602-c(2)(b)). New York requires local Committees on Special Education ("CSE") to develop IESPs "in the same manner and with the same contents" as IEPs. N.Y. Educ. Law § 3602-c(2)(b)(1). Simply put, an IESP is for a student who has been parentally placed at a private school – meaning the Parent has opted out of FAPE as defined by the federal IDEA, and assumed responsibility for the payment of tuition – and is seeking equitable services as defined by the N.Y. Education Law § 3602-c. The public school district where the school is located is responsible for funding equitable services – not the district of the Student's residence. *Id.*; 34 C.F.R. §§ 300.130 – 300.147 (requiring the <u>public school district where the nonpublic school is located</u> to provide students with disabilities enrolled in nonpublic elementary and secondary schools by their parents with special education services) (emphasis added).

[1] Because students placed in private schools have opted out of the IDEA-framework, they have elected not to pursue public funding for private placement tuition through *Burlington/Carter* proceedings. *See generally*, *Florence County Sch. Dist. Four v. Carter by & Through Carter*, 510 U.S. 7 (1993); *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985).

Federal regulations promulgated under the IDEA provide that the due process procedures relating to IEPs do not apply to IESPs. *See* 34 C.F.R. § 300.140(a)(1) ("Except as provided in paragraph (b) of this section, [1] the procedures in §§ 300.504 through 300.519 [*i.e.*, the due process procedures for FAPE cases] do not apply to complaints that [a school district] has failed to meet the requirements of §§ 300.132 through 300.139 [*i.e.*, regarding parental placements], including the provision of services indicated on the child's services plan."). Instead, pursuant to 34 C.F.R. § 300.151, each state education agency must adopt written procedures for resolving complaints.

Though there is no right under federal law, New York State law provides the right to file a due process complaint akin to an IDEA due process complaint for some issues related to IESPs that are specifically enumerated in state law. *See* N.Y. Educ. Law § 3602-c(2)(b)(1) ("Review of the recommendation of the [CSE] [regarding an IESP] may be obtained by the parent . . . of the pupil pursuant to the provisions of section forty-four hundred four of this chapter [i.e., N.Y. Educ. Law § 4404]."). Accordingly, a parent may seek redress for certain aspects of IESPs through the same administrative mechanisms as claims arising under the IDEA, but this access to the administrative process is purely a vehicle of state law and, thus, does not confer a right to challenge administrative rulings related to IESPs (including pendency) in federal court. However, any administrative ruling may be reviewed in a proceeding brought in the New York State Court. N.Y. Educ. Law § § 3602-c, 4404.

## RELEVANT FACTS

The Student has a classified disability as defined by the IDEA, Compl. ¶¶ 22, 51, and lives with his family in Brooklyn, New York. *Id.* ¶ 21. According to DOE records, the Student attended a non-public school at their Parent's expense in N.Y.C. between Kindergarten and sixth grade then,

as of the 23-24 SY, transferred to a non-public school outside of N.Y.C. As of the 25-26 SY, the Student continued to attend a non-public school outside of N.Y.C. *Id.* ¶ 57. The Complaint does not allege that the Student has ever had an active, implemented school-age IEP, attended public school, or sought *Burlington/Carter* funding for a unilateral placement where the student was seeking a FAPE. *See generally*, *id.*

On December 10, 2018, the Parent filed a DPC on behalf of the Student, assigned case no. 174703, alleging that the DOE had denied the Student a FAPE and failed to develop a substantially appropriate IESP for the 18-19 SY. ECF No. 7-3, at 3 ("2019 FOFD"). On November 9, 2019, an FOFD was issued, awarding the student equitable special educational services. *Id.*; Compl. ¶ 52. *See also* Plaintiffs' Memorandum of Law in Support Of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction, ECF No. 10, at 4 ("Pl. Mot."). Specifically, the Student was awarded, on a twelve-month basis, forty hours per week of 1:1 Special Education Itinerant Teacher ("SEIT") services, seven hours of per week of enhanced occupational therapy, two hours of parent counseling; two hours per week BCBA; 3x45 occupational therapy 1:1; 3x45 1:1 physical therapy; and 4x30 1:1 speech and language therapy. *See e.g.*, 2019 FOFD, at 4; December 19, 2022 Pendency Order, ECF No. 7-4, at 1 ("2022 Pendency Order"). The Parent filed multiple DPCs in the subsequent years, and in 2022 and 2025 Impartial Hearing Officers ruled the 2019 FOFD acted as a basis for pendency. 2022 Pendency Order; December 23, 2025 Pendency Order, 7-6 ("2025 Pendency Order"); Compl. ¶ 54. The DOE authorized payment for these services until December 31, 2025. *See Id.*

On March 28, 2023, the CSE developed an IESP for the Student. Compl. ¶ 55. The Parent rejected the IESP and continued to seek the services from the 2019 FOFD. *See e.g.*, December 31,

2025 DPC, 9-15 ("December 31, 2025 DPC"). No subsequent CSE meeting was held for the Student.

On December 31, 2025, the Parent filed a DPC, designated case no. 307092, requesting, *inter alia*, a finding that DOE's failure to provide a program for the 25-26 SY was a denial of FAPE, an order directing the DOE to reconvene a CSE meeting to develop an "IEP," and to enforce the 2019 FOFD at enhanced rates. December 31, 2025 DPC. An amended DPC was filed on February 10, 2026. ECF No. 9-16. An interim pendency order was issued on May 28, 2026, denying funding for the 2019 FOFD program because the Parent has unilaterally sought private providers, and, thus, rejected the pendency placement. ECF No. 9-12, at 5 ("2026 Order on Pendency"). Plaintiffs appealed this Pendency Order and it remains pending before the SRO. Compl. ¶ 72. Issued on June 15, 2026, FOFD 307092 found that, *inter alia*, insufficient evidence demonstrated that FOFD 2019 was appropriate for the child and, therefore, the Parent failed to meet their Prong II burden.[2] FOFD 307092, ECF No. 9-13, at 12 ("none of [the Parent's] submitted evidence addresses the appropriateness of [the] proposed placement" or the Student's current deficits).[3] This FOFD has also been appealed to the SRO, and no final decision has been issued. Compl. ¶ 74.

---

[2] IESP disputes are generally analyzed under the *Burlington/Carter* framework. SRO Decision 24-402 ("As a practical matter, this kind of dispute can really only be effectively examined using a Burlington/Carter unilateral placement framework because the attempts to resolve such cases that do not use a Burlington/Carter style of analysis have tended to lead to chaos[.]").

[3] As early as the 22-23 SY, administrative judges have questioned the appropriateness of the 2019 FOFD program for the Student, noting that there is little "evidence that the student is benefiting from [] the program he received as pendency." *See Application of a Student with a Disability*, Appeal No. 24-636, f.n. 11 (Office of State Review Aug. 8, 2025).

The DOE stopped funding the 2019 FOFD services in December 31, 2025 because the Student was and is an IESP student attending a school outside of N.Y.C. and, so, the obligation to fund services belonged to the district of the non-public school's location. *See supra*, at 3. It appears that the DOE funded services on a pendency basis after the Student transferred to a non-N.Y.C. district for a period of time in error. Plaintiffs alleges that these services have lapsed intermittently, with all ceasing entirely as of May, 2026. Compl. ¶ 73; Pl. Mot. at 2.

Plaintiffs brought suit in this Court on July 14, 2026, seeking, *inter alia*, immediate funding for the services ordered in the 2019 FOFD on a theory of pendency because the May 28, 2026 Pendency Order denying all services is on appeal. *See e.g.,* Compl. ¶¶ 3-9. Plaintiffs brought a request for a Temporary Restraining Order ("TRO") on July 16, which the Court denied, *sua sponte*, the same day. ECF Nos. 6-11. The Court noted that Plaintiffs' delay in seeking immediate relief was evidence that the drastic remedy of a TRO was not warranted. However, the Court ordered further briefing on Plaintiffs' request. ECF No. 11.

Defendants submit this opposition in response to Plaintiffs' motion for emergency relief.

## **LEGAL STANDARD**

"A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018) (internal citations omitted). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "Irreparable harm is the single most important prerequisite for injunctive relief, and in the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied." *Uppal v. N.Y. State Dep't of Health*, 756 F. App'x 95, 96 (2d Cir. 2019)(internal quotations and citations omitted).

"The movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995). Plaintiff must further show a clear or substantial likelihood of success on the merits. *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015).

However, a Court must dismiss a case when the Court "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The party "asserting subject matter jurisdiction bears the burden of establishing that jurisdiction exists by a preponderance of the evidence." *Id.* The Court accepts all material factual allegations in the complaint as true, *id.*, but it does not presume the truthfulness of the complaint's jurisdictional allegations. *See Frisone v. Pepsico, Inc.*, 369 F. Supp. 2d 464, 469-70 (S.D.N.Y. 2005).

## ARGUMENT

## A PRELIMINARY INJUNCTION IS NOT WARRANTED

### A. This Court Lacks Subject Matter Jurisdiction

This Court lacks subject matter jurisdiction over Plaintiffs' claims. The Parent has opted to parentally place the Student in a non-public, general education school outside of N.Y.C. As such, any entitlement to equitable services are solely a creation of state law. N.Y. Educ. Law 3602-c. In her Complaint, Plaintiffs assert federal question jurisdiction predicated upon 28 U.S.C. § 1331 on the ground that this action arises under the IDEA, 20 U.S.C. § 1415. Compl.¶¶ 12-3.[4] Federal

[4] Plaintiffs further invoke the Court's jurisdiction by alleging Section 504 claims. 29 U.S.C. § 794. Compl.¶ 12. Section 504 provides no independent basis to assert stay-put rights. Accordingly, these allegations also do not give the Court subject matter jurisdiction because these claims must be exhausted, and Plaintiffs do not plead any facts suggesting that these claims have been properly raised before the IHO and SRO. *See generally*, Compl. Plaintiffs raise the same grievance of an alleged denial of services under all federal laws. Thus, the IDEA's exhaustion requirement applies equally to all claims. *See Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 157-158 (2017) ("Section

question jurisdiction exists when an action "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The IDEA provides that "[t]he district courts of the United States shall have jurisdiction of actions brought under this section without regard to the amount in controversy." 20 U.S.C. § 1415(i)(3)(A).

Here, Plaintiffs' alleged harm is based solely in state law. The Student has opted out of public education, and has instead chosen to attend a private school—which means neither the IDEA, nor any other federal law, provide Plaintiffs with a right to seek relief concerning equitable services in federal court. Within the dichotomy set forth in federal law, to the extent parentally placed students are entitled to pursue an administrative due process claim for equitable services, *see e.g.*, FOFD 307092 and 2026 Order on Pendency, that entitlement is governed exclusively by New York law. 34 C.F.R. § 300.137(a) ("No parentally-placed private school child with a disability has an individual right to receive some or all of the special education and related services that the child would receive if enrolled in a public school.").

IESP due process cases are not "brought under" 20 U.S.C. § 1415. "The phrase 'brought under this section' refers to actions and proceedings 'brought under § 1415.'" *Vultaggio ex rel.*

1415(l) makes clear that nothing in the IDEA 'restrict[s] or limit[s] the rights [or] remedies' that other federal laws, including antidiscrimination statutes, confer on children with disabilities. At the same time, the section states that if a suit brought under such a law 'seek[s] relief that is also available under' the IDEA, the plaintiff must first exhaust the IDEA's administrative procedures"); *L.V. v. N.Y. City Dep't of Educ.*, 19-CV-05451 (AT) (KHP), 2020 U.S. Dist. LEXIS 128723, at *20 (S.D.N.Y. July 17, 2020) ("[Courts] have nevertheless held that a party may not circumvent the IDEA's administrative procedures by recasting their claims as ones for discrimination against a child under the ADA or RA."); *see also Reyes v. Bedford Cent. Sch. Dist.*, No. 16-CV-2768 (KMK), 2017 U.S. Dist. LEXIS 159568, at *21, 33 (S.D.N.Y. Sept. 27, 2017). Here, Plaintiffs only recast their alleged harm as a grievance under Section 504 of the Rehabilitation Act. As such, these claims too should be dismissed for lack of subject matter jurisdiction because Plaintiffs have not alleged exhaustion.

*Vultaggio v. Bd. of Educ.*, 343 F.3d 598, 602 (2d Cir. 2003) (quoting *Lucht v. Molalla River Sch. Dist.*, 225 F.3d 1023, 1028 (9th Cir. 2000)). "A 'proceeding brought under' § 1415 is a proceeding established by or referenced in § 1415." *Id.* (quoting *Megan C. v. Indep. Sch. Dist. No. 625*, 57 F. Supp. 2d 776, 783 (D. Minn. 1999)). "A proceeding is commenced under § 1415 by submitting a complaint pursuant to either § 1415(b)(6) or § 1415(k)." *Id.* "Section 1415(b)(6) gives parents of a child with a disability the 'opportunity to present complaints with respect to any matter relating to the *identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.*'" *Id.* (quoting 20 U.S.C. § 1415(b)(6)) (emphasis added). Section 1415(k) "deals with issues regarding the placement of a child in an 'alternative educational setting.'" *Id.* (quoting 20 U.S.C. § 1415(k)).

Because the Student has been parentally-placed in a non-public school, neither § 1415(b)(6) or § 1415(k) are applicable. *Bay Shore Union Free Sch. Dist. v. Kain*, 485 F.3d 730 (2d Cir. 2007) is instructive. There, the Second Circuit held that the district court lacked jurisdiction to review an SRO's determination that New York law entitled a parochial student to a one-on-one aide at the student's parochial school. *Id.* at 733. The Circuit rejected the parties' argument that the IDEA's standard for a FAPE incorporated by reference all state standards even if the state regulations exceeded the minimum floor established by federal law. *Id.* at 734 ("Even assuming that IDEA incorporates the relevant New York Education Law, this does not provide an independent federal question that would sustain the court's jurisdiction."). The Circuit stated that "[a] federal statute is not a sufficient basis for federal question jurisdiction simply because it incorporates state law." *Id.* (citation omitted). The Circuit concluded that, the "case turn[ed] entirely on a state-law issue, and as such it [could not] form the basis of federal question jurisdiction." *Id.* The Second Circuit also rejected the argument that "the IDEA's explicit

authorization of a cause of action to be brought by 'any party aggrieved by the findings and decision' of the state educational agency ipso facto raise a federal question that would confer jurisdiction in this case on a federal court." *Bay Shore*, 485 F.3d at 734 (quoting 20 U.S.C. § 1415(i)(2)(A)).

The Circuit explained that "[t]he Supreme Court generally has followed Justice Holmes' classic formulation that, "'[a] suit arises under the law that creates the cause of action[,]'" *Id.* (quoting *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916)), but "has recognized a narrow exception . . . where a formally federal cause of action does not create ipso facto a federal question 'because of the overwhelming predominance of state-law issues.'" *Id.* at 735 (quoting *Merrell Dow Pharms. v. Thompson*, 478 U.S. 804, 814 n.12 (1986)).

Although the "IDEA provide[d] a floor" for the benefits that a state must provide, the Circuit reasoned, it does not regulate states' ability "to impose additional requirements on their schools if they so choose." *Id.* at 735. Thus, the Circuit concluded that "[t]he determination whether New York law compels the School District to provide the one-to-one aide at a parochial school is a question best left to New York courts." *Id.*

The present case is analogous to *Bay Shore* in that it involves rights granted entirely under state law, and thus, no federal question is presented. Simply because New York law allows parentally-placed students to pursue relief through the IDEA administrative process does not create federal question jurisdiction where the relief sought is the equitable services controlled solely under state law.

This Court has repeatedly adopted this jurisdictional distinction between claims concerning IESPs and challenges under the IDEA. In *Law Off. of Philippe J. Gerschel v N.Y. C. Dept. of Educ.*, 2025 U.S. Dist. LEXIS 193977 (S.D.N.Y. Sept. 30, 2025), Judge Garnett adopted the report and

recommendation of Magistrate Aaron in finding that "the Court lacks subject matter jurisdiction over this case because the claims in the underlying proceedings were brought under state law and not the IDEA." In reaching that conclusion, the Court noted that "[t]he special education and related services provided to parentally-placed private school children with disabilities are independent of the obligation to make FAPE available to these children." *Id.* at *10.

Judge Failla recently agreed that this Court lacks subject matter jurisdiction in cases that arise out of IESPs.

> To the extent that Plaintiffs' argument about the Court's federal question jurisdiction is based solely on the IDEA statute, the Court agrees with DOE that it lacks subject matter jurisdiction. Second Circuit case law and persuasive authority from sister courts in this District convince the Court that federal question jurisdiction is not triggered when the due process rights asserted by Plaintiffs are provided by New York law, even though New York chose to adopt identical procedures afforded by federal law.

*Manos v. N.Y.C. Dep't of Educ.*, 25 Civ. 1101 (KPF), 2026 U.S. Dist. LEXIS 43104, *13 (S.D.N.Y. Mar. 3, 2026).

*See also N.K., et al. v. NYC Dep't of Educ.*, 25-cv-7782 (JGK), Memorandum and Order, ECF No. 24 (S.D.N.Y. July 24, 2026) (finding an administrative due process dispute arising out of an IESP does not create federal question jurisdiction because any due process rights afforded to plaintiff are the product of New York law); *Chera, et al. v. N.Y.C. Dep't of Educ.*, 25-cv-1710 (RMB), 2026 U.S. Dist. LEXIS 80731, at *8 (S.D.N.Y. Apr. 8, 2026) (finding same).

Alleging pendency under 1415(j) is insufficient to invoke jurisdiction in these circumstances. Because Plaintiffs are not pursuing due process proceedings pursuant to the IDEA's statutory scheme, they are not entitled to "stay put" during that due process proceeding. Accordingly, any theory of pendency would be predicated on N.Y. Educ. Law § 3602-c, not 20 U.S.C. 1415(j). Thus, Plaintiffs' assertion of 1415(j) is inaccurate and does not vest this Court with federal question jurisdiction.

The fact that Plaintiffs have requested an IEP meeting should not be determinative of the Court's analysis. *See* February 10, 2026 Amended DPC. The Student is and has always been an IESP-student – a parentally-placed student in a non-public school who is not seeking and never has sought *Burlington/Carter* tuition funding for a unilateral placement. Asking for a CSE meeting may be the Parent's right, but it does not automatically circumvent the Student's educational history and current circumstances. This student has been parentally-placed for a decade, and the Parent seeks equitable services, exclusively, in connection with that parental placement. Any reconvene of the CSE would almost certainly lead to the development of IESP rather than an IEP. The 2023 reconvene of the CSE resulted in an IESP and the 2019 FOFD arose from a disputed IESP. Neither the Complaint nor the Amended DPC put forth facts that the Parent intends to transfer the Student to a public placement in N.Y.C. This Court should not grant a preliminary injunction when the Student's years-long educational history demonstrates that their request for equitable services are entirely founded in state law entitlements. *See N.K.*, 25-cv-7782, ECF No. 24 at 15 (noting that simply alleging the Student was denied a FAPE does not give rise to a federal question when the relief sought is solely for equitable services).

In short, Plaintiffs have willingly and voluntarily opted out of a free appropriate public education, and have instead chosen to enroll the Student in a non-public school and seek IESP equitable services. Thus, Plaintiffs' challenge to the 2026 Order on Pendency arise purely out of New York state law. To the extent there is a basis for a pendency in this matter, Plaintiffs may of course file a claim in State court. *Apple v. NY City Dept. of Educ.*, 2025 US Dist LEXIS 112095, at *2-3 (E.D.N.Y. June 12, 2025, No. 24-CV-4380 (OEM) (RML)); *Gerschel v. N.Y.C. Dep't of Educ.*, No. 1:24-cv-06303 (S.D.N.Y. Feb. 1, 2025), ECF No. 19.

But, for these reasons described above, this Court should hold that there is no federal question presented and, accordingly, that this Court lacks jurisdiction to hear these claims. Thus, the Plaintiffs cannot prevail on the merits as a matter of a law.

**B. The DOE is not Obligated to Provide the Remedy that Plaintiffs Seek**

Even if the Complaint did not suffer jurisdictional fatalities, Plaintiffs' motion still must be denied. There is no irreparable harm and, to the extent any harm can be demonstrated, the DOE is not obligated to redress it. A student's loss of FAPE may suffice to show irreparable harm. *Sabatini v. Corning-Painted Post Area Sch. Dist.*, 78 F. Supp. 2d 138, 140 (W.D.N.Y. 1999) ("The denial of a FAPE over an extended period does constitute harm, and the longer that denial continues, the more irreparable it becomes."). However, when the Student has opted out of the IDEA-framework as Plaintiffs have done here, Defendants cannot deprive the Student of a FAPE. The IDEA confers no individual entitlement to special education or related services upon students who are enrolled by their parents in nonpublic schools. 34 CFR 300.137.

To the extent the Student wishes to pursue equitable services that may be available under N.Y. Educ. Law § 3602, the DOE has no legal obligation to provide these services. As explained, *supra* at 3, the district of the Student's current school must fund any equitable services. 34 CFR §§ 300.130 -- 300.147 (requiring the **public school district where the nonpublic school is located** to provide students with disabilities enrolled in nonpublic elementary and secondary schools by their parents with special education services) (emphasis added).

School district of location means "the school district in which the nonpublic elementary or secondary school attended by the Student is located." Educ. Law § 3602-c(f). The district of location's CSE must review a request for services and "develop an [IESP] for the student based on the student's individual needs in the same manner and with the same contents as an [IEP.]" N.Y.

Educ. Law § 3602-c(2)(b)(1)). The Student does not attend school in N.Y.C. Compl. ¶ 57. Thus, regardless of any theory of pendency, it is not DOE's obligation to fund the requested equitable services.

While Defendants are sympathetic to the burden of further administrative litigation against a non-N.Y.C. school district, the fact of additional due process cannot require expenditure of Defendants' tax-payer funding when none is owed. Moreover, Plaintiffs failed to seek redress through the appropriate channels for over six months since they were put on notice of any harm. Compl. ¶ 3 (funding ceased as of the end of 2025). During that time, Plaintiffs could have sought administrative relief against the school district of location. Plaintiffs' failure to do so does not obligate Defendants to supplement any shortfall in funding.

Finally, the public interest will not be served by granting Plaintiffs' motion. The law is clear that the district of residence is responsible for providing any equitable services. To issue an order requiring expenditure of N.Y.C. taxpayer funds when none are owed is flatly against the public interest.

**CONCLUSION**

For all the foregoing reasons, Defendants respectfully request that the Court deny the motion for the preliminary injunction, dismiss the Complaint in its entirety with prejudice, and grant Defendants such other and further relief as the Court deems just and proper.

Dated: New York, New York
July 27, 2026

STEVEN BANKS
Corporation Counsel of the
City of New York
Attorney for Defendants
100 Church Street
New York, New York 10007
(212) 356-2624
jdoll@law.nyc.gov

By: /s/ *Jordan Doll*
Jordan Doll
Assistant Corporation Counsel

**CERTIFICATION PURSUANT TO RULE 7.1 (c) OF THE LOCAL RULES OF THE UNITED STATES DISTRICT COURTS FOR THE SOUTHERN AND EASTERN DISTRICTS OF NEW YORK**

According to Microsoft Word 365, the portions of the memorandum of law that must be included in a word count contains 4,874 words, and complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

Dated: July 27, 2026
New York, New York

STEVEN BANKS
Corporation Counsel of the
City of New York
Attorney for Defendants
100 Church Street
New York, New York 10007
(212) 356-4377
jdoll@law.nyc.gov

By: *Jordan Doll*
Jordan Doll
*Assistant Corporation Counsel*