**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| A.H., individually and on behalf of N.H., a student with a disability,<br><br>Plaintiffs,<br><br>-against-<br><br>The Board of Education of the City School District of the City of New York, the New York City Department of Education, a/k/a New York City Public Schools, the City of New York, and Chancellor Kamar H. Samuels, in his official capacity,<br><br>Defendants. | 26 Civ. 5926 (MMG)<br><br>ECF CASE |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Dated: July 29, 2026
New York, NY

LAW OFFICE OF LAURA D. BARBIERI, PLLC
Attorney for Plaintiffs
115 West 73rd Street, Suite 1B
New York, New York 10023
(914) 819-3387
Laura@LDBarbLaw.com
www.LDBarbLaw.com

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1
ARGUMENT ........ 2
POINT I – THE COURT HAS SUBJECT-MATTER JURISDICTION BECAUSE THE OPERATIVE PROCEEDING WAS BROUGHT UNDER § 1415 ........ 2
A. The Operative Claims Concern Identification, Evaluation, Placement, and FAPE ........ 2
B. Section 300.140 and DOE's IESP Authorities Do Not Govern This Proceeding ........ 4
C. The District-of-Location Rules Do Not Displace DOE's FAPE or Pendency Obligations ........ 5
D. Exhaustion Does Not Bar Enforcement of Stay-Put ........ 6
POINT II – SECTION 1415(j) REQUIRES IMMEDIATE RESTORATION OF THE 2019 PROGRAM ........ 7
A. The 2019 Program Is N.H.'s Established Pendency Placement ........ 7
B. DOE Remains Responsible for Implementation and Has Offered No Alternative ........ 8
C. The Existing Loss of the Placement Establishes Harm, and the Chronology Answers Delay ........ 8
D. The Equities, Public Interest, and Requested Mechanics Favor Restoration ........ 9
CONCLUSION ........ 10

# TABLE OF AUTHORITIES

## Cases

*Bay Shore Union Free School District v. Kain*, 485 F.3d 730 (2d Cir. 2007)....................................5
*Board of Education v. Schutz*, 290 F.3d 476 (2d Cir. 2002)..............................................................7
*Doe v. East Lyme Board of Education*, 790 F.3d 440 (2d Cir. 2015)...............................................10
*Hernandez v. Conriv Realty Associates*, 182 F.3d 121 (2d Cir. 1999) ..................................................6
*J.M. v. New York City Department of Education*, No. 25-1046 (2d Cir. Dec. 9, 2025) .........................6
*Law Office of Philippe J. Gerschel v. New York City Department of Education*, No. 24-CV-6303 (MMG), 2025 WL 2778165 (S.D.N.Y. Sept. 30, 2025)..........................................................1, 4
*Mackey v. Board of Education*, 386 F.3d 158 (2d Cir. 2004)..............................................................7
*Manos v. New York City Department of Education*, No. 25 Civ. 1101 (KPF), 2026 U.S. Dist. LEXIS 43104 (S.D.N.Y. Mar. 3, 2026) ...................................................................................................5
*Mendez v. Banks*, 65 F.4th 56 (2d Cir. 2023) .........................................................................................9
*N.K. v. N.Y.C. Department of Education*, No. 25-CV-7782 (JGK), ECF No. 24 (S.D.N.Y. July 24, 2026) ...........................................................................................................................................5
*Murphy v. Arlington Central School District Board of Education*, 297 F.3d 195 (2d Cir. 2002).....6, 7
*Ventura de Paulino v. New York City Department of Education*, 959 F.3d 519 (2d Cir. 2020) .......7, 8
*Vultaggio ex rel. Vultaggio v. Board of Education*, 343 F.3d 598 (2d Cir. 2003)................................2
*Zvi D. v. Ambach*, 694 F.2d 904 (2d Cir. 1982)...............................................................................7, 8

## Administrative Decisions

*Application of a Student with a Disability*, Appeal No. 24-636 (Office of State Review Aug. 8, 2025) ....................................................................................................................................7, 8
Findings of Fact and Decision, IHO Case No. 307092 (June 15, 2026)..............................................4

## Statutes and Regulations

20 U.S.C. § 1415.....................................................................................................................1–3, 6–8
28 U.S.C. § 1331.................................................................................................................................2
34 C.F.R. § 300.137(a)........................................................................................................................5
34 C.F.R. § 300.140(a)(1) ....................................................................................................................4
34 C.F.R. § 300.518(d) .........................................................................................................................7
N.Y. Educ. Law § 3602-c ...........................................................................................................1, 3, 4

## Other Authority

U.S. Department of Education, *Questions and Answers on Serving Children with Disabilities Placed by Their Parents in Private Schools* (rev. Feb. 2022)...............................................................3, 5

## PRELIMINARY STATEMENT

Defendants oppose a case A.H. did not bring. No IESP was developed for N.H. for the 2025–2026 school year, and A.H. did not request equitable services under New York Education Law § 3602-c. She repeatedly asked the New York City Department of Education ("DOE"), N.H.'s district of residence, to evaluate him, convene a CSE, develop an IEP, and offer a public-school placement. Her operative due process complaint alleged child-find and FAPE violations and requested an IEP, a public placement, and maintenance of N.H.'s pendency program. A.H. S-Decl. ¶¶ 6–22. Those are matters expressly covered by 20 U.S.C. § 1415(b)(6)(A), not a claim to implement services listed in an IESP.

The authorities on which DOE principally relies confirm the distinction. In *Law Office of Philippe J. Gerschel v. New York City Department of Education*, this Court addressed fifty proceedings sharing one dispositive characteristic: each sought services promised in an agreed IESP. No. 24-CV-6303 (MMG), 2025 WL 2778165, at *3–5 (S.D.N.Y. Sept. 30, 2025). The Court expressly reserved whether an individual proceeding with materially different facts could be shown to have been brought under the IDEA. *Id.* This is that different case. There is no 2025–2026 IESP to enforce, no § 3602-c request, and no claim for equitable services from a district of location. The contemporaneous record instead documents repeated requests for an IEP, FAPE, and public placement. The IHO's decision does not itself create federal jurisdiction, but it confirms the substance of the claims actually pleaded and litigated: the IHO adjudicated FAPE, rejected DOE's district-of-location theory, and ordered DOE to develop an IEP. A.H. S-Decl. ¶¶ 23–28.

Once DOE's threshold recharacterization is rejected, § 1415(j) controls. A final, unappealed 2019 FOFD, three subsequent pendency orders, two SRO decisions, and DOE's own 2026 authorizations identify the 2019 Program as N.H.'s pendency placement. A.H. S-Decl. ¶¶

35–37. Every component has stopped, DOE has offered no substitute, and the providers will resume upon effective prospective authorization. This is a placement emergency, not a demand to accelerate payment for services that continue uninterrupted. The Court should restore the status quo.

## ARGUMENT

## POINT I

## THE COURT HAS SUBJECT-MATTER JURISDICTION BECAUSE THE OPERATIVE PROCEEDING WAS BROUGHT UNDER § 1415

### A. The Operative Claims Concern Identification, Evaluation, Placement, and FAPE.

Federal courts have jurisdiction over actions brought under § 1415, 20 U.S.C. § 1415(i)(3)(A), and over claims arising under federal law, 28 U.S.C. § 1331. This action seeks to enforce § 1415(j). DOE invokes *Vultaggio ex rel. Vultaggio v. Board of Education*, which explains that a proceeding is "brought under" § 1415 when it is commenced through a complaint authorized by § 1415(b)(6) or (k). 343 F.3d 598, 602 (2d Cir. 2003). That rule supports jurisdiction here. Section 1415(b)(6)(A) authorizes complaints concerning "the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education." Those are the claims A.H. presented.

Between August 15 and September 15, 2025, A.H. and her then-counsel wrote DOE four times requesting an IEP meeting, an evaluation of N.H.'s needs, and a school placement. The August 15 letter was captioned "REQUEST FOR I.E.P. MEETING" and referred expressly to FAPE. The August 22 notice rejected the outdated March 2023 IESP and requested "a more appropriate IEP" and a school placement. After DOE responded by discharging N.H. because he

attended school outside New York City, the September 15 letter again demanded an IEP and asked whether DOE believed a resident student forfeited the right to one merely by attending school elsewhere. A.H. S-Decl. ¶¶ 6–16. A.H. never requested 2025–2026 equitable services under § 3602-c from DOE or any district of location, and she testified that she sought to enroll N.H. in public school. *Id.* ¶¶ 17–18.

The operative due process complaint matched those requests. It alleged that DOE violated child find and denied N.H. a FAPE by failing to evaluate him, develop an IEP, or offer a placement; it sought an order requiring DOE to convene the CSE and develop an IEP based on his current needs, together with implementation of pendency. It did not request an IESP, equitable services, or public payment of private-school tuition. *Id.* ¶¶ 21–22. DOE's emphasis on N.H.'s prior private-school history and the absence of a Burlington/Carter tuition claim does not change the statutory subject of the complaint. Section 1415(b)(6)(A) identifies the matters that may be raised; it does not make a tuition claim a jurisdictional prerequisite to seeking an IEP and public placement.

Federal guidance confirms the distinction DOE disregards. A parent may request an evaluation from the residence LEA for the purpose of making FAPE available, and when the private school and residence LEAs differ, the residence LEA remains responsible for making FAPE available. U.S. Dep't of Educ., *Questions and Answers on Serving Children with Disabilities Placed by Their Parents in Private Schools*, Questions A-4 to A-6 (rev. Feb. 2022). The guidance itself distinguishes children privately enrolled for whom FAPE is not at issue from children whose parents have placed them privately but for whom FAPE remains in dispute. The guidance relieves a residence LEA of future annual IEP development only after it has made FAPE available and the parent has clearly rejected that offer in favor of continued private enrollment. Id. DOE made no offer here. It convened no CSE, conducted no evaluation, issued no prior written

notice, and proposed no program or placement. A.H. S-Decl. ¶¶ 19–20, 30–34. A parent cannot reject an offer that was never made.

The June 15, 2026 FOFD is relevant in that limited, proper sense. It does not bind this Court on Article III jurisdiction, but it confirms that the proceeding actually presented a federal FAPE dispute: the IHO denied DOE's motion to dismiss, found that DOE's failure to develop an IEP denied N.H. a FAPE, and ordered DOE to develop an IEP within forty-five days. *Id.* ¶¶ 23–28. As of July 29, DOE had not noticed or convened the ordered meeting. *Id.* ¶ 28. The administrative record thus corroborates–not creates–the federal nature of the claims.

**B. Section 300.140 and DOE's IESP Authorities Do Not Govern This Proceeding.**

DOE's reliance on 34 C.F.R. § 300.140(a)(1) begins from the same incorrect premise. That regulation excludes IDEA due process procedures from complaints alleging that an LEA failed to meet the equitable-services requirements in §§ 300.132 through 300.139, "including the provision of services indicated on the child's services plan." It does not exclude a complaint to the residence LEA concerning identification, evaluation, educational placement, and FAPE. There was no 2025–2026 services plan or IESP whose implementation A.H. challenged. Her complaint therefore falls outside § 300.140(a)(1)'s subject matter; Plaintiffs need not depend on the regulation's narrower child-find exception.

*Gerschel* illustrates that textual boundary. The fifty underlying proceedings there sought services DOE had promised in agreed IESPs, and the Court therefore held that they challenged "the provision of services indicated on the child's services plan." 2025 WL 2778165, at *3–5. Because the Court analyzed characteristics common to all fifty matters, it expressly took no position on an individual proceeding with unique facts demonstrating that it was brought under the IDEA. Id. Here, the unique facts are dispositive: no operative IESP exists; A.H. never invoked §

3602-c; she repeatedly demanded an IEP and public placement; and the due process complaint alleged the denial of FAPE and sought an IEP.

*Manos v. New York City Department of Education* is distinguishable for the same reason. There, the underlying complaint challenged DOE's failure to implement an IESP and sought funding for the services specified in it. No. 25 Civ. 1101 (KPF), 2026 U.S. Dist. LEXIS 43104, at *4–6, *13 (S.D.N.Y. Mar. 3, 2026). *Bay Shore Union Free School District v. Kain* likewise turned entirely on whether New York law required a one-to-one aide at a parochial school; no federal FAPE or IEP obligation was disputed. 485 F.3d 730, 734–35 (2d Cir. 2007). Those cases do not authorize DOE to convert a pleaded FAPE claim into an IESP claim by labeling every privately enrolled student an "IESP student." DOE's own description of *N.K. v. N.Y.C. Department of Education* confirms the same distinction: according to the court, the alleged relief there was "solely" equitable services. No. 25-CV-7782 (JGK), ECF No. 24, at 15 (S.D.N.Y. July 24, 2026); Def. Opp. at 13. That limiting fact is absent here.

Section 300.137(a) is no broader. It limits a parentally placed child's individual entitlement to equitable services while the child remains privately enrolled; it does not answer whether the residence LEA must respond when the parent requests FAPE, an IEP, and public placement, and it does not extinguish an already established stay-put placement.

### C. The District-of-Location Rules Do Not Displace DOE's FAPE or Pendency Obligations.

DOE conflates two distinct legal frameworks. The district where a private school is located administers equitable participation for a child whose parent requests services under that framework. The residence district, however, remains responsible for making FAPE available when the parent seeks an IEP and public placement. The Department of Education guidance makes that

allocation explicit. A.H. sought the latter from DOE and never sought the former from the school district of location. A.H. S-Decl. ¶¶ 6–18.

Nor can a district-of-location theory transfer an existing pendency obligation to a district that was not a party to the 2019 FOFD or any subsequent pendency proceeding. The 2019 FOFD was entered against DOE; DOE repeatedly implemented it as pendency; and DOE's January and March 2026 authorizations again identified the services as required "Per the Pendency Order" through the conclusion of the case. *Id.* ¶¶ 35–37. Attendance at a private school outside New York City did not create an agreement with a different district to replace that placement. DOE's present effort to call its own multi-year pendency implementation an "error" cannot suspend N.H.'s placement while the issue is litigated.

**D. Exhaustion Does Not Bar Enforcement of Stay-Put.**

DOE's Section 504 exhaustion argument does not defeat jurisdiction. The Second Circuit has now held that IDEA exhaustion is a nonjurisdictional claim-processing rule. *J.M. v. N.Y.C. Dep't of Educ.*, No. 25-1046, slip op. at 7–8 (2d Cir. Dec. 9, 2025). More fundamentally, a claim to enforce § 1415(j) is not subject to exhaustion because stay-put operates during the very administrative review DOE says must first be completed. *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199–200 (2d Cir. 2002). The Court need not resolve any independent Section 504 merits claim to enforce the IDEA's status quo requirement.

DOE's request, placed only in the conclusion of its opposition, to dismiss the Complaint with prejudice should also be rejected. No Rule 12 motion is before the Court, and a dismissal for lack of subject-matter jurisdiction could not in any event be with prejudice. *Hernandez v. Conriv Realty Associates*, 182 F.3d 121, 123 (2d Cir. 1999).

## POINT II

## SECTION 1415(j) REQUIRES IMMEDIATE RESTORATION OF THE 2019 PROGRAM

### A. The 2019 Program Is N.H.'s Established Pendency Placement.

Section 1415(j) requires that, during proceedings under § 1415, "the child shall remain in the then-current educational placement" unless the parties agree otherwise. It substitutes an absolute rule preserving the status quo for the ordinary preliminary-injunction factors. *Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982); *Murphy*, 297 F.3d at 199; *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 526 (2d Cir. 2020). Pendency is independent of the ultimate merits. *Mackey v. Bd. of Educ.*, 386 F.3d 158, 160–61 (2d Cir. 2004).

The status quo here is established by far more than an allegation. The final, unappealed November 9, 2019 FOFD awarded the twelve-month 2019 Program. A favorable, unappealed administrative decision constitutes the parties' agreement for stay-put purposes. 34 C.F.R. § 300.518(d); *Board of Education v. Schutz*, 290 F.3d 476, 484 (2d Cir. 2002). The same program was then reaffirmed in pendency orders dated December 19, 2022, July 23, 2025, and December 23, 2025, and recognized in SRO Appeal Nos. 24-628 and 24-636. A.H. S-Decl. ¶¶ 35–36. DOE repeatedly authorized and funded it and, after the current proceeding began, issued provider authorizations stating that the services were required "Per the Pendency Order," on a twelve-month basis, "until the conclusion of this case." *Id.* ¶ 37.

The March 2023 IESP did not replace that placement. It was neither agreed to nor implemented as pendency, and DOE continued funding the 2019 Program afterward. Plaintiffs seek the exact service array fixed by the 2019 FOFD and repeatedly treated as pendency–not a new school, a substituted program, or a parent-created placement based on substantial similarity.

Cutting off the funding necessary to maintain that program effected the unilateral change § 1415(j) forbids. *Zvi D.*, 694 F.2d at 906.

**B. DOE Remains Responsible for Implementation and Has Offered No Alternative.**

SRO Appeal No. 24-636, involving N.H. and the same 2019 Program, confirms DOE's implementation responsibility. The SRO held that DOE, having agreed to pendency based on the unappealed 2019 FOFD, was responsible under law for implementing it and ordered make-up services for the components DOE failed to deliver. *Application of a Student with a Disability*, Appeal No. 24-636, at 11 (Aug. 8, 2025). The SRO explained separately that pendency is governed by the IDEA and is evaluated independently from the program's current appropriateness. *Id.* at n.11. DOE therefore cannot use a merits concern the SRO expressly did not decide to defeat the automatic status quo.

DOE has identified no provider, program, or placement prepared to deliver any component. Its inaction is not the discretion recognized in *Ventura de Paulino*. Although DOE may choose in good faith how to implement the established educational program, it may not choose nonimplementation. The requested order preserves DOE's choice: within five business days, it may authorize the existing providers or identify qualified alternative providers who have accepted N.H.'s case and will begin each component. Pl. Mem. at 13–15. Until DOE produces a functioning alternative, prospective authorization of the providers willing to resume is the only means of restoring the placement.

**C. The Existing Loss of the Placement Establishes Harm, and the Chronology Answers Delay.**

Although § 1415(j) does not require a separate showing of irreparable harm, the record satisfies the traditional standard. DOE funded none of the program after December 31, 2025.

Providers temporarily carried portions of it at their own risk, but services then stopped in stages: parent counseling and BCBA supervision at the funding lapse, speech-language therapy in January, PT and a portion of enhanced OT in March, and the remaining enhanced OT, SEIT, and individual OT in May. No component is now being delivered, and DOE has offered no substitute. Barbieri Decl. ¶¶ 31–34; A.H. Decl. ¶¶ 30–33, 41–50; Def. Opp. at 7, 15.

*Mendez v. Banks* reinforces rather than defeats relief. It declined to compel accelerated payments where the families had not shown that payment delay threatened the students' placements, while recognizing that relief remains available when nonpayment does threaten placement. 65 F.4th 56, 63–64 (2d Cir. 2023). Here the threatened harm has occurred: the placement has collapsed. The motion seeks effective prospective authorization necessary for services to resume, not merely faster processing of invoices for an intact program.

DOE's "six months" argument conflates the December funding lapse with the later, complete loss of services. Providers initially mitigated DOE's default; the final components ceased in May. The IHO denied pendency on May 28, and Plaintiffs commenced this action on July 14. That chronology is not acquiescence in a discontinued placement. It reflects efforts to preserve services, followed by prompt judicial enforcement once the administrative ruling left N.H. with no functioning program. The injury is present and continues each day.

**D. The Equities, Public Interest, and Requested Mechanics Favor Restoration.**

The public interest favors enforcement of Congress's status quo command. DOE's taxpayer argument assumes the very proposition in dispute–that it owes nothing–and cannot outweigh N.H.'s ongoing loss of an established educational placement. The proposed relief is narrow: restore the existing program during administrative and judicial review, permit DOE to use accepted qualified alternatives, require workable authorizations and reporting, and reserve

historical payment and make-up determinations for competent proof. DOE does not separately contest those implementation mechanics or Plaintiffs' request to waive security.

Nor does the absence of parental "fronting" defeat relief. *Doe v. East Lyme Board of Education* holds that a child's stay-put entitlement cannot depend on the parent's ability to advance the cost of services. 790 F.3d 440, 456 (2d Cir. 2015). The immediate issue is prospective restoration. Any payment for services already delivered and any make-up services may be determined through the component-by-component accounting requested in the opening memorandum, with credit for services actually delivered and no double recovery.

**CONCLUSION**

For these reasons, and those set forth in Plaintiffs' opening memorandum, Plaintiffs respectfully request that the Court grant the motion for a preliminary injunction and enter the relief described at pages 19 through 20 of that memorandum, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
July 29, 2026

Respectfully submitted,

*Laura Dawn Barbieri*

Laura D. Barbieri, Esq.
**LAW OFFICE OF LAURA D. BARBIERI, PLLC**
Attorney for Plaintiffs
115 West 73rd Street, Suite 1B
New York, New York 10023
(914) 819-3387
Laura@LDBarbLaw.com

**CERTIFICATE OF COMPLIANCE**
**PURSUANT TO RULE II(B)(2) OF THE INDIVIDUAL RULES & PRACTICES**
**OF THE HONORABLE MARGARET M. GARNETT**

Pursuant to Rule II(B)(2) of the Individual Rules & Practices of the Honorable Margaret M. Garnett and Local Civil Rule 7.1, I certify that the foregoing Reply Memorandum of Law complies with the applicable word-count limitation. According to the word count of the word-processing program used to prepare this document, the portions of this memorandum required to be counted contain 2,842 words, which is fewer than the 3,500 words permitted for reply memoranda. This memorandum is double-spaced, formatted with one-inch margins, and set in 12-point Times New Roman.

Dated: July 29, 2026
New York, New York

______________________________
Laura D. Barbieri, Esq.