**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| A.H., individually and on behalf of N.H., a student with a disability,<br><br>Plaintiffs,<br><br>-against-<br><br>The Board of Education of the City School District of the City of New York, the New York City Department of Education, a/k/a New York City Public Schools, the City of New York, and Chancellor Kamar H. Samuels, in his official capacity,<br><br>Defendants. | 26 Civ. 5926 (MMG)<br><br>ECF CASE |

**SUPPLEMENTAL DECLARATION OF A.H. IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

A.H. declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

## I. Introduction and Purpose of This Declaration

1. I am the mother of N.H., the student who is the subject of IHO Case No. 307092, and a Plaintiff in this action. I am over the age of eighteen and am competent to declare, attest, and affirm under penalty of perjury as to the matters set forth below.

2. I submit this Supplemental Declaration in further support of Plaintiffs' motion for a preliminary injunction and in response to Defendants' Memorandum of Law in Opposition, dated July 27, 2026 (ECF No. 16) ("Def. Opp.").

3. In their opposition, Defendants tell this Court that N.H. "is and has always been an IESP-student," that I "have willingly and voluntarily opted out of a free appropriate public education," that I "seek [ ] equitable services, exclusively," and that "[n]either the Complaint nor

the Amended DPC put forth facts that the Parent intends to transfer the Student to a public placement in N.Y.C." Def. Opp. at 13, 15.

4. Those statements are not accurate, and the contemporaneous written record contradicts them. I submit this Supplemental Declaration to identify and explain the documents that show precisely what I asked the New York City Department of Education ("DOE" or "the District") for the 2025-2026 school year, what the DOE did in response, and what the Impartial Hearing Officer ("IHO") actually decided.

5. The statements in this Supplemental Declaration are based on my personal knowledge, on records I keep in the ordinary course of managing N.H.'s special education program, and on the documents annexed as exhibits to the Declaration of Laura D. Barbieri, Esq. (the "Barbieri Decl.") and to the Supplemental Declaration of Laura D. Barbieri, Esq. (the "Barbieri S-Decl.") submitted herewith. Where I state something on information and belief, I believe that statement to be true.

## II. What I Asked the DOE For: a FAPE, an IEP, and a Public School Placement

6. I did not ask the DOE for equitable services. I asked the DOE, in writing, four separate times between August 15, 2025 and September 15, 2025, to evaluate my son's needs, to convene an IEP meeting, to develop an IEP, and to offer him a placement. Each of those requests is described below.

7. **The August 15, 2025 Request for an IEP Meeting.** On August 15, 2025, I wrote directly to the Chairperson of Committee on Special Education 6 ("CSE 6"), Marlene Morris Lambert, and to Kathleen Roblodowski, at their DOE email addresses. The subject line of my letter was "REQUEST FOR I.E.P. MEETING." A true and correct copy of that letter is annexed to the Barbieri S-Decl. as Ex. 2 at 1.

8. In that letter, I wrote that I was very concerned about N.H.'s academic and social development; that the District had not contacted us for the last two years for an I.E.P.; that I had not heard from the District about F.A.P.E. or services for the 2025-26 school year; and that N.H. desperately needed special education intervention to continue making academic and social progress and to address his many special education needs. I asked the CSE to schedule an I.E.P. meeting as soon as possible and to consider the special education program and services that N.H. requires. *Id.*

9. I used the words "I.E.P." and "F.A.P.E." in that letter. I did not use the words "IESP," "equitable services," "services plan," or "Education Law § 3602-c," and I did not ask for any of those things. I asked the district in which my son resides to give my son an IEP. *Id.*

10. **The August 22, 2025 Ten-Day Notice.** On August 22, 2025, my counsel, Philippe Gerschel, Esq., served a Ten-Day Notice on the DOE's CSE 6 ten-day notice mailbox on my behalf. A true and correct copy is annexed to the Barbieri S-Decl. as Ex. 2 at 2-3. The notice stated the following, which I confirm to be accurate:

a. that the last CSE meeting for N.H. had been held on or about March 28, 2023, and that the CSE had created an IESP recommending an inappropriate program with insufficient support;

b. that I was writing to reject the reduced recommendations set forth in that IESP, which was "outdated, expired, and inappropriate;"

c. that I was very concerned that the District had not convened an IEP meeting in preparation for the 2025-2026 school year, and that an IEP meeting had been requested from the CSE "hoping the District [would] create a more appropriate IEP;"

d. that a school placement had also been requested, and that the CSE had not scheduled an IEP meeting as of the date of the notice;

e. that N.H. is classified as a student with Autism and has been diagnosed with Autism Spectrum Disorder, Sensory Processing Disorder, and Attention Deficit Hyperactivity Disorder, presents with behavioral challenges and low frustration tolerance, and requires the 1:1 SEIT support that has allowed him to make progress in a mainstream setting;

f. that, in the absence of a DOE program, we would be seeking reimbursement or direct payment from the DOE for 1:1 SEIT and related services; and

g. that nothing in the notice should be deemed to relieve the District of its obligation to provide services under pendency.

11. I want to be precise about what the August 22, 2025 notice did and did not say, because Defendants' opposition mischaracterizes my position as one of having opted out of public education. The notice rejected the March 28, 2023 IESP. It asked for an IEP. It asked for a school placement. It did not request equitable services from any district. It did not ask the DOE to fund private school tuition, and I have never asked the DOE to fund N.H.'s private school tuition. I asked the District to implement and fund N.H.'s services to which he is entitled pursuant to pendency. *Id.*

12. **The September 5, 2025 Request for an IEP Meeting.** Having received no response from the DOE, on September 5, 2025 I sent a second written request for an IEP meeting, this time to Linda Herskovitz and Sara Zimmerman at their DOE email addresses. The subject line again read "REQUEST FOR I.E.P. MEETING," and the substance was the same as or similar to my August 15, 2025 letter: I asked the DOE to schedule an I.E.P. meeting as soon as possible and to

consider the special education program and services that N.H. requires. A true and correct copy is annexed to the Barbieri S-Decl. as Ex. 2 at 4.

13. My counsel and I followed up again on or about September 9, 2025. In response to that inquiry, the CSE advised that N.H.'s case had been "discharged as he attends [a] general education high school outside of NYC." *See* Barbieri Decl. Ex. 8.

14. **The September 15, 2025 Letter and Updated Ten-Day Notice.** On September 15, 2025, my counsel wrote to the CSE again on my behalf, in a letter transmitted to the DOE's CSE 6 ten-day notice mailbox and acknowledged by the DOE by return email the same evening. A true and correct copy of the email transmission and the letter is annexed to the Barbieri Decl. as Ex. 8.

15. That letter responded directly to the discharge. It stated that I did not understand why the CSE had decided not to conduct an IEP meeting for N.H.; it asked whether the DOE's position was that once a student attends a school outside of New York City, the student relinquishes his right to an IEP from the district in which he resides for any subsequent school year; it respectfully requested that the CSE reconsider its decision to "discharge" him; it requested, again, that the CSE conduct an IEP Meeting and make appropriate recommendations; and it stated that nothing in it should be deemed to relieve the District of its obligation to provide services under pendency. *Id.*

16. Across those four written communications, sent over the course of approximately one month, I asked the DOE for the same three things every time: a free appropriate public education, an IEP, and a placement. The DOE never convened a CSE meeting, never evaluated N.H., never issued prior written notice, and never offered any program or placement of any kind in response.

17. I have never filed a request for equitable services with the school district in which N.H.'s nonpublic school is located. And for the 2025-2026 school year, I did not request services

under New York Education Law § 3602-c – not by the June 1 deadline that provision sets, and not at any other time.

18. I also testified to my intentions under oath at the May 12, 2026 impartial hearing. I stated that I was seeking to have N.H. enrolled in a public school. IHO Dalere expressly recorded that testimony in his decision. *See* Barbieri Decl. Ex. 13

## III. The DOE's Response Was to Discharge N.H. Without Required Process

19. On September 8, 2025, rather than convene the CSE, the DOE issued a Letter of Discharge asserting that N.H. had transferred to a school outside of New York City, while simultaneously stating that he remains a New York City resident. A true and correct copy is annexed to the Barbieri Decl. as Ex. 7.

20. No CSE meeting was convened before that discharge. I received no prior written notice. I was not asked for, and did not give, consent to any discharge. No evaluation was proposed. No program or placement was offered. The DOE simply removed my son from its rolls and stopped answering my requests. *Id.*

## IV. The Due Process Complaint Sought a FAPE and an IEP – Not Equitable Services

21. On December 31, 2025, through counsel, I filed the due process complaint in IHO Case No. 307092, which I amended in February 2026. See Barbieri Decl. Ex. 15 and 16. In it, I alleged that the DOE violated its child find obligations and denied N.H. a free appropriate public education for the 2025-2026 extended school year by failing to develop an IEP for him, and I asked for an order directing the DOE to convene the CSE and develop an IEP based on his current needs, together with implementation of his pendency program. *Id.*

22. I did not ask the IHO to order an IESP. I did not ask the IHO to order equitable services. I did not seek tuition funding for a private school placement.

23. In the administrative proceeding, the DOE made the same argument it makes to this Court – that any claim relating to the 10-month 2025-2026 school year had to be brought against the school district in which N.H.'s nonpublic school is located, rather than against the district in which N.H. and I reside. The IHO directed briefing on that question and, after receiving it, rejected the DOE's position as "without merit." *See* Barbieri Decl. Ex. 13.

## V. The June 15, 2026 Findings of Fact and Decision

24. On June 15, 2026, IHO Melvin Dalere issued a Findings of Fact and Decision in IHO Case No. 307092. A true and correct copy is annexed to the Barbieri Decl. as Ex. 13. I have read that decision and I understand its holdings to be as follows.

25. **The IHO denied the DOE's motion to dismiss.** The IHO found the DOE's application to dismiss my claims relating to the 10-month 2025-2026 school year to be "without merit," and denied it. He held that even though N.H. had been privately enrolled in prior school years, that fact did not relieve the District of its obligation to develop an IEP for him, particularly where I had not manifested any intention to reject the offer of a FAPE and where the last program the CSE developed – the March 28, 2023 IESP – was outdated. He expressly noted that I had requested an IEP from the District in August 2025 and had testified that I was seeking to have N.H. enrolled in a public school. *Id.*

26. **The IHO found a denial of FAPE.** Applying Prong I of the *Burlington/Carter* standard, the IHO found that the District failed to meet its burden at the hearing and that, because the District failed to develop an IEP for N.H. at any point during the 2025-2026 school year, N.H. "was denied a FAPE for the 10-month 2025-2026 school year." *Id.*

27. **The IHO ordered the DOE to develop an IEP.** The IHO ordered that the District "shall convene the Committee on Special Education to review Student's records, consider and

incorporate Student's most recent assessments and evaluations, and develop an Individualized Education Program based on Student's current needs within 45 days of the date of this Order." *Id.*

28. That 45-day period runs through on or about July 30, 2026. As of the date of this Declaration, the DOE has not scheduled or convened a CSE meeting for N.H. I have received no meeting notice, no invitation to participate, no request for consent to evaluate, and no proposed IEP or placement offer.

29. The IHO denied my requests for funding of N.H.'s privately obtained providers and for compensatory education, and I have appealed those determinations to the State Review Officer ("SRO"). I am not aware of whether the DOE has appealed, or cross-appealed, the IHO's denial of its motion to dismiss, his finding that N.H. was denied a FAPE for the 2025-2026 school year, or his order directing the CSE to convene and develop an IEP, but I have been advised that the SRO is taking a long time to make their determinations of the appeals because there are so many being filed. This delay in resolving my son's needs is causing him great harm, harm that I believe is compounding over time and causing him to suffer irreparable harm.

## VI. N.H. Has No IEP Because the DOE Did Not Create One, Not Because I Declined One

30. Defendants state that N.H. has never had an active, implemented school-age IEP. That statement is false; the DOE developed an IEP for N.H. when he was in preschool (2015-2016) and then again when he turned five (2016-20217); at no time, however, even in those early years, did the DOE identify a public school placement that I could even consider. And, they have failed to identify any public school placement since.

31. For the operative school year (2025-2026), which is the school year that matters here, I specifically sought and asked repeatedly for an IEP for N.H. as well as a public school placement.

I asked in August 2025, twice in September 2025, again in the December 31, 2025 due process complaint, again in the February 2026 amended complaint, and again at the May 12, 2026 hearing.

32. Despite these repeated requests, the DOE has not and did not present me with an IEP or a public school placement offer that I could accept or reject. I cannot opt out of an offer that was never made.

33. I want N.H. to receive a free appropriate public education from the district in which he lives. I prefer for him to attend school closer to home. If the DOE convenes a CSE, evaluates him, develops an IEP that meets his needs, and offers him an appropriate public school placement, I want to consider it. That is what I have been asking the DOE to do since August 2025, and it is what the IHO ordered the DOE to do on June 15, 2026.

34. The private school N.H. currently attends is a general education school that I pay for. I have never sought public funding for that tuition, and I do not seek it in this action. This case has never been about private school tuition; it is about the DOE's refusal to provide my son with an educational program at all.

## VII. The DOE Itself Treated N.H.'s Program as an IDEA Pendency Placement

35. N.H.'s pendency program is established by the final, unappealed Findings of Fact and Decision dated November 9, 2019 in IHO Case No. 174703, in which IHO Suzanne M. Carter found that the DOE had failed to offer N.H. a free appropriate public education and awarded him the twelve-month program of services described in my prior Declaration (the "2019 Program"). *See* Barbieri Decl. Ex. 1.

36. The 2019 Program has been reaffirmed as N.H.'s pendency placement in every due process proceeding I have filed since 2019, including by Pendency Orders dated December 19,

2022, July 23, 2025, and December 23, 2025, and by State Review Officers in Appeal No. 24-628 and Appeal No. 24-636. *See* Barbieri Decl. Exs. 3, 4, and 5.

37. The DOE funded that program without objection for years, including after N.H. began attending a nonpublic school outside New York City in the 2023-2024 school year. During the 2025-2026 school year, the DOE's own Impartial Hearing Order Implementation Unit issued direct authorizations to N.H.'s providers stating that the services were required "Per the Pendency Order" on a twelve-month basis, effective from October 27, 2025 "until the conclusion of this case." *See* Barbieri Decl. Exs. 9, 10, and 11.

## VIII. Conclusion

38. I respectfully reaffirm each of the statements and requests set forth in my Declaration dated July 14, 2026, and I respectfully request that the Court grant the relief sought in Plaintiffs' motion for a Preliminary Injunction, together with such other and further relief as the Court deems just and proper.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: July 29, 2026
New York, New York

[redacted]______________
A.H. [redacted]
*Plaintiff*