USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 08/04/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

A.H., individually and on behalf of N.H., a student with a disability,

Plaintiff,

-against-

THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, et al.,

Defendants.

26-CV-05926 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Before the Court is a motion for a preliminary injunction, filed on July 16, 2026, by A.H., individually and on behalf of her child, N.H., a fifteen-year-old student with disabilities. Having carefully considered the parties' papers and their oral arguments, relevant legal authority, and the record in this case, Plaintiff's motion is GRANTED IN PART for the reasons set forth below.

## RELEVANT FACTS & PROCEDURAL HISTORY

N.H. is a fifteen-year-old student with disabilities, who resides in Brooklyn, New York. Dkt. No. 1 ("Compl.") ¶¶ 21–22, 51. Through the sixth grade, N.H. attended a private school in New York City at his parents' expense, but as of the 2023-2024 school year, N.H. has attended a private school on Long Island, outside of New York City. *Id.* ¶ 57.

On December 10, 2018, A.H. filed a Due Process Complaint ("DPC") on behalf of her son, N.H., alleging that the New York City Department of Education ("DOE") denied the child a Free Appropriate Public Education ("FAPE") and failed to develop an adequate IESP for that school year. Dkt. No. 7-3, at 2 ("2019 FOFD"). As a result of that DPC, on November 9, 2019, N.H. was awarded a twelve-month program of intensive individualized supplemental services via an unappealed Findings of Fact and Decision. *Id.* at 3. The program included forty hours per

week of 1:1 Special Education Itinerant Teacher ("SEIT") services; seven hours per week of enhanced occupational therapy ("OT"); two hours per week of Parent Counseling and Training; two hours per week of Board-Certified Behavior Analyst ("BCBA") supervision; individual OT three times weekly; individual physical therapy ("PT") three times weekly; and individual speech-language therapy ("SLT") three times weekly. *See* Dkt. No. 7-5. A.H. has filed multiple DPCs since the 2019 services were awarded, and Impartial Hearing Officers ("IHOs") ruled that the 2019 FOFD acted as the operative placement for pendency on numerous occasions—most recently on December 23, 2025. *See* Dkt. No. 7-4 (December 19, 2022 Pendency Order); Dkt. No. 7-6 (December 23, 2025 Pendency Order).

On March 28, 2023, the Committee on Special Education ("CSE") for N.H.'s home school district convened and developed an IESP for N.H., which A.H. rejected as "inappropriate" and "with insufficient support." Compl. ¶ 55; Dkt. No. 18-2, at 2–3. This IESP was never implemented. Compl. ¶ 55; Dkt. No. 7-7. Beginning in August 2025, A.H. made multiple requests for the CSE to convene, develop an IEP for N.H., and offer him a suitable public school placement; as of at least July 31, 2026, the DOE had not taken action on these requests. *See* Dkt. No. 18-1 ¶¶ 6–18. Instead, on September 8, 2025, the DOE issued a Letter of Discharge disclaiming responsibility for N.H. because he had transferred to a private school outside of New York City. Compl. ¶ 57. Nevertheless, the DOE authorized payment for the 2019 FOFD services until December 31, 2025. *Id.* ¶ 60.

A.H. filed the operative DPC for the 2025-2026 school year on December 31, 2025, amended on February 10, 2026, alleging that the DOE violated child-find obligations and denied N.H. a FAPE by failing to develop an IEP as requested by the parent, and requesting a pendency order to fund the 2019 FOFD services and for the CSE to convene to develop a current IEP and

offer a suitable public school placement. Dkt. No. 7-2 ¶ 22; Dkt. No. 18-1 ¶ 21. In response, the DOE objected to pendency and moved to dismiss the DPC without proposing any alternative pendency program. Dkt. No. 7-1 ¶¶ 21–22; Dkt. No. 9-12, at 5.

On May 28, 2026, an IHO denied N.H.'s interim pendency request, finding that N.H.'s retention of private providers to implement the 2019 Program was a "rejection" of pendency by self-help. Dkt. No. 7-13. That order is pending appeal to the SRO. Dkt. No. 10, at 6. On June 15, 2026, an IHO denied the DOE's motion to dismiss, finding a denial of a FAPE for the 2025-2026 school year, and ordered the DOE to develop an IEP within 45 days. Dkt. No. 7-14. That period lapsed on July 30, 2026, with no action by the DOE: no meeting notice or invitation to participate sent to the parent, no request for consent to evaluate issued, much less a proposed IEP or placement offer. Dkt. No. 18-1 ¶ 28.

On July 14, 2026, Plaintiff A.H. filed the present suit. Dkt. No. 1. On July 16, 2026, A.H. moved for an emergency temporary restraining order and preliminary injunction, seeking an order compelling enforcement of pendency rights based on the 2019 FOFD. Dkt. Nos. 6–10. Based in part on the fact that the child's pendency had been unfunded since December 31, 2025, and services had fully ceased as of May 2026, this Court denied the *ex parte* TRO the same day, and set an expedited briefing and argument schedule on the preliminary injunction. Dkt. No. 11.

In its opposition to Plaintiff's preliminary injunction motion, filed on July 27, 2026, the DOE primarily argued that this Court lacks subject matter jurisdiction to resolve the motion because IESP rights arise only under state law, and not the federal IDEA. Dkt. No. 16 ("Opp."). The DOE further argued that, in any event, it is not responsible for funding N.H.'s IESP services as pendency or otherwise because although N.H. resides in Brooklyn, he attends private school outside of New York City, and state law is clear that IESP services are the responsibility of the

district where the private school is located. *Id.* On July 30, 2026, the Court held a hearing and heard oral argument on the preliminary injunction motion.

**DISCUSSION**

## I. IDEA FRAMEWORK

The IDEA "offers States federal funds to assist in educating children with disabilities." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 390 (2017).[1] To receive these federal funds, states are required to "comply with a number of statutory conditions," including the requirement to provide a FAPE to "all eligible children." *Id.* Participating states must "establish a basic floor of meaningful, beneficial educational opportunity," but "may exceed the federal floor and enact their own laws and regulations to guarantee a higher level of entitlement to disabled students." *Bay Shore Union Free Sch. Dist. v. Kain*, 485 F.3d 730, 733 (2d Cir. 2007).

There is a "separate framework" under the IDEA "for disabled children who are parentally-placed in private schools." *E.T. v. Bd. of Educ. of Pine Bush Cent. Sch. Dist.*, No. 11-CV-05510 (ER), 2012 WL 5936537, at *10 (S.D.N.Y. Nov. 26, 2012). Such students do not have the same rights to receive "some or all of the special education and related services" as children enrolled in public schools. *J.S. v. Scarsdale Union Free Sch. Dist.*, 826 F. Supp. 2d 635, 665 (S.D.N.Y. 2011). Instead, those children are provided with "more limited services" called "equitable participation." *E.T.*, 2012 WL 5936537, at *11. Equitable participation is "distinct from the [IDEA's] FAPE requirement" and requires that children have a services plan that

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and omissions, and adopt alterations.

"describes the specific special education and related services that the [school district] will provide to the child."[2] *Id.*

In New York, the services plan for such children is called an Individualized Education Service Program ("IESP") and is set out in in New York Education Law § 3602–c(2)(b). Section 3602-c(2)(B) requires the Committee on Special Education ("CSE") in the school district to, upon request for special education services, develop an IESP for a child "based on the student's individual needs in the same manner and with the same contents as an individualized education program." N.Y. Educ. Law § 3602–c(2)(b)(1). It also requires the committee to "assure that special education programs and services are made available to students with disabilities attending nonpublic schools located within the school district on an equitable basis." *Id.*

## II. LEGAL STANDARD FOR PRELIMINARY INJUNCTION

To obtain preliminary injunctive relief, a plaintiff must show: (1) likelihood of success on the merits; (2) that she is likely to suffer irreparable harm in the absence of a preliminary injunction; (3) that the balance of equities tips in her favor; and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024). "[I]rreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990).

## III. THE COURT HAS SUBJECT MATTER JURISDICTION

The DOE primarily argues that this Court lacks subject matter jurisdiction to adjudicate the present matter because the alleged harm is based solely on state law: IESP cases, the DOE

[2] Children voluntarily placed in private school by their parents are distinct from children placed in private school as an alternative to an offered public school placement after a parent's determination that the offered placement does not provide a FAPE and a parent request that the school district fund the cost of the parent-selected private school. The latter category of child is not at issue here.

notes, are not "brought under" 20 U.S.C. § 1415 and therefore cannot be a basis for subject matter jurisdiction. *See L. Off. of Philippe J. Gerschel v. New York City Dep't of Educ.*, No. 24-CV-06303 (MMG), 2025 WL 2778165, at *4 (S.D.N.Y. Sept. 30, 2025). The Court disagrees. Although the specific pendency relief sought by the motion for preliminary injunction is funding for a prior IESP placement, the lawsuit itself arises from a parent's effort to get an IEP and a public-school placement offer for her child. And because the question before the Court is what rights a parent seeking an IEP has while that request is litigated in the administrative process, the Court has subject matter jurisdiction to consider it.

Federal courts have subject matter jurisdiction over "actions and proceedings brought under § 1415" of the IDEA. *Vultaggio ex rel. Vultaggio v. Bd. of Educ.*, 343 F.3d 598, 602 (2d Cir. 2003). An action or proceeding is "brought under" Section 1415 if it is "established by or referenced in" that section. *Id.* Section 1415 provides due process procedures, including the right to submit a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child"; the opportunity for an administrative hearing; and the ability to appeal the administrative hearing decision. 20 U.S.C. § 1415(b)(6)(A). An action not brought pursuant to these due process procedures is not an action "brought under" Section 1415 and cannot be a basis for subject matter jurisdiction. *See Vultaggio*, 343 F.3d at 602.

In *Gerschel*, this Court found that an action for attorney's fees was not "brought under" Section 1415 where the underlying proceedings for which Plaintiff sought the fees concerned "the provision of services indicated on the [parentally-placed private school] child's services plan.'" *Gerschel*, 2025 WL 2778165, at *4 (citing 34 C.F.R. § 300.140(a)(1)). There, despite the plaintiff's arguments that the underlying proceedings challenged the DOE's failure to provide a

FAPE under the IDEA, the plaintiff's submissions, and the fact that the underlying proceedings necessarily required findings that the DOE failed to provide IESP services, made it evident that the dispute did not arise under Section 1415. *Id.*

In contrast, the question here is what rights are owed under the IDEA to a student (and their parent) who is *currently* seeking an IEP and a FAPE. On numerous occasions, Plaintiff and Plaintiff's counsel have made representations that Plaintiff would seriously consider placing her child in a New York City public school, including via Plaintiff's sworn testimony at the May 12, 2026 impartial hearing, *see* Dkt. No. 7-14 at 7, and again by counsel at oral argument on July 30, 2026. Plaintiff has had no opportunity to evaluate whether that course of action is appropriate for her child, however, because the DOE has failed to convene the CSE, develop an IEP, or offer her child a public-school placement in the year since Plaintiff first requested those things. *See* Dkt. No. 18-1 ¶¶ 6–18. All of these requests are rights that Plaintiff and her child have under the IDEA. While Plaintiff waits for the DOE to provide those IDEA-guaranteed items, Plaintiff seeks to maintain her child's current educational placement; pendency or "stay-put" rights also arise under the IDEA. Because the question before the Court is whether the pendency rights guaranteed by the IDEA can encompass payment for the child's current educational placement, even where that placement was itself not guaranteed by the IDEA, the question arises under Section 1415 and accordingly, the Court has subject matter jurisdiction. 20 U.S.C. § 1415(b)(6)(A).

## IV. PENDENCY UNDER 20 U.S.C. § 1415(j) DOES NOT EXTEND TO THE CHILD'S CURRENT PLACEMENT

Plaintiff's request for emergency relief is two-fold: first, that the Court declare the services established by the 2019 FOFD as N.H.'s "then-current educational placement" (*i.e.* the pendency placement) under 20 U.S.C. § 1415(j); and, second, that the Court require the DOE to

fund the services in the 2019 FOFD under 20 U.S.C. § 1415(i)(2)(C)(iii), "prospectively through completion of the administrative and judicial proceedings." *See* Compl. at 22; Dkt. No. 10 at 19.

This case presents very unusual facts—indeed, at oral argument, both of the very experienced counsel stated that they were aware of no case addressing similar facts. According to DOE records, N.H. has only ever attended private school at his parents' expense. *See* Dkt. No. 16 ("Opp.") at 4–5; Compl. ¶ 57. He has received supplemental services under an IESP embodied by the 2019 FOFD since its issuance. Dkt. No. 9-1 ¶ 7. Those services are creatures of state law, which clearly states that IESP services are the financial responsibility of the district where the private school is located. Since the start of the 2023-2024 school year, N.H. has been enrolled in a private school outside of New York City. Opp. at 5. In error, the DOE continued funding the services in the 2019 FOFD, although it had no legal obligation to do so. Compl. ¶ 54; Opp. at 7. In August 2025, Plaintiff made multiple written requests that the DOE convene the CSE, develop an IEP, and offer a suitable public-school placement for her child, who remained a New York City resident. *See* Dkt. No. 18-2. In September 2025, the DOE, apparently realizing their funding error, issued a notice of discharge, noting that their payment for any IESP services for N.H. would cease on December 31, 2025, because he no longer attended school in New York City. Dkt. No. 7-8. As noted above, as of July 31, 2026, DOE had not acted on the Plaintiff's IDEA-based requests for nearly a year. *See* Dkt. No. 19.

On the present facts, the Court cannot conclude that the child has an entitlement to pendency under Section 1415(j)'s stay-put provision. The "stay-put" provision provides that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or . . . be placed in the public school program

[sought] until all such proceedings have been completed." 20 U.S.C. § 1415(j). That provision is meant to serve as an "injunction" that keeps the student in the "then-current educational placement," *L.B. v. New York City Dep't of Educ.*, No. 21-CV-09356 (MKV), 2022 WL 220085, at *3 (S.D.N.Y. Jan. 25, 2022), typically meaning the "last agreed-upon educational program before the parent requested a due process hearing to challenge the child's IEP," *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 532 (2d Cir. 2020).

The difficulty here is that any theory of pendency or right to continue to receive funded IESP services derives from N.Y. Educ. Law § 3602-c, and not directly from U.S.C. § 1415(j). The DOE's legal obligation to fund A.H.'s IESP services ended in the fall of 2023, when A.H. transferred to a school outside of New York City—two years before any request was made for the development of an IEP. Accordingly, the pendency that Plaintiff seeks is for services created by state law, which DOE has no legal obligation to fund, and for which it has had no legal obligation for nearly three years.

The IDEA provides a separate framework for children who are parentally-placed in private schools, with different entitlements and rights, commonly known as "equitable participation." *See Gerschel*, 2025 WL 2778165, at *2. Equitable participation, under federal law, requires that children have a services plan that describes the services that a school district will provide to the child, *id.*, but the specifics of those services are left to state law, and neither party disputes that New York state law assigns the responsibility for that plan and the provision of those services *to the school district where the child's school is located*. For reasons not apparent from the record before the Court, Plaintiff decided to move her child to a private school outside of the New York City school district, and yet apparently did nothing to seek an IESP plan and services under it from the district where the new school is located, as required under New

York law. The Court cannot conclude that the parent's decision to now seek an IEP and a possible public school placement, or DOE's mistaken provision of services it has not been legally obligated to provide for nearly three years, can create a new financial obligation for the DOE, for an unknown amount of time, that is contrary to the IDEA's scheme for children parentally placed in private school. Accordingly, the request for a preliminary declaration that the IESP services in the 2019 FOFD, paid for by the DOE, is the pendency placement under Section 1415(j) is DENIED.

## V. THE COURT WILL GRANT PRELIMINARY EQUITABLE RELIEF UNDER 20 U.S.C. § 1415(i)

Although the Court is not prepared to rule that N.H. is entitled to pendency under Section 1415(j), the IDEA grants courts significant "equitable authority" in resolving cases under Section 1415(i)(2)(C)(iii) to ensure IDEA rights are protected. *See Mackey ex rel. Thomas M. v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 386 F.3d 158, 165 (2d Cir. 2004) (citing *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 12 (1993)); *see also Burlington*, 471 U.S. at 374 ("[E]quitable considerations are relevant in fashioning relief").

The "IDEA was intended to ensure that children with disabilities receive an education that is both appropriate and free." *Carter*, 510 U.S. at 13. The IDEA specifies three other purposes, as well: to assist states in implementing a "system of early intervention services for infants and toddlers with disabilities;" "to ensure that educators and parents have the necessary tools to improve educational results for children with disabilities;" and "to assess, and ensure the effectiveness of, efforts to educate children with disabilities." 20 U.S.C. § 1400(d)(2)–(4). Any relief fashioned must be considered in light of these principles.

Although neither the Court nor the parties have identified any cases where a parent sought to have the district of residence continue funding IESP services, rather than the district of

school location, the Second Circuit has contemplated a similar situation in which "the school providing the child's pendency services is no longer available and the school district either refuses or fails to provide pendency services to the child"—considering, without deciding, that that situation may present an "extraordinary" circumstance warranting relief under Section 1415(i)'s equitable authority. *See Ventura de Paulino*, 959 F.3d at 534 n.65 (citing *Wagner v. Bd. of Educ. of Montgomery Cnty.*, 335 F.3d 297, 302–03 (4th Cir. 2003) (where the pendency placement was no longer available and the school district failed to propose an alternative placement)); *see also L.G. v. New York City Dep't of Educ.*, No. 23-CV-9268 (JPO), 2023 WL 8044937, at *4 (S.D.N.Y. Nov. 3, 2023) (considering whether the case before the court "presents such extraordinary circumstances" as those contemplated in *Ventura*).

The present situation is an "extraordinary" case akin to that contemplated by the *Ventura* court as potentially appropriate for injunctive relief. As explained, the DOE's legal obligation to fund N.H.'s equitable services ceased in 2023, but IHOs have inexplicably affirmed the 2019 FOFD as the source of pendency since then, and for some unknown reason, no re-evaluation of N.H.'s education plan has occurred, despite the fact that he is now 15 and the current plan was developed when he was approximately 7 years old. Further, the DOE continued to fund N.H.'s equitable services, seemingly inadvertently, through December 31, 2025, even though its legal obligation to do so ended in approximately September 2023. Plaintiff has made no apparent effort, either after her child changed schools to one outside of New York City in 2023, or since receiving the discharge notice in September 2025, to request an IESP plan or services from the school district where her child's current school is located. At the same time, Plaintiff has, beginning in August 2025, made multiple requests that the CSE convene to develop an IEP for

N.H. and offer him a public school placement. As of July 31, 2026, none of the steps in that process had occurred, despite an IHO ordering DOE, on June 15, 2026, to do so within 45 days.

The 2026-2027 school year will begin in just over a month. The Court is faced with a situation antithetical to the principles undergirding the IDEA: a vulnerable child is left in educational limbo, without prescribed services for several months and an uncertain prospect of what placement or services will be available in the upcoming school year. The situation is largely the product of the DOE's actions from September 2023 through September 2025 regarding N.H.'s IESP services, and its inaction since August 2025 regarding the requested IEP and public school placement, and, to a lesser degree, the failure of the parent to pursue an IESP plan or services from the district legally obligated to provide and fund those services so long as her child attends private school in that district.

Turning to an analysis of the traditional factors for obtaining a preliminary injunction: As to the merits, Plaintiff's Complaint and prayer for relief are multifaceted. As explained above, although on the present record N.H. is not entitled to pendency under the IDEA for IESP services when he attends school in another district, other portions of Plaintiff's Complaint demonstrate a high likelihood of success on the merits, including the parent's uncontested right to request and receive an IEP and a public school placement offer for her child as long as they are residents of New York City (on which DOE has failed to act for nearly a year).

As to irreparable harm, the "single most important prerequisite for the issuance" of injunctive relief, *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009), it must be "actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm," *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007). Plaintiff has presented sufficient evidence to support the conclusion that N.H. will suffer

irreparable harm absent injunctive relief because he is presently not receiving the equitable services he has received for over seven years, and the DOE has utterly failed to meet its obligations to this family under the IDEA. Although, as noted above, the parent bears some of the responsibility for the present circumstance, it is only partial responsibility, and a child should not be deprived of educational progress because his parent has stumbled in navigating the complex world of special education services. It is well established that eligible students denied access to a FAPE are at high risk of regression and suffer negative health outcomes that cannot be remedied by monetary relief, constituting irreparable harm. *See e.g.*, *J.Z. v. New York City Dep't of Educ.*, No. 23-CV-09779 (DEH), 2024 WL 1833613, at *7 (S.D.N.Y. Apr. 26, 2024); *M.W. v. New York City Dep't of Educ.*, No. 15-CV-05029, 2015 WL 5025368, at *5 (S.D.N.Y. Aug. 25, 2015); *A.T. v. N.Y. State Educ. Dep't*, No. 98-CV-04166 (JG), 1998 WL 765371, at *10 (E.D.N.Y. Aug. 4, 1998); *Ross v. Disare*, 500 F. Supp. 928, 934 (S.D.N.Y. 1977); *J.G. v. Mills*, No. 04-CV-05416 (ARR), 2006 WL 8066678, at * (E.D.N.Y. July 6, 2006). *Cf. Mendez v. Banks*, 65 F.4th 56, 64 (2d Cir. 2023) (finding no irreparable harm in suit seeking payment for pendency placements where placements allowed students to remain in school during administrative proceedings and were not at risk).

Finally, the balance of the equities favors Plaintiff, and a preliminary injunction would serve the public interest. The DOE has lawfully ceased funding of the child's equitable services, but has also failed to provide any alternative educational program, as requested by the parent and as required under the IDEA for a child that resides within its district. Its mistakes and course of conduct regarding the funding of IESP services between 2023 and 2025 reasonably led Plaintiff to believe that those services would continue to be funded by DOE. On the other hand, the DOE's lack of financial responsibility for IESP funding for a student who attends school in

another district is clear under New York state law, and the parent-Plaintiff has taken no steps in three school years to secure an IESP or funding from the district where her child currently attends school. Nonetheless, in the absence of a preliminary injunction, the child—largely because of the combination of the DOE's actions and inaction—would be left with no viable plan for special education services at present and for the upcoming 2026-2027 school year. Weighing all of these circumstances, the balance of the equities favors Plaintiff and a preliminary injunction is in the public interest.

Accordingly, the DOE is hereby ORDERED to authorize and fund the services established by the 2019 FOFD for a prospective period of **90 days**, beginning no later than **5 business days** from the date of this Order, by either (a) issuing effective direct authorizations to N.H.'s existing providers at the prevailing rates required by the 2019 FOFD and funding their immediate resumption of services on a prospective basis; or (b) identifying qualified alternative providers who have accepted N.H.'s case and who will begin delivering each component of the 2019 FOFD by that date. The parties are further ORDERED to file a status update on implementation of this Order within **10 days** of the date of this Order.

## CONCLUSION

For all of the foregoing reasons, Plaintiff's motion for a preliminary injunction is GRANTED in part, as set forth above. Plaintiff may seek an extension of this preliminary injunction Order if necessary. If an extension is sought, in evaluating the equities the Court will carefully consider what actions have or have not been taken by the DOE and by Plaintiff to either identify and secure an appropriate public school placement for N.H., or pursue and secure an IESP and necessary funding from the district where N.H. attends school if he remains in private school.

Dated: August 4, 2026
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge