UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
A.H., individually and on behalf of N.H., a student with a disability,

Plaintiff,

Case No. 26-cv-05926 (MMG)

-against-

THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, et al.,

Defendants.
---------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S AUGUST 4, 2026 OPINION & ORDER (ECF NO. 21)**

Dated: August 18, 2026
New York, NY 10023

THE LAW OFFICE OF LAURA D. BARBIERI, PLLC
115 W 73rd St., Ste. 1B
New York, NY 10023
Laura@LDBarbLaw.com
www.LDBarbLaw.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................ 1
APPLICABLE STANDARD........................................ 2
POINT I ........................................ 2
THE FACTUAL PREMISES OF POINT IV REST ON UNSWORN ASSERTIONS OF COUNSEL AND OVERLOOK RECORD EVIDENCE TO THE CONTRARY ........................ 2
POINT II ........................................ 4
PENDENCY TURNS ON THE PROGRAM THE CHILD IS RECEIVING AT THE TIME OF THE DISPUTE, NOT ON THE SCHOOL HE ATTENDS OR THE DISTRICT'S PROSPECTIVE OBLIGATION TO FUND THOSE SERVICES ........................ 4
A. Section 1415(j) preserves the status quo without regard to the merits. ........................ 4
B. "Placement" means the program the child is receiving, not the school he attends............ 5
C. The Order's two premises do not combine. ........................ 7
D. The unappealed 2019 FOFD is an agreement between the State and the parent. ............... 8
E. The state-law origin of the services does not remove them from § 1415(j). ..................... 9
F. The distinction is not academic........................................ 10
POINT III........................................ 11
ALTERNATIVE RELIEF ........................................ 11
CONCLUSION........................................ 11
CERTIFICATION........................................12

## TABLE OF AUTHORITIES

Cases

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) ........................ 2

*Arlington Cent. Sch. Dist. v. L.P.*, 421 F. Supp. 2d 692, 697 (S.D.N.Y. 2006) ............................. 9

*Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 480, 484 (2d Cir. 2002) ........................................................... 4, 5, 6, 7, 9

*Concerned Parents & Citizens for the Continuing Educ. at Malcolm X (P.S. 79) v. N.Y.C. Bd. of Educ.*, 629 F.2d 751, 753, 756 (2d Cir. 1980) ................................................................. 5

*Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015) ........................................ 6, 8, 10

*Giannullo v. City of New York*, 322 F.3d 139, 142 (2d Cir. 2003) ................................................ 2

*Honig v. Doe*, 484 U.S. 305, 323 (1988) .......................................................................... 11

*Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009); ............................................................. 2

*Mackey ex rel. Thomas M. v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 386 F.3d 158, 163 (2d Cir. 2004) .................................................................................................. 5, 10

*Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010) ........................................................ 3

*Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 197, 200–01 (2d Cir. 2002), *aff'g* 86 F. Supp. 2d 354, 366 (S.D.N.Y. 2000); ............................................................... 8

*Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ................................................................................................ 2

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ............................................... 2, 3

*Student X v. N.Y.C. Dep't of Educ.*, No. 07-CV-2316, 2008 WL 4890440, at *23 (E.D.N.Y. Oct. 30, 2008) ......................................................................................................... 9

*T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 170–71 (2d Cir. 2014) ................. 5

*Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 532 (2d Cir. 2020); ................. 4, 7, 8

*Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982);................................................................. 4

Statutes

20 U.S.C. § 1415(j) ................................................................................................. *passim*

20 U.S.C. § 1415(i)(2)(C) ........................................................................................... 2

N.Y. Educ. Law § 3602-c ........................................................................................... 7

N.Y. Educ. Law § 4404 .............................................................................................. 9

Regulations

8 N.Y.C.R.R. § 200.5,.................................................................................................. 9

8 N.Y.C.R.R. § 200.5(j)(5)(v)....................................................................................... 8

## PRELIMINARY STATEMENT

Plaintiff A.H., individually and on behalf of her son N.H., respectfully moves under Local Civil Rule 6.3 and Rules 54(b) and 59(e) of the Federal Rules of Civil Procedure for reconsideration of Point IV of the Court's August 4, 2026 Opinion & Order (ECF No. 21) (the "Order"), which denied Plaintiff's request for a declaration that the services established by the unappealed November 9, 2019 Findings of Fact and Decision (the "2019 FOFD") constitute N.H.'s then-current educational placement under 20 U.S.C. § 1415(j). Plaintiff does not seek reconsideration of Point III or Point V of the Order.

Reconsideration is warranted on two grounds, one factual and one legal. *The factual ground is narrow.* The denial of pendency rests on a single premise supplied not by the evidentiary record but by the unsworn assertions of counsel, that the DOE funded the 2019 Program "[i]n error" and "seemingly inadvertently." Order at 8, 11. The DOE submitted no declaration and no documentary evidence for that proposition, and the account was given during oral argument by counsel whom the Court observed had not been involved in the underlying proceedings.[1] *The legal ground is independent.* The Order determines pendency by asking where N.H. goes to school and whether the DOE remained obligated to fund his services going forward. Section 1415(j) asks neither question. It asks what educational program was actually operative when the dispute arose. The Order's premise that N.H.'s change of school ended his placement conflates location with placement: the placement is the itinerant program embodied in the 2019 FOFD, not the building in which the child sits, and every component continued unchanged after the school change.

[1] The DOE made the same assertion in its memorandum of law, again without a declaration from anyone with knowledge of the asserted "fact." That the attorney appearing before the Court did not handle the earlier administrative proceedings does not answer the point: the DOE is the party, and it cannot claim error or inadvertence given its repeated agreements, over multiple years, to this particular pendency program, wherever the services were delivered.

Whether the DOE ultimately owes those services prospectively is the merits question now before the SRO; stay-put freezes the program while that question is being answered. The DOE never appealed the 2019 FOFD, which is the decision that fixes the placement, and it has never proposed any alternative pendency program.

## APPLICABLE STANDARD

Reconsideration is warranted where the court has overlooked controlling decisions or factual matters that were placed before it. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); Local Civ. R. 6.3. It is equally available to correct a clear error of law or fact and to prevent manifest injustice. *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). Because the Order is interlocutory, the Court also retains inherent authority to revise it at any time before final judgment. Fed. R. Civ. P. 54(b); *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003). This motion is timely, having been filed within fourteen days of entry of the Order.

## POINT I
## THE FINDING THAT THE DOE FUNDED THE 2019 PROGRAM IN ERROR RESTS ON UNSWORN ASSERTIONS OF COUNSEL AND OVERLOOKS RECORD EVIDENCE TO THE CONTRARY

In an action under the IDEA, the Court decides the issues on the preponderance of the evidence, receiving the administrative record and any additional evidence a party requests that it hear. 20 U.S.C. § 1415(i)(2)(C). Neither a memorandum of law nor counsel's statements at argument falls within that category. "An attorney's unsworn statements in a brief are not evidence." *Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009); *accord Giannullo v. City of New York*, 322 F.3d 139, 142 (2d Cir. 2003) (a memorandum of law cannot supply the factual support a party has failed to place in the record). A court may relax the evidentiary rules on a preliminary

injunction motion and consider hearsay, *see Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010), but that latitude presupposes some evidence. Argument is not a relaxed form of proof. Here the DOE opposed the motion with a memorandum of law alone, ECF No. 16, offering no declaration from any official with knowledge and producing none of the "DOE records" on which it asked the Court to rely.

The finding at issue is that the DOE funded the 2019 Program "[i]n error" and "seemingly inadvertently." Order at 8, 11. This premise renders six years of agency conduct legally inert, and it rests entirely on counsel's account of her client's state of mind, hedged as it was given and offered by counsel whom the Court observed had not been involved in these proceedings. Tr. of July 30, 2026 Argument at 14–15, ECF No. 23 ("Hr'g Tr."). The Court questioned the account, noting that the administrative record showed proceedings in which DOE attorneys appeared and litigated the child's pendency, and that it did not understand how, across two school years, no one at the DOE registered that the child attended school outside New York City. *Id.* at 13–14. Those doubts were sound, and the DOE's account is belied by the documents in the record.

The record also contains evidence the Order does not address. The DOE issued authorizations for the same services, from the same providers, in January 2026 and again in March 2026, after the discharge letter and after the announced cessation of funding. Barbieri Decl. Exs. 9–11; *see* Hr'g Tr. at 16–17. Authorizations issued in 2026 are affirmative agency acts, not the residue of a billing error. A finding of inadvertence cannot rest on counsel's unsworn account while that evidence goes unmentioned. *Shrader*, 70 F.3d at 257.

If the Court is inclined to carry the inadvertence finding forward, that premise should be established rather than asserted. Local Civil Rule 6.3 permits the Court to direct the filing of affidavits, and Plaintiff requests that it do so: that the DOE submit a declaration from a person

with knowledge attesting that the authorizations issued from 2019 through March 2026 were made in error, that it did not agree to fund the 2019 Program, and that it was unaware the child attended school outside New York City when it repeatedly agreed to this pendency program. Plaintiff further requests that the DOE produce the authorizations it issued for the 2023-2024 through 2025-2026 school years, the period the Court found inexplicable. If no declarant with knowledge can be supplied, the Court should decline to credit the characterization.

The burden here was the DOE's. Inadvertence was its own characterization, advanced to neutralize its conduct, and the records that would establish it are in its exclusive possession. None was produced. A party in exclusive control of the proof of its own defense cannot substitute counsel's characterization of that proof for the proof itself.

## POINT II
## PENDENCY TURNS ON THE PROGRAM THE CHILD IS RECEIVING, NOT ON THE SCHOOL HE ATTENDS OR ON THE DISTRICT'S PROSPECTIVE OBLIGATION TO FUND THOSE SERVICES

### A. Section 1415(j) preserves the status quo without regard to the merits.

Section 1415(j) provides that the child "shall remain in the then-current educational placement" during the pendency of proceedings. It operates as an automatic statutory injunction; the moving party need not establish likelihood of success, irreparable harm, or a favorable balance of equities. *Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982); *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 480, 484 (2d Cir. 2002). The "then-current educational placement" is the program actually functioning when the dispute arose, namely, the operative placement, or the last agreed-upon program. *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 532 (2d Cir. 2020); *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 170–71 (2d Cir. 2014); *Mackey ex rel. Thomas M. v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 386 F.3d 158, 163 (2d Cir. 2004).

The Order identifies no competing placement that was operative. It denies pendency because, in the Court's view, the DOE had no continuing state-law obligation to fund the 2019 Program. Order at 9–10. That inverts the inquiry. Whether the DOE owes those services going forward is the merits question now before the SRO, and stay-put exists so that the program is maintained while it is answered. Schutz, 290 F.3d at 484.

**B. "Placement" means the program the child is receiving, not the school he attends.**

The Order's analysis turns on the fact that N.H. changed schools in 2023. But "educational placement" under the IDEA "refers only to the general educational program in which the handicapped child is placed," not to the site at which that program is delivered. *Concerned Parents & Citizens for the Continuing Educ. at Malcolm X (P.S. 79) v. N.Y.C. Bd. of Educ.*, 629 F.2d 751, 753, 756 (2d Cir. 1980). The Department of Education has confirmed that a child's current placement "is generally not considered to be location-specific." Child's Status During Proceedings, 71 Fed. Reg. 46,540, 46,709 (Aug. 14, 2006). And the Second Circuit has held that § 1415(j) does not guarantee a child the same school or even the same providers; it guarantees "the same general type of educational program." *T.M.*, 752 F.3d at 171.

N.H.'s placement is the 2019 Program: forty hours per week of 1:1 SEIT instruction, seven hours per week of enhanced OT, parent counseling and training, BCBA supervision, and individual OT, PT, and speech-language therapy. Every component is itinerant, delivered by private providers wherever the child is; nothing in the 2019 FOFD ties it to a building, a school, or a district. When N.H. changed schools in 2023, not one element of that program changed; the same services were provided, at the same frequencies, from the same providers, at the same rates. His location changed; his placement did not.

The DOE's own conduct confirms the point. It authorized and paid for the identical program for more than two years after the school change, and IHOs continued to designate the 2019 FOFD as the pendency placement, most recently on December 23, 2025. What ended on December 31, 2025 was not the placement but the DOE's payment for it. A district's unilateral cessation of funding is the paradigmatic stay-put violation; it is not evidence that the placement dissolved. *Schutz*, 290 F.3d at 484; *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015).

*E. Lyme* is directly on point, and the Order does not address it. There the parent and the district could not agree on an IEP; the parent enrolled the child in a private school *outside the district* and privately obtained some of the related services the district had previously funded. 790 F.3d at 445. The child's attendance at an out-of-district private school did not extinguish stay-put. The Second Circuit held the board answerable for the full value of the related services specified in the last agreed-upon IEP, not the lesser sum the parent had managed to pay, and confirmed that the obligation attaches once an administrative due process proceeding is initiated. *Id.* at 452, 456–57. The parent there sought stay-put for the related services and expressly disclaimed any stay-put right to private school tuition, precisely Plaintiff's posture, which seeks the itinerant services in the 2019 Program and no tuition at all.

Plaintiff does not suggest that *E. Lyme* resolves the state-law question the Order addresses; the services there were specified in an IEP. It establishes something narrower and sufficient: out-of-district enrollment does not, standing alone, end the agency's obligation to maintain the child's placement. The Order treats N.H.'s 2023 school change as doing exactly that.

*Ventura de Paulino does not suggest otherwise. There, parents sought funding for the pendency program at a new school of their own choosing, and the Second Circuit held that a parent may not unilaterally transfer the program to a new provider at public expense. 959 F.3d at*

*532–34. Plaintiff seeks nothing of the kind: no new school, no new providers, no new services, and no increase in cost—only that* the program the DOE itself funded from 2019 through 2025 continue while these proceedings run.

**C. The Order's two premises do not combine.**

Point IV rests on two propositions: that N.H. attends school outside New York City, and that his services are IESP services. Neither defeats stay-put alone. *E. Lyme* disposes of the first. As to the second, the DOE did not contend that IESP status forecloses pendency; its counsel told the Court that because IESPs borrow from the IDEA's administrative structure, they can borrow from pendency as well, and that pendency attaches through those procedures. Hr'g Tr. at 23. The DOE's position was that another district is the prospective payor, not that no placement exists to be maintained. Two premises that each fail should not succeed by addition; the Order does not identify what their combination supplies that neither has.

The propositions answer different questions. Section 3602-c allocates prospective financial responsibility. Section 1415(j) freezes the status quo during litigation, and it runs against the agency bound by the operative order. The district-of-location point is a merits defense to the pending due process complaint, and it is before the SRO now. Treating it as self-executing at the pendency stage would permit any district to end stay-put by asserting a merits defense it has not yet won. *Schutz*, 290 F.3d at 484.

The Order also measures from the wrong date. It reasons from 2023, when in its view the DOE's obligation lapsed. But § 1415(j) does not ask when an obligation lapsed; it asks what program was operative when the proceeding was initiated. *E. Lyme*, 790 F.3d at 452. The operative due process complaint was filed on December 31, 2025. On that date the DOE was funding the 2019 Program and had been for six years. Whatever the 2023 school change did to prospective

responsibility under state law, the status quo on the trigger date was the 2019 Program. Stay-put freezes facts, not entitlements.

Finally, the holding leaves a gap: if the DOE's obligation ended in 2023, the Order does not say whose stay-put obligation this is. No order runs against the district where N.H.'s school is located; it has been a party to nothing. The result is a child holding a placement directed by a hearing officer with no agency obliged to maintain it—the circumstance the Second Circuit identified as potentially extraordinary. *Ventura de Paulino*, 959 F.3d at 534 n.65. The Court accepted that premise in granting relief under Point V. Order at 10–11. Section 1415(j) answers the question directly.

**D. The unappealed 2019 FOFD is an agreement between the State and the parent.**

Where a hearing officer agrees with the parent that a change of placement is appropriate, "that placement must be treated as an agreement between the State and the parents" for stay-put purposes. 34 C.F.R. § 300.518(d). An IHO decision that is not appealed is final and binding on the parties. 8 N.Y.C.R.R. § 200.5(j)(5)(v). Applying these principles, the Second Circuit has held that the district remains financially responsible for the resulting placement until it is changed in accordance with the terms of the IDEA. *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 197, 200–01 (2d Cir. 2002), *aff'g* 86 F. Supp. 2d 354, 366 (S.D.N.Y. 2000); *see also Arlington Cent. Sch. Dist. v. L.P.*, 421 F. Supp. 2d 692, 697 (S.D.N.Y. 2006); *Student X v. N.Y.C. Dep't of Educ.*, No. 07-CV-2316, 2008 WL 4890440, at *23 (E.D.N.Y. Oct. 30, 2008) (a prior unappealed IHO decision may establish the student's current educational placement for purposes of pendency).

The DOE did not appeal the 2019 FOFD, and that decision—not the interim orders that have since confirmed it—is what fixes the placement. IHOs have designated the 2019 Program as

N.H.'s pendency placement on successive occasions, most recently on December 23, 2025. ECF Nos. 7-4, 7-6. That an interim pendency determination itself may be the subject of administrative review does not suspend the obligation it confirms; a district must maintain the placement while it litigates. *Schutz*, 290 F.3d at 484. Rather than seek a change through the means the IDEA provides, the DOE purported to terminate the placement unilaterally by a September 8, 2025 Letter of Discharge, and then objected to pendency "without proposing any alternative pendency program." Order at 3. Unilateral discharge is not a mechanism the IDEA recognizes for altering a stay-put placement.

**E. The state-law origin of the services does not remove them from § 1415(j).**

The Court has held that it has subject matter jurisdiction because the question presented is what pendency rights attach while a parent's IDEA request for an IEP and a public school placement is litigated. Order at 6–7. Once that is so, § 1415(j) supplies its own definition of the protected placement, the operative one, and does not condition protection on which body of law generated the entitlement. The 2019 FOFD issued from an impartial hearing conducted under the very due process procedures that New York uses for these disputes, *see* N.Y. Educ. Law § 4404; 8 N.Y.C.R.R. § 200.5, and § 1415(j) applies "during the pendency of any proceedings conducted pursuant to this section."

The categorization on which that conclusion depends also warrants a second look. Footnote 2 of the Order distinguishes children voluntarily placed in private school from children placed privately as an alternative to an offered placement the parent has determined does not provide a FAPE, and assigns N.H. to the first group. Order at 5 n.2. Neither description accounts for his history. A DOE committee developed an IEP for N.H. at his Turning Five transition, and the DOE never provided the public school placement that IEP contemplated; Plaintiff so advised the Court

in her reply and again at argument. Hr'g Tr. at 6. Where a district writes an IEP and then offers no placement, the enrollment that follows is not an election between alternatives. There was none to make, and nothing to reject. A child in that position should not be treated, for pendency purposes, as having opted out of the IDEA framework.

**F. The distinction is not academic.**

Pendency runs from the filing of the due process complaint until all proceedings are complete and obliges the district to fund the services in the interim. *E. Lyme*, 790 F.3d at 452, 456; *Mackey*, 386 F.3d at 163. The relief granted in Point V is discretionary, expires roughly ninety days from entry—in the midst of the 2026-2027 school year and while the SRO appeal is pending—and places on Plaintiff the burden of returning to court. Order at 14.

*E. Lyme* also disposes of the "rejection by self-help" rationale on which the May 28, 2026 interim order denied pendency, and which underlies the DOE's position throughout. There, the district stopped delivering the services in the child's stay-put program and the parent obtained some of them privately. The Second Circuit held that the failure to fund did not shift the loss to the family, ordered reimbursement, and recognized that a parent of limited means may be unable to front the cost at all. 790 F.3d at 452–56. The remedy for a district's default is funding, not a later suit for damages.

The self-help theory also inverts the statute. Section 1415(j) imposes the duty to maintain the placement on the educational agency; a parent has no power to "reject" a program the agency has already stopped providing. On that logic, the only way to preserve stay-put would be to leave the child without services while the litigation runs—the outcome the provision exists to prevent. *See Honig v. Doe*, 484 U.S. 305, 323 (1988). The facts here make the point concrete: the DOE stopped paying on December 31, 2025, proposed no alternative program, and services had ceased

entirely by May 2026. Order at 3. Plaintiff rejected nothing, because by then there was nothing left to accept.

## POINT III

## ALTERNATIVE RELIEF

If the Court adheres to Point IV, Plaintiff respectfully requests that it modify the relief granted in Point V to (i) extend through the conclusion of the administrative and judicial proceedings, or through the end of the 2026-2027 school year, and (ii) confirm that the funding ordered encompasses services rendered on and after January 1, 2026.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court reconsider Point IV, declare that the services established by the 2019 FOFD constitute N.H.'s then-current educational placement under 20 U.S.C. § 1415(j), and direct the DOE to fund those services until these proceedings are concluded, together with such other relief as the Court deems just.

Dated: New York, New York
August 18, 2026

Respectfully submitted,

*Laura Dawn Barbieri*

______________________________

Laura D. Barbieri, Esq.
THE LAW OFFICE OF LAURA D. BARBIERI, PLLC
115 West 73rd Street, Suite 1B
New York, New York 10023
(914) 819-3387
Laura@LDBarbLaw.com

Attorneys for Plaintiff

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 6.3 and Local Civil Rule 7.1(c), the undersigned certifies that the foregoing Memorandum of Law complies with the applicable word-count limitation. Excluding the caption, table of contents, table of authorities, signature blocks, and this certificate, the memorandum contains 3,477 words, as counted by the word-processing program used to prepare it, and therefore does not exceed the 3,500-word limit for briefs in support of a motion for reconsideration. The memorandum also complies with the formatting requirements of Local Civil Rule 7.1(b): 12-point Times New Roman type, one-inch margins on all sides, and double-spaced text.

Laura Dawn Barbieri

Laura D. Barbieri, Esq.