UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

A.H., *et al.*

Plaintiffs,

v. 26 Civ. 5926 (MMG)

THE BOARD OF EDUCATION OF THE
CITY SCHOOL DISTRICT OF THE
CITY OF NEW YORK, *et al.*

Hearing

Defendants.

------------------------------x

New York, N.Y.
July 30, 2026
11:00 a.m.

Before:

HON. MARGARET M. GARNETT,

District Judge

APPEARANCES

LAURA DAWN BARBIERI
Attorney for Plaintiffs

NEW YORK CITY LAW DEPARTMENT
Attorneys for Defendants
BY: JORDAN DOLL

THE DEPUTY CLERK: This is Case No. 26 Cv. 5926, *A.H., et al. v. the Board of Education of the City School District of the City of New York, et al.*

THE COURT: Could you please enter your appearance for the record, starting the plaintiff.

MS. BARBIERI: Thank you, your Honor.

Laura Barbieri for the Law Office of Laura D. Barbieri for the plaintiff, A.H., on behalf of herself individually and N.H., her son.

THE COURT: Good morning.

MS. DOLL: Good morning, your Honor.

Jordan Doll for the New York City Law Department on behalf of the defendants.

THE COURT: Good morning, Ms. Doll.

Everyone can be seated. Thank you.

We're here, really, to have oral argument, because I have so many questions on this unusual case related to the plaintiff's motion for preliminary injunction to direct the DOE to continue providing the supplemental services that were authorized under a 2019 FOFD.

Let me just start with the plaintiff. First, can you tell me where is the school that the child is currently attending?

MS. BARBIERI: Lawrenceville, Long Island.

THE COURT: Is that in Nassau County?

MS. BARBIERI: It is in Nassau County; yes, your Honor.

THE COURT: And do you know, Ms. Barbieri, have the parents filed any due process complaints or initiated any kind of process for the child to receive IESP services in Nassau County? I don't know, for Nassau County, if they have separate LEAs for each town or area or if it's on a county basis if the school district where the current school is located.

Has any process been filed by the parents in that district?

MS. BARBIERI: No, your Honor.

THE COURT: Okay.

Would you agree with me that New York State law is IESP funding is to be -- and services, so the services or payment for private services is the responsibility of the district where the school is located?

MS. BARBIERI: I agree.

THE COURT: Okay.

And at least at present, N.H. is an IESP child.

MS. BARBIERI: Yes and no.

The question would be whether or not the parent has -- what the parent has asked for, not whether or not he is currently receiving services under an IESP. In fact, the parent -- I'm sorry, your Honor.

THE COURT: Well, I'm going to get to that question.

I just mean in terms of, because one part of what you're seeking is pendency coverage, and that pendency would be for services that are IESP services.

MS. BARBIERI: No, your Honor.

The order for the 2019 program, although it was ordered under an IESP, subsequently was agreed to as pendency a number of times by the district and ordered as pendency by unappealed IHOs as well as SRO.

THE COURT: Wait. I'm sorry to interrupt you, Ms. Barbieri, but you and Ms. Doll are experts in this area of the law and I'm not at your level of expertise, so I just want to make sure that I'm understanding correctly.

Totally understand that that 2019 program has been repeatedly adopted as the pendency placement, but that program is for IESP services.

MS. BARBIERI: The question is whether or not that defines jurisdiction for the purposes of the Court, and the Court's jurisdiction is not based on the 2019 program; the Court's jurisdiction is based on what the parent requested as of 2025 and 2026. Even if the parent had an IESP for the past ten years, that does not mean that she's not entitled to ask for an IEP, ask for FAPE, and ask for a public school placement. In fact, this parent did ask for that, repeatedly for the school year '25-'26, and that is the school year before the Court.

THE COURT: Right. And I mean I know we're not in a law school class here and so what's interesting is maybe of a side note, but it's interesting in a way that's directly relevant to this case. It's an unusual circumstance where the existing program for which the parent is seeking pendency rights is an IESP program and IESP services for a child voluntarily enrolled in private school.

But the real, I think, thorny legal question before us is what is the intersection between what the parent filed in 2025 as a due process complaint and what they were requesting, the intersection between that and the fact that the pendency placement that's requested is an IESP services and an IESP placement. And I think that's a very difficult situation. It's not a situation that I have seen replicated in any cases.

So, I think in the briefing and in the issue before me, there's -- you know, both sides are trying to say: well, it's more like, or; let me break it down in pieces, and; it's more like this or it's more like this case. Because I'm not aware of any case that matches this situation where a parent has requested an IEP and to be offered a public school placement and yet during that process, they are seeking continued funding for an IESP program at an out-of-district school and so untangling that knot, I think, is the difficult issue presented by this case.

And so I mean, I guess just -- I did see in the

exhibits that the parent plaintiff here testified at the due process proceeding that she would consider a public school placement for her child. Am.

I correct about that, Ms. Barbieri?

MS. BARBIERI: Yes, affirmatively.

THE COURT: Okay. Now, the child's never attended public school; is that right?

MS. BARBIERI: The child has not attended public school but has received IEPs in the past, as I indicated in my reply. However, the child has never received a public school placement and has never been offered a public school placement.

So throughout all that time, the child has never gone to public school. So, again, I think that the thorny issue, which the Court is aware of, I don't believe that you need to decide in every ISP program that pendency would lie.

I think that you can order the relief based on the individual case here, which I think is an exception to *Ventura*, an exception to your own decision in *Gerschel*, which identifies the case that these facts turn on.

And I think that the jurisdiction question is resolved by what the parent sought, I think the jurisdiction question is then resolved by a request for an IEP a request for FAPE, which are all federal statutory rights of the child.

And because the jurisdiction question is then resolved in favor of federal court, the next question would be: What is

the agreed-upon placement? And I think the agreed-upon placement has repeatedly been agreed upon by the District as being this program.

So I recognize the Court's dilemma in this unusual factual circumstance, and I don't believe you need to make a broad finding that every IESP is, therefore, the basis for pendency.

THE COURT: Right. I mean, although what the District has agreed to, seems to me, in the past or been ordered to do is that this suite of IESP services is the appropriate basket of IESP services, right? Because in the past, like -- and maybe I missed something because the factual record is very complicated here, but prior to the summer of 2025, had the parents requested a public school placement?

MS. BARBIERI: I don't think that that is the case.

THE COURT: Okay. I didn't see --

MS. BARBIERI: I did not see -- I am not aware of any request for an IEP prior to the 2025-2026 school year.

I do know, and although I did not put this in my declaration, that the parent has expressed to me, independently -- and although I'm not under oath, but she has expressed to me that she wants him closer to home; that she does not want him to be on Long Island and that she does want a public school placement to be offered so that she can consider it and; that he's now older and she feels that he's ready to go to public

school in the event that it's an appropriate place for him.

Previously, public schools, she felt, were not capable; there was no placement that she thought was appropriate. She is familiar. She has another child who also has services and she is familiar with public school placements through him.

THE COURT: The other child's in a public school.

MS. BARBIERI: Yes. I believe so, yes.

But at the same time, I do think there are two issues before the Court, and I do think that the agreed-upon placement does become the actual placement for pendency purposes, not for the merits. And I think that that is where the Court can make the distinction.

We have asked the SRO for a merits determination, and the Court is not being asked to confirm this as the future program; it is only for pendency while the merits are being determined. And so this is a temporary request as a preliminary injunction would hold.

It is a mandatory injunction. I recognize that. And I doo -- we meet the heightened burden for that mandatory injunction. But it is temporary.

And the merits, by the way, the IHO required the district, within 45 days, to convene the CSE and to determine an IEP, and that has not been done. Today is the 45-day limit.

THE COURT: Right. I'm doing that math myself this

morning and realize that today is really the time period.

MS. BARBIERI: It is the day, and we have not received any notification for a CSE meeting. We've not been offered a placement. We've not been told that they're even considering an CSE meeting or noticed it, so what is left is a child with no services.

THE COURT: Okay. All right. That's helpful, Ms. Barbieri. Thank you.

Let me hear from you, Ms. Doll, because I think you've obviously heard me say, like, I think the difficult issue here, right, is, I think. the one that you highlighted in your opposition, that we have a child who always has been an IESP child voluntarily enrolled in private school but now, as of last summer, you have a parent who says: Well, I would like to know what my public school options are. I'm requesting an IEP evaluation for my child and I would like to know what the placement is that's an option for my child in public school because we still reside in New York City.

So I think the interplay that I think the difficulty of this case, as I said to Ms. Barbieri, is, I think the City is correct that, as a general matter, the pendency rights of the DEA do not attach automatically as a matter of federal law, to an IESP placement, that IESP rights are a creature of state law, but how am I to think about that problem when we have a situation here where a parent has said -- again, what

the merits of that will prove to be, I don't know -- but a parent has said and has testified under oath in the due process hearing that if there is an appropriate placement, I would seriously consider putting my child in public school and I would like the opportunity afforded to me as a resident and it's still being litigated.

And so how am I supposed to think about pendency? Because normally, a parent who wants an IEP and the option of a public school placement would be entitled to pendency. Let's say you had a parent who had previously had Burlington-Carter funding. They unilaterally selected a private school but successfully applied for Burlington-Carter funding on the grounds that the public school placement offer do not provide a FAPE for their child and they were successful in that.

But maybe for similar reasons: that the school is too far, or the child's friends are in the neighbor and they would like to, once again, consider public school and so they've asked for a new IEP and a public school placement, I think under those facts, it would be clear that that will child has a federal right to continue to have the tuition at the private school paid as their pendency placement under Burlington-Carter while the new requested IEP and litigation over the new public school placement offer was litigated.

Do you agree with that, Ms. Doll, if under the alternative facts, the pendency question would be a fairly easy

one, right?

MS. DOLL: Yes, I do agree with that, your Honor.

But I do want to just point out that in this specific case --

THE COURT: Ms. Doll, can you just pull your microphone. I can hear you fine, but it would be easier for the reporter.

MS. DOLL: Of course.

And I would like to say, I agree with the Court, that I have also not found a case that is analogous to this particular situation. And just, as the Court knows, this is a heightened standard. We're looking at a PI, and the Court has already raised several important questions about the merits that I think are unsettled right now.

However, I will say, I think all the cases -- which I cite in my papers -- they do give us the foundation to interpret this. So, we need to remember that this student, he's always been -- excuse me, I believe it's a "he" -- he's always been in a non-public school. He is requesting equitable services that opts you out of the IDEA framework and into 3602(c).

The parent is entitled to request a CSE. The parent is entitled to request a placement. But we're still going back to the 2019 FOFD. The 2019 FOFD is based off a disputed 2017-2018 IESP. So, we have the IESP, so to the extent there

is pendency, I would argue it's a creation under state law; it's not attached to 1415(j).

But as IESPs borrow from the administrative IDEA structure generally, they can also borrow from pendency but this pendency is a 2019 IESP. So to the extent the parent wants to consider a public placement the CSE will reconvene and perhaps the child will move to a public placement. But until then, we're still basing on this IESP, and the law is clear, but because the child attends school in Lawrence, New York, that is going to make it that school's district's obligation to fund.

And to the extent that they want different equitable services -- which, we're talking about equitable services, not Burlington-Carter funding -- that's the obligation of the Lawrence CSE to develop an appropriate IESP for the student.

THE COURT: And I don't know if you know, Ms. Doll, or if this is really a question for Ms. Barbieri, it wasn't entirely clear to me what has happened 2017, 2018, and the present, such is that there's -- as far as I can tell -- never been a reevaluation that was either agreed to or litigated.

So, there is the 2023 IESP recommendation that the parent rejected but was never as far, as I can tell, no hearing officer ever adjudicated that dispute.

Like, who was correct in 2023, the CSE or the parent? What has happened since then is just a continuation of the

prior year's services all based off this 2019 FOFD. And it's not entirely clear to me, given the record, but, like, why has there never been a reevaluation of the services. And maybe, I don't know, Ms. Doll, if you can answer that question or if that's really a question for Ms. Barbieri.

MS. DOLL: I can speak to it a little. As you point out, these administrative records are long. They're very fact-intensive, but you're pointing out the child hasn't been reevaluated since at least 2019. And that has been pointed out in other SRO decisions. Are these services even still appropriate? You'll see from the June 15 FOFD, the parent cannot carry the burden of most likely not appropriate; the child is seven years older.

I can't provide, necessarily, a good reason why these administrative proceedings last so long. The reason why the child hasn't been reevaluated since 2023 is, the child moved outside the New York City Public School District, so it became the obligation of the Lawrence School District CSE to develop and make recommendations for services, because at the time the student was still seeking equitable services under the IESP structure.

THE COURT: Right, but DOE continued paying, which I know in your papers you said as far as you can tell, that seems to have been an error. But from what I can tell from the administrative record, it's not just like an error in some kind

of billing department at DOE, but there have been proceedings since then where DOE lawyers were there and some litigation over the child's pendency and all this. And I'm just -- I don't understand how for two school years, no one at the DOE realized that the child was at a non-New York City school.

MS. DOLL: My understanding is, the during the administrative proceeding and during the record that was built, it wasn't clear to my client that the school was outside New York City. I think there was an assumption that the student was still in New York City, in which case, it wouldn't be the DOE's obligation to fund those equitable services.

And these are thousands of these cases. My client does make mistakes. There's a lot of paperwork, a lot of administrative proceedings. So it was an error, but I think the error was based on the assumption that the student still attended school in New York City, which I believe he did up until the end of the 2022-2023 school year.

It did take us some time to correct that, but we're discussing New York state law and the IDEA. There's no estoppel argument or reliance. This isn't contract theory; this is a mistake made by a government entity that's trying to do its best with -- you know, hundreds of thousands of kids have IESPs that -- dozens of students --

THE COURT: No, and I'm not casting aspersions, Ms. Doll. I understand the administrative burden. I also know

that neither you nor the law department were involved in those, so I'm just trying to understand who knew what, when, and why certain things happened.

Because I think this is a -- in addition to being legally unique, it's sort of puzzling, factually. I think when we first received the TRO, part of the reason that it was important to hear from the DOE before any relief was ordered is because the facts here are also very unusual and kind of difficult to understand.

But am I correct Ms. Barbieri, that it's actually the 2023-'24 school year was the first time the student attended a private school outside of New York City?

MS. BARBIERI: Yes, your Honor.

But I think that one of two things that perhaps the school district has suggested that we disagree with: one, the mom did not ask for equitable services; the mom asked for an IEP, so that is a significant issue. It's not that --

THE COURT: Sorry to interrupt you again, Ms. Barbieri.

MS. BARBIERI: That's okay.

THE COURT: But I thought you said earlier that until August of 2025, that there had not been prior requests for IEPs. There had been a request for services but that the first request for an IEP and a public school placement was in the summer of 2025.

MS. BARBIERI: I did.

THE COURT: Okay.

MS. BARBIERI: But I just meant, in hearing Ms. Doll speak, it was my understanding that she was referring to this request, so I just want to make sure that we're clear that in '25-'26, she's not asking for equitable services under -- I think it's 26 -- no; sorry -- 3603-C.

But the other issue is, with respect to the 2023 CSE meeting which was the last CSE meeting and they did recommend an ISP which was rejected by the mom, Ms. Doll's explanation as to the administrative issues and the different attorneys that may have been on the case, *et cetera*, and whatever error doesn't explain why in January of this year or March of this year, the DOE authorized services that were exactly those services and providers that had been previously used and authorized by the DOE and the mom again.

So, even as late as January '26 and March '26, the DOE is, again, authorizing those services and those providers in the 2019 program.

THE COURT: But I thought they stopped paying on December 31, 2025.

MS. BARBIERI: They did. But the authorization was for the time period that would end December 31, so they were retroactive.

And the fact that they were retroactive meant that

they considered those -- to, you know, considered the authorizations and affirmatively chose to implement nose authorizations and issued them in this in those two authorization provisions, which are in the record. And that was in '26.

So, you know, even as of that date, these services and providers are being recognized as the program for pendency.

THE COURT: Well, except -- I mean, I think Ms. Doll touched on this point, right -- that a government entity can choose to pay for something that they're not required to pay as a: like, we recognize we made a mistake but we're going to continue with as a matter of equity and responsibility as a government agency.

We didn't tell the parent until December 31, 2025 that we don't have to pay and we're going to stop paying and because we didn't provide that notice, like, we're going to continue -- even though the authorizations have to come in 2026, if they are for services provided prior to December 31 of 2025, we are going to honor and pay those as a matter of grace, essentially, you know, the grace of the sovereign, that because we didn't realize the mistake and told the parent -- until December 31 -- that we're not paying anymore because we think we don't have to.

So there's no reliance or estoppel interest in a citizen-government, relationship typically. There are some

exceptions so that, but I don't think they're applicable here. And so the fact that they, the DOE, said: We're going to still pay retroactively for the things that we had effectively -- by mistake, in their view -- told the parent we would pay for and they did that. It doesn't change their current position that as of December 31, 2025, when we realized we had no legal obligation -- in their view -- to pay and we're not going to pay anymore, the fact that they paid for services prior to that date doesn't really change the calculus, right?

MS. BARBIERI: I understand the Court's suggestion with respect to the ongoing nature of the DOE's willingness to fund the 2018 program. That is over the course of six, seven years.

And the fact that they may say, as of 2019, that they no longer want to fund those services doesn't change the pendency issue. It changes the merits issue and it changes on the basis of a CSE's evaluation and a determination as to what should be this child's future.

That is not what's before the Court, because the future it a merits issue. What's before the Court is actually the jurisdictional issue, which I think resolves in favor of the 1415(j) and the evaluation placement and FAPE issue, which the Court has recognized is a federal question and then what should be agreed-upon placement.

And the agreed-upon placement, I think, is not only

the 2019 program, but the repeated acquiescence, for lack of a word, of the DOE to recognize implement and fund that placement.

So I hear what the Court saying in the fact this is a very unusual case. I, myself, have been doing this for 40 years, and when I received this circumstance by the parents in their request, I, of course, said why are we still dealing with a 2019 program? Why are we still dealing with that, and the circumstances are such that I would have to give you a total history of each one and what their thought process was.

But as the Court may be aware, when you're being funded for pendency, your impetus -- for lack of a better word, I'm sorry -- but your impetus to reevaluate or to change it is less forward, is less forward-looking.

THE COURT: Right.

MS. BARBIERI: And so what we want to do is what's the best thing for the child, which is what I always try do in my work. What is the best thing for this child? And the merits issue is certainly going to look at a revaluation, consider all of those evaluations that providers would provide, you know, all of those circumstances in a merits review.

And the CSE is the best place for that to happen. And that is why I believe the IHO ordered that to take place within the 45 days because he, of course, recognized.

I do also recognize the footnote that the SRO made in

one of its decisions where it did call into question why there was a 2019 program and suggested that the continued reliance -- are you familiar with what I'm talking about -- the continued reliance on that 2019 program from the perspective of both the DOE and the parent.

THE COURT: Right, was not educationally sound.

MS. BARBIERI: And they needed to come to grips with the fact that this needs to be reevaluated.

But again, that is a merits question and it is the obligation of the CSE where the DOE participates and the parents participate, and I don't think the resolution of that is before the Court.

THE COURT: No, I agree with you on that, that the merits issue of what is the proper placement, ultimately, and the educational questions are not before.

But let me put another hypothetical to you, Ms. Barbieri. Let's say I'm a parent who unilaterally has had any child enrolled in private school and I've never sought Burlington-Carter funding or supplemental services, like, they're in a private elementary school and I've been happy with those services but now my child is approaching middle-school age or high-school age and I request an IEP and a public school placement.

Does, that the mere requests for an IEP and public-school placement -- and let's say it's August and so

nothing's happened by the start of the school year, so I have to keep my child enrolled somewhere and I'm going to keep them at the school where they are, would I have any pendency rights to now initiate and say: Now you have to pay for my child's private school tuition because I requested an IEP and a public school placement and I haven't gotten it yet. And so you never paid before, I've been paying, but you now have to say because it's pendency and my child has to remain where they are while the IEP process is continuing.

MS. BARBIERI: I agree that that is a hypothetical.

THE COURT: I know it's not the situation, but I'm just --

MS. BARBIERI: I don't believe, off the top of my head, that the DOE would be obligated to provide tuition. I think that because the parent has funded the tuition before through the IESP's process and never asked the DOE to pay for it, it doesn't become part of the agreed-upon placement for the purposes of either funding or implementation.

THE COURT: Right, because you need that first piece of, like, you only have pendency in a placement that is either agreed upon or directed by a hearing officer.

MS. BARBIERI: Exactly.

THE COURT: Okay.

MS. BARBIERI: And I think that because there was no request, in prior administrative proceedings, for tuition, it

never became an agreed upon placement, and I think that that is why that is the answer to the Court's hypothetical.

THE COURT: Okay.

Ms. Doll, back to you. How do you think I should determine whether a proceeding is bought under 1415? Because I think Ms. Barbieri's point is that the relief the parent is requesting in the due process complaint, the currently pending one, is a 1415, is 1415 rights, and that's what should govern, like, that's how I should determine whether a proceeding is brought under 1415.

But I understand the City's argument that, well, the particular relief requested in the PI in the complaint is not 1415 relief. But I think Ms. Barbieri's argument is that well, but my pendency rights arise out of a 1415 proceeding, just the 2025 due process complaint seeking an IEP and public school placement offer.

So, what's the City's position on that? Where should I be looking to decide whether a proceeding is bought under 1415?

MS. DOLL: Your Honor, simply alleging, along with just denial of FAPE alleging pendency and there being a pendency entitlement doesn't automatically get you pendency under 1415(j). It doesn't trigger that clause. I believe in *Manos*, they also made an assertion based on pendency.

But, you know, just to start with, even if we were to

say that this is pendency, 1415(j),it's still a creation of New York state law. So, New York state law provides the administrative procedures by which you can pursue and litigate IESPs, which this Court is well aware of. Pendency attaches through those administrative procedures.

I think what the Court's been hinting at in their questioning is: When do you opt back into to FAPE eligibility and all the entitlements that you get, which includes hundreds of thousands of dollars of taxpayer funding, potentially.

And in the hypothetical you raised to Ms. Barbieri, which she agreed would not entitle you to pendency funding, I think is actually quite similar here. The difference is, there has been payment from the DOE covering some of that.

But as your Honor noted, governments can could things as a matter of grace. They can go beyond their entitlements by federal or state law. Just because they were doing something as a mistake, again, as the Second Circuit noted in *Mendez*, there's a lot of these cases. There's a lot of papers. That takes time. Just because they make a mistake and do that, that doesn't change their legal obligation under the statute. Their legal obligation is still going to be the same.

And because, again, the last agreed-upon placement is IESP, we're back again in state law with it being Lawrence's obligation to fund the services.

So, again, I think these cases are hard because there's a lot going on in these administrative proceedings, but when pendency actually attaches -- and Ms. Barbieri has argued this is an exception to *de Paulino*, I would never suggest that plaintiffs are trying to game the system in any way.

But if all public funding attaches just when you file a DPC and you may the magic word, I want an IEP, I don't think so that's how the statute should be used. And I think what Ms. Barbieri is saying -- and which I agree she's entitled to -- it's, the remedy she deserves is, she can get a CSE meeting, of course. And then we can see a CSE and get the public placement.

But as of now, I just don't any pendency as prescribed by 1415(j) under the federal statute versus on the pendency entitlement that may exist under state law doesn't attach in these circumstances.

THE COURT: And what is the status, Ms. Doll, if you know, of the IEP that's been ordered by the IHO?

MS. DOLL: Yes. So, I certainly concede there has been delay in setting up the CSE meeting. I believe the delay was partly due because I saw the student was attending school outside of New York City and so assumed that because they were an IESP student, again, that would be Lawrence's CSE's obligation to create the IESP.

However, they live in Brooklyn, so they can, of

course, can request a CSE and develop an IEP.

I spoke to my client yesterday about this. If plaintiffs want a CSE, of course, we will reconvene one.

THE COURT: But on June 15, the IHO ordered the DOE to convene a CSE and develop an IEP for the child and a public school placement that would follow from that.

And so recognizing that the child has been in private school up to this point, you know, now it's been close to a year since the parent requested, said: I would like to consider public school and I would like a CSE meeting and an IEP and a public school placement. And here we are on July 30 when the school year is beginning in New York City Public Schools in six weeks.

I definitely take your point, Ms. Doll, and one question that I had in reading the papers -- again, casting no aspersions on the plaintiff, but -- is there some kind of good-faith requirement? Like, should I be thinking about whether a plaintiff, not necessarily this parent, is acting in good faith in triggering a 1415 process solely to get pendency for non-1415 rights?

And again, because this case is so unusual, I couldn't find any case law that answered that question for me about whether -- and I think, ultimately, what I take from the case law is that that question, the legitimacy or good faith of any request for public school placement or IEP is something that is

to be worked on the merits in the IHO-SRO process in consideration of what is the equitable share of funding between the parent and the school and the other considerations that are happening in the due process proceeding, and that's sort of not my concern.

But I think it's -- I certainly understand, Ms. Doll, why the facts of this case raise that question. But nonetheless, regardless of what he might have happened between August of last year and the June 15 ruling, now the IHO has ordered -- I understand DOE is appealing that ruling to the SRO, but they have been ordered to convene the CSE and produce an IEP within 45 days, and clearly that hasn't happened.

And so, I mean, what can you tell me about the timeline for doing that?

MS. DOLL: The past timeline, I think, was influenced by -- and again, I haven't spoken directly with the CSE about what their specific thinking was -- I think they saw the student. They were attending school in Lawrence. Again, not to sound like a broken record, it became more of CSE's obligation. I believe we communicated that to plaintiff. We sent them a discharge notice and said they should do this. Again, the parent requested an IEP.

We should reconvene the CSE if what's what the parent wants to adopt IEP. But again, I think that's a separate remedy from what's being requested. Reconvening the CSE,

absolutely. Plaintiffs are entitled to that.

Automatic pendency funding based for something based on an IESP in a non-New York City School District, that's not the appropriate remedy here. So to the extent that DOE has contributory fault here because they haven't actually developed an IEP, again, to the extent the DOE makes mistakes -- and the DOE makes mistakes -- that, again, doesn't trigger a legal obligation.

Because, again, to your point about whether you need a good-faith basis, I think we're all -- we, of course, always assume people, faculty proceeds with good faith; the system wouldn't work otherwise. But, again, the implications -- and this sometimes does happen, people will file DPCs that concern pendency rights then they'll withdraw them, a lot goes into it.

And I do think my client -- separately of legal obligations, we're looking at the specific facts of the student, who has never attended public school, is outside of NYC, and they ask an IEP in 2025 -- and I do agree we didn't prioritize that, and we are welcome to set a CSE -- but, again, the remedy is different. And any contributory fault of the DOE for not developing that IEP, it also doesn't -- it doesn't change their pendency obligations. We're sill back to the 2019 IESP.

And any mistakes DOE made or any failure to comply with administrative orders in a timely way, that doesn't change

how 1415(j) would apply in these circumstances.

THE COURT: Okay. So I actually have another matter at 12, but Ms. Barbieri, I want to give you a chance to respond to what I've just asked Ms. Doll about.

MS. BARBIERI: Thank you, your Honor.

Two things. One, we do want the Court to recognize with respect to the parent's requests, that she did make four requests in the context of August to September for an IEP and FAPE. And in addition, she testified, and the testimony is recorded in the IHO's determination that he recognized that she wanted a public school placement; she would consider it.

The so the good faith of the parent, I think, is resolved by that testimony before the IHO where he commented on her credibility by the testimony that he adhered to.

I think also that when with the Court asked for the basis from which you should look or where you should look for the 1415(j) determination, there are two things. One, at 20 U.S.C. § 1412(a)(1)(A), FAPE has to be available to every child that lives in New York, in New York state. FAPE must be available to every child that lives within New York State.

And then 34 CFR § 301 -- excuse me -- .101(a) implements that requirement. And the fact that the child lives in New York City means that New York City is responsible for the CSE implementation.

And so with those recognitions and with the

recognition that Ms. Doll has made, that the CSE does need to meet and to put in its determination of an IEP is the concession of federal Court jurisdiction.

And so the next question is the agreed-upon placement. And regardless of whether you think that the DOE has repeatedly made a mistake by giving the funding or has affirmatively adhered so that funding, that is the present program, and that is what the agreed-upon placement is between the two parties and has been reaffirmed multiple times by IHOs, SROs, and the DOE's own actions.

THE COURT: Yeah, I mean --

MS. BARBIERI: It's a thorny situation, but it's temporary, and the temporary nature of it is by based upon what Ms. Doll has said. The CSE has to meet.

And the fact that they haven't done it in the 45 days, you know, well, that was an order and it wasn't stayed by virtue of the appeal. And they haven't even reached out to schedule one, let alone convene one.

THE COURT: Right. I mean, of course, you know, as we've discussed, the particular difficulty in this case is that under New York State law, DOE's obligation to fund the IESP ended some three years ago, and so how I should be thinking about their continuing obligation to fund something that they haven't had a legal entitlement to fund -- I mean, a legal requirement to fund for three years, you know, is part of the

gordian knot of this case.

But I'm going to try to get you a decision as soon as I can. I found this very helpful.

MS. BARBIERI: Thank you.

THE COURT: I would just ask you, Ms. Doll, to do anything you can with your client to get the CSE to convene, to schedule the meeting to develop an IEP, to work with this family to offer them a public school placement so that that process is actually underway.

I know that's not the relief that's before me, but I just think, and I know you recognize this, that that would be very helpful if they complied with the holding order and actually moved that process forward.

Ms. Barbieri.

MS. BARBIERI: Can I say one more thing?

THE COURT: Yes.

MS. BARBIERI: My relief that I did ask for did give the Court a secondary way to issue equitable relief through 1415(i). In the event that you don't want to rule under 1415(j), you can say that, equitably, the relief should be that the services are funded and implemented during this temporary period under your equitable authority. I didn't want to forget that.

THE COURT: Yes.

No, thank you for reminding me, Ms. Barbieri, but I

did read that part of your brief as well.

All right. We're adjourned.

Thank you very much.

(Adjourned)