THE LAW OFFICE OF

LAURA D. BARBIERI, PLLC

November 9, 2026

**BY ECF**

Hon. Margaret M. Garnett
United States District Judge
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

**Re:** *A.H. o/b/o N.H. v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, No. 26-cv-5926 (MMG)
**Plaintiffs' Letter Motion to Extend the Interim Relief Ordered on August 4, 2026**

Dear Judge Garnett:

I write on behalf of Plaintiffs, pursuant to the Court's Orders of November 2 and 4, 2026 (ECF Nos. 47, 48), to move to extend the interim relief ordered in the Court's August 4, 2026 Opinion and Order (ECF No. 21) (the "Order"), as construed in ECF No. 48, through February 8, 2027, or until the earliest of (a) N.H.'s enrollment in and attendance at a public school placement, or (b) a ruling on pendency by the Impartial Hearing Officer in the Parent's pending due process proceeding for the 2026-2027 school year (IHO Case No. 318418). This is Plaintiffs' first request to extend the Order.

The Order identified the considerations that govern an extension: "what actions have or have not been taken by the DOE and by Plaintiff to either identify and secure an appropriate public school placement for N.H., or pursue and secure an IESP and necessary funding from the district where N.H. attends school if he remains in private school." Order at 14.[1]

## 1. The DOE Has Offered a Placement, But Not One That Can Provide N.H. a FAPE

After the Order issued, the CSE meeting was rescheduled to accommodate vacation schedules, to permit the Parent to submit private evaluations, which she did, and to properly allow the Hertz family to observe the Jewish holidays. ECF No. 38 at 1. Although the Defendants implied otherwise no dilatory or unreasonable delays in scheduling were caused by or sought by Plaintiffs, including the family's and counsel's previously planned vacations. The CSE convened on October 8, 2026, which was the soonest date all parties were mutually available; the parents received the

[1] The Order's alternative consideration — an IESP from the district where N.H. attends school — applies only "if he remains in private school." Order at 14. N.H. did not return to private school and has not been enrolled in any school since the 2026-2027 school year began; he is being educated at home pending an appropriate public school placement. No IESP is therefore warranted. A request for one would also be inconsistent with the family's pursuit of a public placement and with Plaintiffs' position that the DOE is the agency bound to maintain N.H.'s pendency placement under 20 U.S.C. § 1415(j). *See* ECF No. 26.


115 W. 73rd Street, Ste. 1B, New York, New York 10023
(914) 819-3387 (call or text)
Laura@LDBarbLaw.com *** www.LDBarbLaw.com

proposed IEP on October 14 and a School Location Letter designating John Dewey High School in Brooklyn on October 15. Within ninety minutes of receiving the letter, N.H.'s father called and wrote to the school asking to visit. He followed up on October 16, proposed dates on October 17, and wrote again on October 29 and November 1 after being offered only a Saturday open house, which the family cannot attend because they are Sabbath observers. On November 2, the school apologized for the delay, and he toured the school on November 4, 2026. Again, Plaintiffs fully cooperated with the DOE's scheduling parameters and did not cause or seek to delay the development of an IEP or public school placement recommendation.[2]

The tour established that the assigned school cannot meet N.H.'s educational, social, and programmatic needs, and so cannot provide him a FAPE — including because it cannot deliver the IEP the DOE itself wrote and despite the fact that the IEP itself does not provide N.H. with FAPE or comport with or support N.H.'s educational or social development needs. According to the school's own staff: the school has one part-time occupational therapist, who could not provide the three 40-minute OT sessions that the IEP mandates and might provide two at the most; the school has no physical therapist; and the IEP's speech-language mandate of four 40-minute sessions could not be met, with at most a "slight possibility" of two sessions per week, again only in the best of circumstances. The 15:1 classes are not grouped by functioning level, and there is no 1:1 instruction at any time of any kind. There are no Behavior Modification Plans utilized for any of their students, despite the fact that certain students with whom N.H. would be grouped clearly evidenced behavior issues and difficulties. Outside the four core classes, N.H. would be placed in electives of 25 to 31 students and gym classes of about 50 students, without special education staff. No paraprofessional supervision is ever available at lunch period, where some 525 students eat at once, with the corresponding noise levels indicative of boisterous teenagers, and no paraprofessional is available during either arrival or dismissal time. The school also reports a paraprofessional shortage and could not state affirmatively whether N.H. would receive his mandated paraprofessional. The building adjoins elevated train lines and an extraordinarily large transit depot, with trains passing every few minutes, with correspondingly loud train engines heard along with the building shaking during train passings. All of these circumstances present a serious obstacle to accessing an education for a student with N.H.'s documented sensory needs. *See* Dkt. No. 7-3 at 2. A challenge to an assigned school's capacity to implement the IEP is not speculative when it rests on the school's own account of what it can and cannot provide. *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 244–45 (2d Cir. 2015).

The family is now contacting the members of the CSE to advise them of these concerns and to request a revised placement recommendation — one that can meet N.H.'s educational, social, and programmatic needs and provide him a FAPE. The family does so without waiving its objections to the IEP itself, which is deficient in several respects. Those objections, and the placement, will be presented to the IHO in the Parent's Amended Due Process Complaint due to

[2] Plaintiffs reserve their rights to contest the sufficiency of the IEP developed by the CSE as not consistent with the IDEA's requirements to provide FAPE as well as their placement recommendation, which could not be properly evaluated by Plaintiffs until such time as a school visit was scheduled and completed. Further, an amended DPC will be filed within the next several days that incorporates the family's objections to the IEP received from Defendants on October 14, 2026.


115 W. 73rd Street, Ste. 1B, New York, New York 10023
(914) 819-3387 (call or text)
Laura@LDBarbLaw.com *** www.LDBarbLaw.com

be filed within the next several days and which is applicable to the 2026-2027 school year (IHO Case No. 318418). Although an IEP has been developed, it does not comport with the IDEA's FAPE mandate, and the recommended public school placement, though offered is definitively unsuitable for N.H. It has not been secured as of yet, because the school offered cannot meet N.H.'s needs or provide him a FAPE.

**2. Depending on the Outcome of this Motion, N.H.'s Services Are Due to Cease, and the Equities Favor a Short Extension**

N.H.'s services will cease unless extended by this Court. The Court's finding of irreparable harm rested on a child "left in educational limbo" with "no viable plan for special education services" while the parents wait for a suitable public school placement. Order at 12–14. That is again N.H.'s situation, and more acutely: N.H. has not been enrolled in any school this year and is being educated at home pending an appropriate public placement; should this Order not be extended, N.H. will experience the loss of his services means he has been receiving upon the understanding that the DOE would fund them. The Order already supplies the remedy where an existing provider will not serve at the funded rate: the DOE may satisfy it by "identifying qualified alternative providers who have accepted N.H.'s case." Order at 14. Plaintiffs ask that the extension direct the DOE to do so within seven (7) days for any service whose existing provider will not accept the rate fixed in ECF No. 48.

The requested extension ends on its own terms when N.H. begins attending an appropriate public placement or when the IHO in Case No. 318418 decides pendency. That returns interim services to the administrative forum and spares the Court further supervision other than to decide the remaining issues in the Plaintiffs' complaint. Plaintiffs also note that the Parent testified at the impartial hearing that N.H. was last evaluated in January 2026, and the IHO declined to order a reevaluation on that basis. Dkt. No. 7-14 at 16. Plaintiffs' October 26 letter was directed to the impending cessation of N.H.'s services; Plaintiffs address his placement here and will do so in the parties' November 10 joint letter. ECF No. 48.

Accordingly, Plaintiffs respectfully request that the Court (1) extend the interim relief ordered in ECF No. 21 through February 8, 2027, or until N.H. begins attending an appropriate public school placement or the IHO in Case No. 318418 rules on pendency, whichever occurs first; (2) direct the DOE, within seven business days, to identify qualified alternative providers who have accepted N.H.'s case for any service whose existing provider will not accept the rate fixed in ECF No. 48; (3) direct the parties to file a joint status letter every 30 days during the extension; and (4) continue the existing relief pending decision on this motion. We thank the Court for its attention to this matter.

Respectfully submitted,

*/s/ Laura Dawn Barbieri*
Laura Dawn Barbieri
Counsel for Plaintiffs

cc: All counsel of record (by ECF)


115 W. 73rd Street, Ste. 1B, New York, New York 10023
(914) 819-3387 (call or text)
Laura@LDBarbLaw.com *** www.LDBarbLaw.com