**STEVEN BANKS**
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**ALFRED MLLER**
*Assistant Corporation Counsel*
*Email: alfmille@law.nyc.gov*
*Phone: (212) 356-2392*

November 10, 2026

**BY ECF**

Hon. Margaret M. Garnett
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re: *A.H., et al. v. The Board of Education of the City School District of the City of New York.,* 26-cv-05926 (MMG)

Dear Judge Garnett:

Pursuant to Your Honor's Order dated November 4, 2026 (ECF No. 48), counsel for Plaintiff and Defendants respectfully submit this status update regarding N.H.'s placement and propose next steps for this matter. Although Plaintiff and Defendants take different positions on this case, the following facts are undisputed. As of October 8, 2026, the Committee on Special Education ("CSE") convened to develop an Individualized Education Plan ("IEP") for N.H. Thereafter, on October 15, 2026, Defendants followed up with a school placement for N.H. Thus, to date, N.H. has been provided with both an IEP and public school placement. On October 15, 2026, Plaintiff filed a Due Process Complaint ("DPC") for the 2026-2027 school year.

**Defendants' Position**

It is Defendants' position that the present proceeding insofar as it relates to Plaintiff's request for an IEP and school placement is moot. In its August 4, 2026 Order ("PI Order"), the Court aptly noted that "the lawsuit arises from a parent's effort to get an IEP and a public-school placement offer for her child." [1] *Id.* at 6; *see also* ECF No. 34 at 1 ("Plaintiffs reiterate, the action commenced by Plaintiffs primarily concerns the failure of Defendants to implement or authorize necessary special education services for N.H., or, more urgently, provide

---

[1] Plaintiff's Complaint also brings forth a claim for pendency rights under Section 1415(j) and in the alternative, Section 1415(i)(2)(C)(iii). *See* Compl. ECF No. 1 ¶ 103. Notably, the Court found no pendency rights under Section 1415(j) "as the pendency that Plaintiff seeks is for services created by state law, which DOE has no legal obligation to fund. *See* ECF No. 21 at 9. However, the Court granted prospective interim relief pursuant to Section 1415(i)(2)(C)(iii) to ensure IDEA rights, such as requests for an IEP and access to a FAPE, are protected for a period of 90 days. *See id.* at 14.

a public school placement for N.H. “). Indeed, the PI Order was meant to provide for relief while the IEP was developed and a school placement was offered, given Plaintiff’s request for the same. *Id.* at 10, 14. As of October 15, 2026, Defendants have provided both. Therefore, to the extent Plaintiff seeks such relief in this action, the claims are moot. *See White River Amusement Pub, Inc. v. Town of Hartford*, 481 F.3d 163, 167 (2d Cir. 2007) (“[a] ‘case is moot when the issues presented are no longer ‘live’ or the parties lack a legally cognizable interest in the outcome.’”) (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)). Further, as will be argued in the forthcoming response to Plaintiff’s letter-motion to extend the PI, the objective of the PI was fulfilled.

Moreover, because the DOE has now offered an IEP and school placement, this Court should decline to order Defendants to continue to fund equitable services. The Court explicitly states that any such extension of this limited interim relief will turn on “what actions have or have not been taken by the DOE and by Plaintiff to either identify and secure an appropriate public school placement for N.H., or pursue and secure an [Individualized Education Service Program (“IESP”)] and necessary funding from the district where N.H. attends school if he remains in private school.” *Id.* As Plaintiff’s November 9, 2026 explains, N.H. has not returned to private school and Plaintiff has not pursued an IESP as it would be “inconsistent with the family’s pursuit of a public placement . . . .” *See* ECF No. 49 at 1. On the other hand, Defendants, since early August, attempted to schedule an IEP meeting; the meeting ultimately convened on October 8, 2026. *See* ECF No. 45 at 1. Subsequently, an IEP was created for N.H., and on October 15, 2026, Defendants identified public school placement for N.H. *Id.* Thus, because DOE has taken considerable actions to provide a “viable plan for special education services at present and for the upcoming 2026-2027 school year,” *see* ECF No. 21 at 14, the Court should decline to order Defendants to further fund equitable services.

Additionally, Plaintiff’s request for any retrospective relief should be denied as Plaintiff fails to state a claim for which relief can be granted. Plaintiff’s claim for relief retrospective to the Court’s PI Order fails to state a claim as she seeks to enforce pendency rights under Section 1415(j) of the IDEA which expressly does not extend to IESP services. *See* ECF No. 21 at 8-10. Indeed, the Court acknowledged the difficulty in Plaintiff’s position and expressly declined to find that N.H. was entitled to pendency under Section 1415(j), *see id.* at 10, opting instead to award equitable interim relief to ensure IDEA rights moving forward were protected. *Id.* Plaintiffs IDEA rights are adequately preserved as the proper venue for challenging the appropriateness of the placement is at the IHO. Therefore, because Plaintiff cannot demonstrate entitlement for retrospective relief under a theory of pendency, her claim must be dismissed for failure to state a claim for which relief can be granted.

To the extent Plaintiff now brings a challenge to the October 2026 IEP and/or school placement, such claims are subject to the IDEA’s exhaustion requirement. As Plaintiff has not exhausted remedies, Plaintiff fails to state a claim for which relief can be granted in this present action. *See J.M. v. New York City Dep't of Educ.*, 161 F.4th 149, 154 (2d Cir. 2025) (explaining that a failure to exhaust administrative remedies is a failure to state a claim for which relief can granted). As the law makes expressly clear, “parents must proceed through a “two-tier system of administrative review” when seeking review of their children’s educational program and related services. *See Ventura de Paulino v. N.Y.C. Dep’t of Educ.*, 959 F.3d 519, 526 (2d Cir. 2020). First, the parent must file a DPC regarding the IEP and request a hearing before an Impartial Hearing Officer (“IHO”). *See* 20 U.S.C. §1415(f)(1)(A); N.Y. Educ. Law §4404(1)(a). Second, the parent

may appeal the IHO's decision to a State Review Officer ("SRO"). *See* 20 U.S.C. §1415(g)(1); N.Y. Educ. Law §4404(2). Once this administrative process is exhausted, a parent may file a civil action in federal court challenging the administrative decision. *Simmons v. Murphy*, 2024 WL 2837625, *3 (2d Cir. June 5, 2024); *C.S. by K.S. v. New York City Public Schools*, 2025 WL 2549292 at *2 (S.D.N.Y. Sept. 4, 2025) ("In general, an appeal may be filed in state or federal court *only after the SRO has rendered a decision*.") (emphasis added). Here, Plaintiff is currently pursuing her administrative remedies as evidenced by the October 16, 2026 DPC filing and her intention to amend the DPC to challenge the October 2026 IEP. *See* ECF No. 49 n.2 To date, those administrative proceedings are still pending. Therefore, Plaintiff has not, and must first, exhaust her available administrative remedies prior to her initiation of any federal action. *See J.M.*, 161 F.4th at 154.

Plaintiff's proposed next steps are largely predicated on challenges to the newly created IEP and school placement for a separate school year than is at issue here. As Plaintiff concedes, the IHO is currently hearing the challenge and will consider Plaintiff's intended amended DPC. There is no need, and Plaintiffs proffer no reason to hold this case open or submit status letters while the administrative proceeding is pending. To the extent that the case remains alive despite the mootness and the lack of legal availability for pendency for this student, this Court should direct a status letter 14 days after the administrative proceeding becomes final.

For the foregoing reasons, it is Defendants' position that the present action as it relates to Plaintiff's request for an IEP and school placement is moot. To the extent Plaintiff now challenges the October 2026 IEP or school placement for N.H., such claims are subject to the IDEA's exhaustion requirement, and as she has not exhausted her administrative remedies, Plaintiff fails to state a claim for which relief can be granted.

**Plaintiffs' Position**

Defendants' position rests on a single premise: that by convening a CSE on October 8 and issuing a school location letter on October 15, 2026, the DOE gave Plaintiffs everything this action seeks. It did not. An IEP that strips N.H. of the program he has been found to need, paired with a school that by its own staff's account cannot implement even that IEP, is not what the IDEA requires, and it is not what this Court contemplated when it tied any extension of interim relief to whether the DOE had acted to "identify and secure an appropriate public school placement for N.H." PI Order at 14. Plaintiffs set out below the current status of N.H.'s IEP, placement, and services; respond to Defendants' mootness, failure-to-state-a-claim, and exhaustion arguments; and propose next steps.

**1. Status of N.H.'s IEP, Placement, and Services**

The family first asked the DOE for an IEP and a public school placement in August 2025. The DOE did nothing until an IHO ordered it to act and this Court entered interim relief. The IHO's June 15, 2026 Findings of Fact and Decision found that the DOE denied N.H. a FAPE for the 2025-2026 school year and directed the CSE to convene and develop an IEP within 45 days — that is, by July 30, 2026. ECF No. 7-14. The CSE did not convene until October 8, 2026, more

than two months after that deadline.[2] The parents received the proposed IEP on October 14, and on October 15 the DOE issued a School Location Letter designating John Dewey High School in Brooklyn. ECF No. 49 at 1–2. By its terms, the IEP does not take effect until October 23, 2026 — nearly four months into the twelve-month school year that began on July 1, and seven weeks into the ten-month year. This is the third consecutive school year in which N.H. has begun the year with no IEP in effect as a result of Defendants' inactions and failures.

The family moved promptly to evaluate the placement. Within ninety minutes of receiving the School Location Letter, N.H.'s father asked to visit the school; after repeated follow-up, and after being offered only a Saturday open house that the family could not attend because they observe the Sabbath, he toured the school on November 4, 2026. ECF No. 49 at 2. The school's own staff confirmed that John Dewey cannot implement the IEP the DOE wrote. It has one part-time occupational therapist, who could provide at most two of N.H.'s three mandated weekly OT sessions; it has no physical therapist; and there is at best a "slight possibility" of two of his four mandated weekly speech-language sessions. Its 15:1 classes are not grouped by functioning level; it provides no 1:1 instruction of any kind; and it uses no behavior plans. Outside his four core classes, N.H. would attend electives of 25 to 31 students and gym classes of about 50, without special education staff. No paraprofessional supervises arrival, dismissal, or the lunch period, when some 525 students eat at once, and the school could not confirm that N.H. would receive his mandated paraprofessional at all. The building adjoins an elevated train line and a large transit depot, with trains passing every few minutes. *Id.* For a student with N.H.'s documented sensory needs, *see* ECF No. 7-3 at 2, that environment is itself a barrier to learning. A challenge to an assigned school's capacity to implement an IEP is not speculative when it rests on the school's own account of what it can and cannot provide. *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 244–45 (2d Cir. 2015).

N.H. is not enrolled in any school. He did not return to private school for the 2026-2027 school year and is being educated at home pending an appropriate public school placement. ECF No. 49 at 1 n.1. Because he is not in private school, the PI Order's alternative path — an IESP from the district where a private school is located — does not apply. *See* PI Order at 14. The family is contacting the members of the CSE to set out these concerns and to request a revised placement recommendation that can implement N.H.'s IEP and meet his needs, without waiving their objections to the IEP itself. ECF No. 49 at 2. Those objections, and the placement, will be presented to the IHO in an Amended Due Process Complaint in IHO Case No. 318418, which Plaintiffs

---

[2] Defendants suggest that the DOE took "considerable actions" to schedule the CSE meeting and imply that Plaintiffs delayed it. They did not. The meeting was rescheduled to permit the Parent to obtain and submit the private evaluations and reports the DOE said it needed, to accommodate previously scheduled family and counsel vacations, and to avoid conflicts with the Jewish holidays and the family's Sabbath observance. ECF No. 38 at 1; ECF No. 49 at 1–2. None of that explains why the CSE did not convene by the IHO's July 30, 2026 deadline. Had the DOE convened the CSE when it was ordered to, or funded the services N.H.'s program requires, N.H. could have started the school year in an appropriate placement. Defendants' effort to shift responsibility for their own delay to the family should be rejected.

expect to file by the end of week, and Plaintiffs will seek a pendency determination in that proceeding.

Plaintiffs' letter-motion to extend the interim relief ordered in the PI Order is pending. ECF No. 49. Absent an extension, N.H. will lose the services that have been his only educational program since the school year began. To date, the DOE has not identified a qualified alternative provider for any service whose existing provider will not accept the rate fixed in ECF No. 48.

**2. The October 2026 IEP Does Not Offer N.H. a FAPE**

Plaintiffs do not ask the Court to adjudicate the adequacy of the October 2026 IEP in this letter; that question belongs in the first instance to the IHO in Case No. 318418. Plaintiffs describe the IEP's deficiencies because Defendants' mootness argument treats the existence of an IEP as the end of the matter. The IDEA requires more: an IEP "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017). Measured against the record before the CSE, this IEP does not come close.

N.H. has required 1:1 services and supports his entire life, and every evaluation, progress report, and documented deficit in the record supports his continuing need for them to progress educationally and socially. The CSE had before it a December 2025 psychoeducational evaluation reporting a Full Scale IQ of 92 alongside academic achievement below the 0.1 percentile (a Broad Achievement standard score of 45) and an adaptive behavior composite of 61, together with occupational therapy, physical therapy, and speech-language reports documenting sensory dysfunction at the ceiling of the measures, motor coordination at the first percentile, expressive language with a mean length of utterance of roughly six words, and regression over every break in services. On that record, the CSE recommended a 15:1 special class and (i) eliminated the 40 hours per week of 1:1 SEIT instruction awarded in the unappealed 2019 Findings of Fact and Decision, ECF No. 7-3, which N.H. has received under that decision and successive pendency orders; (ii) eliminated the enhanced occupational therapy (Astronaut Training and Therapeutic Listening) and the BCBA supervision that are part of that program; (iii) reduced parent counseling and training from two hours per week to four sessions per year; (iv) recommended a ten-month rather than a twelve-month program despite documented regression; and (v) recommended no ABA, although N.H. is a child with autism for whom his own evaluators, including a BCBA-D, designed a behavioral program. The IEP's present levels and annual goals are premised on N.H.'s readiness for group instruction in a 15:1 class, a premise the CSE's own evaluative data contradict, and the services the IEP does recommend are ones the assigned school has said it cannot deliver.

The process was flawed as well. The CSE faulted the available evaluations for failing to establish that ABA was necessary, yet the DOE has never conducted a functional behavioral assessment or any ABA assessment of N.H. And the refusal to recommend ABA was not an individualized determination. In *M.G. v. New York City Department of Education*, No. 13-cv-4639 (SHS) (S.D.N.Y.), the DOE admitted that its CSEs have not recommended ABA since 2013 and

that its policy does not provide for recommending it, and its Rule 30(b)(6) witness so testified.[3] A committee that cannot recommend a service has not deliberated about whether a child needs it. These deficiencies, among others, will be presented to the IHO.

**3. This Action Is Not Moot**

A case becomes moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (internal quotation marks omitted). The party asserting mootness bears a heavy burden. *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 84 (2d Cir. 2005). Defendants cannot carry it, for three reasons.

*First*, what the DOE has provided is not the relief Plaintiffs seek. Defendants rely on the Court's description of this lawsuit as "a parent's effort to get an IEP and a public-school placement offer," PI Order at 6, but the IDEA does not entitle a child to *an* IEP and *a* placement. It entitles him to an IEP reasonably calculated to provide a FAPE and a placement capable of implementing it. *Endrew F.*, 580 U.S. at 399; *M.O.*, 793 F.3d at 244–45. The PI Order itself asked whether an *appropriate* placement had been identified *and secured*. PI Order at 14. None has been secured, and the school identified cannot implement the IEP. That the DOE has taken a step toward the relief sought does not end the controversy; even the availability of a partial remedy is enough to prevent a case from being moot. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992).

*Second*, the Complaint seeks more than an IEP and a placement offer. It seeks to maintain N.H.'s pendency program through the conclusion of the proceedings under 20 U.S.C. § 1415(j) and, in the alternative, § 1415(i)(2)(C)(iii), *see* Compl. ¶ 103, and relief for the services the DOE failed to fund, *see id.,* Prayer for Relief. A claim for services that should have been, but were not, provided does not become moot because the DOE now offers something prospectively. *See Lillbask*, 397 F.3d at 89 (noting that a claim for compensatory education or reimbursement can defeat a mootness challenge in an IEP placement dispute).

*Third*, the dispute is capable of repetition yet evading review. *Honig v. Doe*, 484 U.S. 305, 318–23 (1988); *Lillbask*, 397 F.3d at 84–85. N.H. has begun three consecutive school years with no IEP in effect, and this year the DOE acted only after an IHO ordered it to and this Court entered interim relief — and even then, more than two months late. A defendant claiming that its own conduct has mooted a case bears the "formidable burden" of showing that the challenged conduct cannot reasonably be expected to recur. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Defendants do not attempt that showing.

**4. Defendants' Request to Dismiss Plaintiffs' Claims for Retrospective Relief Is Not Properly Before the Court and Lacks Merit**

Defendants ask the Court to dismiss Plaintiffs' claims for retrospective relief for failure to state a claim. They have filed no motion, and Plaintiffs have had no opportunity to brief the

[3] A list of Defendants relevant admissions can be provided to the Court should documentation be required and/or requested.

question. A joint status letter is not the vehicle for dismissing claims. If Defendants wish to seek dismissal of any claim, they should do so by motion, on a schedule the Court sets.

The argument also fails on its own terms. It rests entirely on the PI Order's conclusion that Plaintiffs had not shown a likelihood of success on their § 1415(j) claim. But "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Plaintiffs' motion for partial reconsideration of that ruling remains pending. And the premise of the Court's § 1415(j) analysis — that N.H. was a privately enrolled student whose services arose under N.Y. Educ. Law § 3602-c and were the responsibility of the district where his private school is located — no longer describes him. N.H. is not enrolled in private school; his parent sought, and the DOE has now developed, an IEP and offered a public school placement; and the dispute over that IEP and placement is pending before an IHO. Whatever the DOE's obligations were while N.H. attended a private school outside the City, it is now the agency responsible for providing him a FAPE, and the agency bound to maintain his then-current educational placement while that dispute is resolved. 20 U.S.C. § 1415(j).

**5. Exhaustion Does Not Bar This Action**

Plaintiffs agree that the adequacy of the October 2026 IEP and the John Dewey assignment should be decided in the first instance by the IHO in Case No. 318418, and they are pursuing that remedy. Because Plaintiffs do not ask this Court to rule on those questions now, there is nothing for an exhaustion defense to bar. The claims in the Complaint arise from the administrative proceedings already conducted, IHO Case Nos. 307092 and 303474, and from N.H.'s pendency rights, and an action to enforce pendency is exempt from the exhaustion requirement because the administrative process cannot provide timely relief. *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002).

Defendants' own authority does not hold otherwise. *J.M.* held that the IDEA's exhaustion requirement is a nonjurisdictional claim-processing rule, 161 F.4th at 153, and vacated a dismissal for failure to exhaust because the plaintiffs challenged a DOE policy of general applicability that was contrary to law. *Id.* To the extent any claim here ultimately turns on the CSE's refusal to consider ABA, that refusal reflects exactly such a policy. Nor are Plaintiffs confined to the due process complaint, dated filed on October 16, before the family could visit the assigned school; the IDEA expressly provides for amendment of a due process complaint. 20 U.S.C. § 1415(c)(2)(E).

**6. The DOE's Failure to Fund N.H.'s Services Remains Urgent**

The crisis caused by the DOE's failure to fund N.H.'s services has not abated. Under the PI Order, the DOE may satisfy its obligation either by funding N.H.'s existing providers or by "identifying qualified alternative providers who have accepted N.H.'s case." PI Order at 14. It has done neither for any service whose provider will not accept the rate fixed in ECF No. 48. The DOE cannot decline to supply providers who will accept its rates and then decline to fund the providers the family had no choice but to find — providers who, in a City-wide market marked by an acute shortage of related-service providers, charge prevailing rates. If the DOE could supply providers at its own rates, it would have done so. Instead, families in N.H.'s position are left with no services

at all, or with expensive and protracted litigation to obtain the services the law already requires the DOE to provide. The Supreme Court described the district's choice in the analogous setting of private placement:

> There is no doubt that Congress has imposed a significant financial burden on States and school districts that participate in IDEA. Yet public educational authorities who want to avoid reimbursing parents for the private education of a disabled child can do one of two things: give the child a free appropriate public education in a public setting, or place the child in an appropriate private setting of the State's choice. This is IDEA's mandate, and school officials who conform to it need not worry about reimbursement claims.

*Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 15 (1993). The same choice is open to the DOE here: it can offer N.H. an appropriate public program, or it can supply qualified providers itself. Until it does one or the other, the relief Plaintiffs seek remains necessary and urgent. Defendants' argument that the Court should decline to extend interim relief is addressed in Plaintiffs' pending letter-motion, ECF No. 49, and Plaintiffs do not repeat it here, except to note that the PI Order asks whether an appropriate placement has been identified and secured — not merely whether a CSE has met.

**7. Proposed Next Steps**

Plaintiffs respectfully propose that the Court:

(1) decide Plaintiffs' pending letter-motion to extend the interim relief, ECF No. 49, and continue the existing relief pending that decision;

(2) allow the adequacy of the October 2026 IEP and placement to proceed before the IHO in Case No. 318418, and direct the parties to notify the Court within seven days of the IHO's pendency determination;

(3) direct the parties to submit, within fourteen days, a revised proposed case management plan that accounts for the prior proceedings and pending motions; provides for discovery on the claims that remain, including the DOE's authorization and funding of N.H.'s services for the 2023-2024 through 2025-2026 school years and the cessation of those services; and sets a schedule for summary judgment motions at the close of discovery;

(4) direct that any motion by Defendants to dismiss on mootness or failure-to-state-a-claim grounds be made on a briefing schedule set in that plan, rather than resolved on this letter; and

(5) direct the parties to file a joint status letter every 30 days (or on a shorter timetable as required by the Court) while interim relief remains in effect.

The parties thank the Court for considering this submission.

Respectfully submitted,

/s/
ALFRED MILLER, JR.
*Assistant Corporation Counsel*

**cc**: All counsel of record (via ECF)